1   SHERYL MOULTON F/K/A
2   650 Castro St Ste 120 PMB 94976
    Mountain View, CA 94041
3   (408) 650-3700
    fedcourt23@protonmail.com
4   *Plaintiff, In Pro Per*



**FILED**

MAY 0 9 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10                 **C    25   04059   SVK**

11  SHERYL MOULTON f/k/a,                    Case No.:

12              Plaintiff,
                                             **COMPLAINT FOR:**
13      v.

14  STEPHEN M. PAUL, individually, and in his roles   1)  BAD FAITH CONCEALMENT OF
    as "purported" Paul Trust Trustee/Co-Trustee,          TRUSTEESHIP AND FAILURE TO
15  Trustee De Son Tort, and Betty C. Paul's Power of       PROVIDE TRUSTEE
    Attorney Agent,  BUFFINGTON LAW FIRM, PC,               NOTIFICATION (CAL. PROB.
16  ROGER J. BUFFINGTON, ESQ., HITCHMAN                     CODE §§ 16061.7, 16061.9)
    FIDUCIARIES, LLC., and DOES 1 through 100,       2)  VIOLATIONS OF THE
17  inclusive,                                               RACKETEER INFLUENCED AND
                                                            CORRUPT ORGANIZATIONS ACT
18              Defendants.                                  (RICO) (18 U.S.C. § 1962(c))
                                                     3)  CONSPIRACY TO VIOLATE RICO
19                                                           (18 U.S.C. § 1962(d))
                                                     4)  EXTRINSIC FRAUD ON THE
20                                                           COURT (CALIFORNIA LAW)
                                                     5)  FINANCIAL ELDER ABUSE,
21                                                           ELDER ABUSE BY PROXY (CAL.
                                                            WELF. & INST. CODE § 15600 ET
22                                                          SEQ.)
                                                     6)  BREACH OF FIDUCIARY DUTY
23                                                           AND MULTIPLE BREACHES OF
                                                            TRUST (CALIFORNIA LAW &
24                                                          PROBATE CODE)
                                                     7)  CONSPIRACY TO COMMIT
25                                                           ELDER ABUSE AND BREACH OF
                                                            FIDUCIARY DUTY
26                                                          CONTRIBUTING TO WRONGFUL
                                                            DEATH
27

28

8)  LEGAL MALPRACTICE
9)  NEGLIGENCE
10) FRAUDULENT CONCEALMENT
11) INTENTIONAL BREACH OF
    FIDUCIARY DUTY
12) FRAUD
13) FRAUD CONSPIRACY
14) DISGORGEMENT OF FEES /
    AIDING AND ABETTING
    BREACH OF TRUST / UNJUST
    ENRICHMENT
15) VIOLATION OF THE AMERICANS
    WITH DISABILITIES ACT (ADA,
    42 U.S.C. § 12101 ET SEQ.)
16) VIOLATION OF THE UNRUH
    CIVIL RIGHTS ACT (CAL. CIV.
    CODE § 51 ET SEQ.)
17) VIOLATION OF THE BANE ACT
    (CAL. CIV. CODE § 52.1)
18) VIOLATION OF THE
    CONSUMERS LEGAL REMEDIES
    ACT (CLRA) (CAL. CIV. CODE §
    1750 ET SEQ.)
19) VIOLATION OF CIVIL RIGHTS -
    42 U.S.C. § 1983 (DEPRIVATION
    OF RIGHTS UNDER COLOR OF
    LAW)
20) CONSPIRACY TO INTERFERE
    WITH CIVIL RIGHTS (42 U.S.C. §
    1985(2) AND § 1985(3))
21) VIOLATION OF THE RALPH
    CIVIL RIGHTS ACT (CAL. CIV.
    CODE § 51.7)
22) DEPRIVATION OF
    CONSTITUTIONAL RIGHTS (4TH,
    5TH, 8TH, 14TH AMENDMENTS -
    STATE COURT ACCESS &
    BROADER DEPRIVATIONS) &
    OUTRAGEOUS GOVERNMENT
    CONDUCT
23) TORTIOUS INTERFERENCE
    WITH AGENCY RELATIONSHIP
    (HARM TO AGENT)
24) RETALIATION FOR REPORTING
    ELDER ABUSE (CAL. WELF. &

INST. CODE § 15657.7 / COMMON LAW)

25) INTENTIONAL INTERFERENCE WITH EXPECTED INHERITANCE (IIEI)

26) WRONGFUL DEATH (CAL. CODE CIV. PROC. § 377.60)

27) TORTIOUS INTERFERENCE WITH EMPLOYMENT CONTRACT/WAGES

28) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

29) VIOLATION OF UCL (UNFAIR BUSINESS PRACTICES ACT / UNFAIR COMPETITION LAW - CAL. BUS. & PROF. CODE § 17200 (BPC 17200) ET SEQ.)

30) DECLARATORY RELIEF (28 U.S.C. §§ 2201, 2202; CAL. CODE CIV. PROC. § 1060)

31) ACCOUNTING (CALIFORNIA LAW & PROBATE CODE)

32) EMERGENCY INJUNCTIVE RELIEF (FED. R. CIV. P. 65; CAL. CODE CIV. PROC. § 527)

33) APPOINTMENT OF INDEPENDENT ESTATE ADMINISTRATOR BY FEDERAL COURT DUE TO STATE COURT FAILURE/BARRIERS

34) REMOVAL OF PAUL TRUST TRUSTEE / APPOINTMENT OF SEPARATE TRUSTEES

35) VIOLATIONS OF UNIFORM PRUDENT INVESTOR ACT, AS CODIFIED IN CALIFORNIA PROBATE CODE § 16045 ET SEQ.

**DEMAND FOR JURY TRIAL**

# I. INTRODUCTION

1.    Plaintiff Sheryl A. Moulton f/k/a[1] ("Plaintiff" or "Sheryl"), proceeding in pro per, brings this action against Defendants Stephen M. Paul ("Stephen Paul"), Buffington Law Firm, PC, Roger J. Buffington (collectively, "Attorney Defendants"), Hitchman Fiduciaries, LLC ("Hitchman"), and Does 1-100. Plaintiff alleges the following:

2.    This lawsuit addresses a protracted and multifaceted fraud, financial elder abuse, financial exploitation scheme primarily orchestrated by Defendant Stephen Paul, with the alleged aid of other Defendants, to unlawfully control, misappropriate assets from, and improperly administer the trust and estate of his elderly mother, Betty C. Paul ("Betty"), now deceased. The scheme involved mental and emotional abuse, financial elder abuse, the fraudulent procurement of estate planning documents through the unauthorized practice of law ("UPL"), concealment, breaches of fiduciary duty, and ultimately, extrinsic fraud upon the California state courts.

3.    Plaintiff, Betty's granddaughter, caregiver, and agent under a Durable Power of Attorney ("DPOA"), was a primary beneficiary of Betty's valid estate plan. Defendants' actions aimed to disinherit Plaintiff, enrich Stephen Paul, and retaliate against Plaintiff for reporting elder abuse.

4.    These actions are alleged to constitute a pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations Act (RICO), alongside numerous state law violations including, but not limited to, financial elder abuse, legal malpractice, and civil rights violations, causing significant harm to Betty and Plaintiff.

5.    Due to Defendants' alleged extrinsic fraud and the creation of unconstitutional barriers in state court, Plaintiff seeks relief from this Court, including damages, disgorgement, declaratory judgments, injunctive relief, accounting, removal of fiduciaries, and the appointment of an independent estate administrator and trustees.

---

[1] Defendant Stephen M. Paul made threats. Plaintiff Sheryl uses her former name for her safety.

## II. JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over Plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 18 U.S.C. § 1964(c).

7.     This Court has subject matter jurisdiction over Plaintiff's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and 42 U.S.C. §§ 1983 and 1985, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

8.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they arise from the same common nucleus of operative facts as the federal claims.

9.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a).

10.     The *Rooker-Feldman* doctrine does not bar this action due to, *inter alia*, extrinsic fraud on the state court. Plaintiff was unconstitutionally barred state court access as part of Defendants' alleged scheme.

11.     Plaintiff SHERYL A. MOULTON f/k/a ("Plaintiff") is an individual residing in Santa Clara County, California. She is the granddaughter of the late Betty C. Paul and brings this action individually and as a beneficiary of the Paul Trust and Estate.

12.     Defendant STEPHEN M. PAUL ("Stephen Paul") is an individual residing, on information and belief, in Monterey County, California, and is the son of Betty C. Paul.

13.     Defendant BUFFINGTON LAW FIRM, PC ("Buffington Firm") is, on information and belief, a California professional corporation with its principal place of business in Orange County, California.

14.     Defendant ROGER J. BUFFINGTON is, on information and belief, an individual residing in California and is an attorney and principal of the Buffington Law Firm, PC (collectively "Attorney Defendants").

15.     Defendant HITCHMAN FIDUCIARIES, LLC. ("Hitchman") is, on information and belief, a California corporation with its principal place of business in Orange County, California.

2
COMPLAINT

16.    DOES 1 through 100 are individuals or entities whose identities are currently unknown to Plaintiff and who are believed to be co-conspirators or aiders and abettors in the wrongful conduct alleged herein. Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when ascertained.

## IV. FACTUAL ALLEGATIONS

### A. Background and Betty Paul's Valid Estate Plan

17.    As a teenager, Plaintiff was raised by her maternal grandparents, Thomas L. Paul and Betty C. Paul, and maintained a close relationship with Thomas and Betty.

18.    In or around 2012/2013, Stephen M. Paul requested that Plaintiff return to California to be hired as Betty's employee/caregiver/assistant.

19.    In later 2018, Plaintiff discovered Betty's 2013 DPOA that named Sheryl as Betty's agent, at which time Sheryl (attempted) to serve Betty as agent.

20.    Betty, passed away in May 2021 at age 98.

21.    Betty was vulnerable to undue influence by her son Stephen M. Paul.

22.    Betty's son Stephen M. Paul managed Betty's finances and investments for over (10) ten years.

23.    Betty Paul's valid estate plan, established through the Thomas L. Paul and Betty C. Paul Revocable Living Trust dated March 24, 1997 (the "1997 Paul Trust" or "Paul Trust"), as amended multiple times (**Exhibits 13-23, 26-33**), and her Pour-Over Will (**Exhibit 31**: February 16, 2013 Will), consistently provided for Plaintiff and Stephen Paul's son, David L. Paul, as significant beneficiaries, and named Plaintiff and Stephen Paul as co-successor trustees, with Plaintiff as Estate executor (other named co-executor declined).

24.    The 2020 Trust A amendment (mirrors the 2010 Trust A amendment) and Betty's 2019 First Codicil were prepared by Betty C. Paul and Betty's attorneys. The documents represent Betty's wishes free of undue influence and unauthorized practice of law.

25.    Upon Thomas L. Paul's death on April 28, 2004, Trust B of the 1997 Paul Trust became irrevocable. Stephen Paul, despite acting as a "trustee" or *de facto* trustee, failed to serve

the required Probate Code § 16061.7 notice regarding this irrevocability. Sheryl alleges Probate Code § 16061.9 damages.

### B. Stephen Paul's Pattern of Undue Influence, Financial Control, and Elder Abuse

26.    Commencing in the early 2000s and escalating over nearly two decades, Stephen Paul engaged in a pattern of conduct designed to control Betty Paul and her finances, alienate her from other family members, and unlawfully enrich himself.

27.    This conduct included: (a) convincing Betty to change certified public accountant (CPA) to Stephen's longtime friend, Douglas Wisler, CPA, (b) change financial advisors and investment strategies to Stephen's benefit; (c) coercing "gifts" such as stock and real property ("White Rock Cabin"); (d) acting as *de facto* trustee for Trust B without proper authority, (e) failing to provide accountings, and (f) wrongfully restricting Betty's income for his own future benefit, causing Betty extreme financial hardship; (g) making threats of bodily harm against Betty and family members; and (h) filing a malicious DMV false complaint against Betty.

28.    Circa 2010, Stephen intimidated Betty with a false DMV complaint and further made bodily harm threats against Betty and family around the same timeframe.

29.    2012-2013, Stephen Paul orchestrated a scheme to disinherit Plaintiff from her 50% share of Betty's Carmel condo from Trust A. In addition to his early bodily harm threats against Betty and Stephen's false DMV complaint against Betty in 2010, Stephen, also, falsely accused Plaintiff of claiming Betty was "embezzling" trust funds, a fabrication Stephen intended to damage the relationship between Betty and Plaintiff. **(Exhibits 1, 7)**

30.    Stephen, in or around 2019, created a spreadsheet that further proves he accused his mom Betty of financial "malfeasance". **(Exhibits 7)**

31.    Stephen Paul's fraud complaint led Betty, under duress and Stephen's influence, to amend her trust in 2012 (Exhibit 19), removing Plaintiff as a beneficiary of the condo.

32.    In or around 2013, Stephen Paul recruited Plaintiff as Betty's caregiver as part of an alleged premeditated scheme to later manipulate circumstances for Plaintiff's further disinheritance (the "Frame Job" Caregiver Scheme).

33.  Stephen Paul also, for several years, concealed from Plaintiff her status as co-agent under a 2013 DPOA.

**C. Defendant Stephen M. Paul's Fraudulent 2015 "UPL Documents"**

34.  In or around October 2014, Stephen M. Paul emailed Plaintiff Sheryl that he talked to his mom Betty and she is "agreeable" to changes he proposed to the will. It seemed that he was trying to coerce Grandma Betty to change her will. He stated they would visit the attorney.

35.  They never visited Betty's attorney – because Betty did not want to make Stephen's changes to her will and trust. If Betty wanted to make changes, she would have gone to see her attorney, Mr. Ian McPhail.

36.  So, on January 16, 2015, Stephen Paul, a non-attorney, arrived at Betty's home (without any legal counsel) and engaged in the unauthorized practice of law (UPL) by directing and procuring invalid handwritten documents from Betty—a purported Trust Amendment to Trust A and a Codicil to the 2013 Will (collectively, the "2015 UPL Documents," (**Exhibit 3**).

37.  These 2015 UPL Documents were obtained under duress, undue influence, and while Betty's finances and investments were held in the balance – manipulated and controlled by her son Stephen.

38.  The signing of Stephen's 2015 UPL Documents, witnessed by Sheryl, was a detrimental act to Sheryl's own inheritance. However, driven by Betty's desire to reconcile with her son after his threats and hostility, and Betty's apparent reluctance but ultimate direction for Sheryl to sign ("Are you sure?" Sheryl asked), Betty indicated, reluctantly, for Sheryl to sign – and Sheryl complied. Both Sheryl and Betty sought to prevent problems with Stephen, with Betty later confirming her fear by stating "I did not want trouble from Steve."

39.  "The 2015 UPL Documents radically altered Betty's valid estate plan, primarily to enrich Stephen Paul at Plaintiff's expense. Stephen Paul improperly witnessed these documents despite being a primary beneficiary of the changes and controlling Betty's trust accounts.

40.  Stephen Paul immediately took possession of and concealed the 2015 UPL Documents from Betty, Plaintiff, and Betty's independent legal counsel for approximately seven

years, falsely claiming he had destroyed them. This fraudulent concealment tolled applicable statutes of limitations.

41.    The 2015 UPL Documents are void due to UPL, undue influence, duress, lack of capacity, and fraud. Stephen Paul's actions in procuring and later attempting to enforce these documents constituted an improper contest to Betty Paul's valid estate plan, triggering applicable no-contest clauses.

**D. Betty Paul's Efforts to Correct the Wrongs and Stephen Paul's Continued Interference**

42.    In 2018, after Plaintiff discovered the concealed 2013 DPOA, Stephen Paul made threats regarding Betty's care and made unauthorized withdrawals from Betty's accounts.

43.    On August 15, 2018, Betty, with independent counsel William B. Daniels, executed a valid "Revocation of Codicils Executed After February 16, 2013" (**Exhibit 32**), expressly revoking Defendant Stephen's 2015 UPL Codicil.

44.    Betty's attorney asked for Betty's legal file – and when the 2015 UPL Documents were requested from Stephen – Stephen claimed he had "destroyed them". Betty did not seem to believe Stephen and stated if he would not provide her a copy (so Betty and Betty's attorney would have a clear understanding of Betty's legal planning) – Betty stated she wanted to cancel out Stephen's documents.

45.    On March 29, 2019, Betty, with independent counsel, executed a valid Ninth Amendment to Trust A (**Exhibit 23**), which superseded Stephen Paul's purported 2015 UPL Trust A amendment and did not mention it.

46.    Despite Betty's clear actions, Stephen Paul continued his misconduct. In 2019, he falsely claimed trustee status to Monterey County Sheriff's Office law enforcement and attorneys, and wrote unauthorized "gift" checks from trust funds, constituting tortious interference with expected inheritance and financial elder abuse and harm to the Paul Trust.

47.    Stephen also failed to provide Plaintiff or Betty with the required Probate Code § 16061.7 notice of his purported trusteeship.

COMPLAINT

48.    Stephen deliberately refused to serve Probate Code § 16061.7 notice of "trusteeship" because then he would be obliged to provide Betty (and Sheryl) a copy of trust – which would, then have to include his 2015 UPL documents. Sheryl contends that Stephen's refusal to service due process notice (16061.7 notice) – constituted elder abuse and bad faith concealment.

49.    Plaintiff reported Stephen Paul's elder abuse, leading to retaliation by Stephen, including slander, interference with Plaintiff's employment as Betty's caregiver (wage theft), and sabotage of Plaintiff's housing applications, contributing to Plaintiff's financial distress and homelessness.

50.    Plaintiff contends that Defendant Stephen M. Paul purposely exploited Sheryl's kindness and generosity – and her disabilities (discrimination) – to further his fraud scheme.

51.    In 2020, Stephen Paul allegedly orchestrated a fraudulent APS complaint against Betty's attorney, Debra Burns, to sabotage a further (unexecuted) Tenth Trust Amendment (**Exhibit 24**) that reflected Betty's wishes mirroring her 2010 Trust A Amendment - free from Stephen's undue influence.

52.    In February 2021, yet another police "swatting" incident by Monterey County Sheriff's Office law enforcement - orchestrated by Stephen Paul led to the false detention of Plaintiff in front of her Grandma Betty.

53.    Stephen Paul's ongoing abuse, neglect, isolation, interference with medical care, and financial sabotage substantially contributed to Betty Paul's declining health and wrongful death on May 20, 2021.

**E. Post-Death Misconduct, Fraudulent Litigation, and Breaches by Successor Trustee**

54.    Due to Betty's declining health – and the tortious interference of Sheryl's DPOA by Stephen – Sheryl invoked as trustee on April 16, 2021.

55.    Plaintiff, as both a named successor trustee (Trust A) under Betty's valid 2019 amendments and successor co-trustee (Trust B), served Notices of Trusteeship (Probate Code § 16061.7) for Trust A and B onto Betty and trust beneficiaries. Due to Betty's disability - Betty

1   asked that Sheryl step into her successor trustee role on the basis of Betty's disability – and

2   pursuant to the terms of the Trust. (**Exhibit 25**).

3       56.    On April 4, 2022, Stephen Paul, dual-represented by Attorney Defendants, as both

4   "trustee" and trust beneficiary - filed a petition in Orange County Superior Court ("OCSC")

5   (Case No. 30-2022-01252880-PR-TR-CJC) seeking to enforce Stephen's long-concealed and

6   invalid 2015 UPL Documents. Sheryl never consented to the conflict of interest representation of

7   Paul both as trustee and beneficiary - by Buffington Law Firm.

8       57.    Stephen's petition contained false representations, including that Plaintiff was

9   trustee prior to her 2021 notice, and was signed under penalty of perjury.

10      58.    Plaintiff contends Stephen Paul's OCSC petition was time-barred under Probate

11  Code § 16061.8, as it was filed nearly a year after Plaintiff's § 16061.7 notice.

12      59.    Stephen's reliance on the UPL Documents also constituted an improper direct

13  contest to Betty's valid Trust.

14      60.    Stephen's 2019 purported trusteeship, then abandonment as "trustee" – then again

15  2022 reclamation of his "trusteeship" (on-off purported "trusteeship") – also, constituted yet

16  another direct contest to the Paul Trust.

17      61.    Plaintiff Sheryl further suggests that Defendant Stephen M. Paul causes direct

18  contest of the Paul Trust (directly via his 2015 UPL ('trust amendment') – but, also via his 2015

19  UPL 'will codicil'. Direct contest of Betty's Will (pour-over to Trust) – was also a direct contest

20  of trust – because it caused substantial changes to beneficiaries and shares – of both Will and

21  Trust.

22  **F. Attorney Defendants' Misconduct**

23      62.    Buffington Law Firm and Roger J. Buffington represented Stephen Paul in the

24  OCSC action despite knowing or having reason to know of the suspicious circumstances

25  surrounding the 2015 UPL Documents, the allegations of elder abuse, and Betty's subsequent

26  valid estate planning documents revoking or superseding the UPL Documents.

27      63.    They operated under an actual, unwaived conflict of interest by representing

28  Stephen Paul simultaneously as a purported trustee and as a self-interested beneficiary seeking to

enforce the fraudulent 2015 UPL Documents, without obtaining Plaintiff's informed written consent as an affected beneficiary, in violation of California Rules of Professional Conduct.

64.    Their actions in knowingly defending invalid documents with Trust funds – in their unwaived dual representation of Defendant as BOTH trustee AND beneficiary constituted legal malpractice, aiding and abetting Stephen Paul's breaches, and extrinsic fraud on the OCSC.

**G. Hitchman Fiduciaries, LLC's Misconduct**

65.    Upon court appointment as trustee in approximately 2023, Hitchman allegedly breached its fiduciary duties by: (a) failing to investigate the validity of the 2015 UPL Documents and the elder abuse allegations; (b) failing to act impartially and instead aligning with Stephen Paul and Attorney Defendants in defending the invalid UPL documents; (c) imprudently spending Trust funds on such defense and its own fees; (d) failing to preserve Trust assets, including allegedly wrongfully taking (or conspiring in the wrongful taking by others) of estate property (including, but not limited to: house contents, jewelry, paintings); (e) failing to properly account to or inform Plaintiff; and (f) failing to neutrally administer the Trust.

66.    Brett Hitchman of Hitchman Fiduciaries further threatened to surcharge Plaintiff Sheryl's Trust B inheritance for removal of Estate property from the Trust A condo. There are clear conflicts of interest – court-appointed Hitchman Fiduciaries represents BOTH Trust A and Trust B – and has caused wrongful taking of Estate property. Sheryl requests appointment of new trustees (separate neutral trustees for Trust A, Trust B) and appointment of Estate executrix.

67.    Failures in trust distributions by Trustee (until 2023) Stephen Paul and Trustee Hitchman (2023 to current) severely deprived Plaintiff, a disabled individual, of funds needed for legal representation, constituting disability discrimination under the ADA.

**H. RICO Allegations**

68.    Defendants Stephen Paul, Attorney Defendants, Hitchman, and Does 1-20 constituted an association-in-fact enterprise ("Fraud Enterprise").

69.    These Defendants conducted the Fraud Enterprise's affairs through a pattern of racketeering activity, including multiple acts of wire fraud (18 U.S.C. § 1343) and mail fraud (18 U.S.C. § 1341) spanning several years.

70. The "Fraud Enterprise's" predicate acts included, but were not limited to, using interstate wires and U.S. Mail to transmit fraudulent documents (including the 2015 UPL Documents and related litigation filings), misrepresentations concerning Betty Paul's estate plan and Plaintiff's status, false accountings, and communications in furtherance of Stephen's scheme to defraud Betty Paul, Plaintiff, and the Trust/Estate, and to misappropriate assets.

71. Not only did the "Fraud Enterprise" conspire in the defense of invalid UPL Documents, they further conspired in fraud on the court – with false representations that Sheryl was a trustee prior to 2021. The State Court has ordered a 20-year accounting. Sheryl was never a trustee prior to 2021 – and Charles Schwab & Co and the IRS can attest to that. The "Fraud Enterprise" commits fraud on the court – with deliberate intent to defraud Sheryl's rightful employment wages and inheritance.

72. This pattern of racketeering activity directly and proximately injured Plaintiff's business and property, including the loss of her rightful inheritance, depletion of Trust assets used to fund Defendants' wrongful activities, and legal expenses and other expenses incurred to combat the fraud.

**I. Barred State Court Access, Deprivation of Constitutional Rights, and Timeliness**

73. Defendants' actions, including the commission of extrinsic fraud in the OCSC (e.g., misrepresenting Plaintiff's trustee status, proffering fraudulent documents, obstructive tactics, filing in improper venue), have effectively and unconstitutionally barred Plaintiff from meaningful access to California state courts to probate Betty Paul's valid Will, administer her Estate, and obtain relief.

74. Plaintiff alleges that the conduct of the Defendants, including actions by state actors influenced by their fraud, violated her constitutional rights. These violations include the deprivation of property and liberty interests without due process (5th Amendment), denial of equal protection (14th Amendment), infringement of rights to petition, speak, and access courts (1st Amendment), unconstitutional seizure of inheritance (4th Amendment), and the imposition of unconstitutional financial barriers to justice, such as a $10,000 bond demand, sanctions, and threats of further sanctions (8th Amendment). Plaintiff, a disabled person, further asserts due

process violations while facing threats and theft of money and property, and being threatened by law enforcement. She claims retaliation for mandated elder abuse reporting, disability discrimination, and inhumane and cruel treatment (8th Amendment), characterizing the actions of Stephen M. Paul and state and government actors in conspiracy as inhumane and "outrageous government conduct. Defendant Stephen M. Paul and the Attorney Defendants have obstructed the state court system through a conspiracy to commit fraud on the court, thereby barring Plaintiff's access and necessitating federal court intervention under its equity jurisdiction.

75.    Many of Plaintiff's claims are subject to tolling (equitable tolling, fraudulent concealment, delayed discovery, unconstitutionally barred access to state court) due to Defendants' active concealment of their wrongdoing, particularly Stephen Paul's seven-year concealment of the 2015 UPL Documents, and the ongoing obstruction of Plaintiff's access to justice.

76.    Plaintiff could not reasonably have discovered the full scope of the claims until disclosures in the OCSC litigation (post-early 2022) and subsequent events.

77.    The ongoing nature of the RICO conspiracy, continuing harms from breaches of trust, and recent acts of extrinsic fraud and retaliation make these claims timely.

78.    **Plaintiff incorporates the attached exhibits to this Complaint:**

79.    **Exhibit 1** 2019: Debra Brubaker Burns, Esq. of Schwartz Law Group documented handwritten notes regarding communication with Stephen M. Paul. These notes indicate Stephen allegedly made a false claim that his mother, Betty, "embezzled over $100k," stating he possessed "paperwork" to support this accusation. Stephen's fabricated story appears to be his attempt to conceal the fact that he restricted his mom's income to a poverty level, in alleged violation of California Probate Code 4264(d). Subsequently, Stephen then falsely accused Sheryl of accusing Betty of "embezzlement," to cause Sheryl's disinheritance from her 50% share of Betty's condo.

80.    **Exhibit 2** 2014-10-11: Stephen M. Paul's email to Sheryl: "I talked to [G]randma about changing some of the things in the will and she's agreeable to it." (undue influence)

81. **Exhibit 3** 2015-01-16: Stephen M. Paul's alleged UPL (unauthorized practice of law) / coerced trust amendment & will codicil.

82. **Exhibit 4** 2018-03-13: Stephen M. Paul email to Sheryl: "You are going to be the only executor in the Will after Grandma finishes (for the second time) taking me out of her will." (proves Stephen's intent for his bad faith concealed 2015 UPL)

83. **Exhibit 5** 2018-12-28: Stephen M. Paul email to Betty

84. **Exhibit 6** 2019-04-12:  Monterey County Sheriff's report

85. **Exhibit 7** 2019-07-07:  Stephen M. Paul's spreadsheet

86. **Exhibit 8** 2020-02-05    Stephen M. Paul email to Betty's attorney, Ms. Debra Brubaker Burns, Esq.

87. **Exhibit 9** 2020-02-06:  Debra Brubaker Burns, Esq. of Schwartz Law Group letter

88. **Exhibit 10** 2025-01-23: Summary Statement: Justine Paul (interview by Ronald I. Parker (PI)

89. **Exhibit 11** 2025-04-09: Stephen M. Paul's Objection to Trustee's Notice of Proposed Action

**TRUST & WILL DOCUMENTS (EXCLUDING STEPHEN'S 2015 UPL):**

90. **Exhibit 12** 2018: The Latest Estate Planning Documents (written by Betty's attorney, William B. Daniels, Esq. in 2018)

**TRUST:**

91. **Exhibit 13** 1973-02-20: Thomas L. Paul and Betty C. Paul Revocable Living Trust

92. **Exhibit 14** 1997-03-24: Declaration of Trust

93. **Exhibit 15** 2004-06-10: Amendment to Paul Trust Dated March 24, 1997 (Trust A - First Amendment)

94. **Exhibit 16** 2005-01-24: Amendment to Paul Trust Dated March 24, 1997 (Trust A - Second Amendment)

95. **Exhibit 17** 2010-02-18: Amendment to Paul Trust Dated March 24, 1997 (Trust A - Third Amendment)

96.  **Exhibit 18** 2010-06-22: Amendment to Paul Trust Dated March 24, 1997 (Trust A - Fourth Amendment)

97.  **Exhibit 19** 2012-03-23: Amendment to Paul Trust Dated March 24, 1997 (Trust A - Fifth Amendment)

98.  **Exhibit 20** 2012-03-23: Amendment to Paul Trust Dated March 24, 1997 (Trust A - Six Amendment)

99.  **Exhibit 21** 2013-02-10: Amendment to Paul Trust Dated March 24, 1997 (Trust A - Seventh Amendment)

100.  **Exhibit 22** 2013-02-10: Amendment to Paul Trust Dated March 24, 1997 (Trust A - Eight Amendment)

101.  **Exhibit 23** 2019-03-29: Amendment to the Paul Trust Dated March 24, 1997 (Trust A - Ninth Amendment)

102.  **Exhibit 24** 2020-02-06: Amendment Dated February 6, 2020 to the Paul Trust Dated March 24, 1997 (Trust A - Tenth Amendment) - unexecuted due to Stephen M. Paul's alleged fraud/sabotage.

103.  **Exhibit 25** 2021-04-16: Sheryl Moulton's Notification by Trustee (CA Probate Code 16061.7) - for both Paul Trust A & B - served onto beneficiaries

**WILLS**

104.  **Exhibit 26** 1995-11-20: Will of Betty C. Paul

105.  **Exhibit 27** 1997-03-24: Will of Betty C. Paul

106.  **Exhibit 28** 1998-11-2:3 Will of Betty C. Paul

107.  **Exhibit 29** 2006-07-14: Will of Betty C. Paul

108.  **Exhibit 30** 2010-02-18: Will of Betty C. Paul

109.  **Exhibit 31** 2013-02-16: Will of Betty C. Paul

110.  **Exhibit 32** 2018-08-15: Betty C. Paul's "Revocation of Codicils Executed After February 16, 2013" (prepared by attorney Willam B. Daniels, Esq.)

111.  **Exhibit 33** 2019-03-29: First Codicil to Last Will and Testament of Betty C. Paul

13
COMPLAINT

# V. CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### (Bad Faith Concealment of Trusteeship and Failure to Provide Trustee Notification – Cal. Prob. Code §§ 16061.7, 16061.9)
### (Against Defendant Stephen M. Paul, Also in Conspiracy with Attorney Defendants)

112.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

113.  At all relevant times, Defendant STEPHEN M. PAUL ("Stephen Paul") acted as a purported or *de facto* trustee of the Paul Trust, or relevant portions thereof, particularly after events that would prompt notification duties under California Probate Code § 16061.7.

114.  California Probate Code § 16061.7 requires a trustee to serve a notification containing specific information to each beneficiary of an irrevocable trust (or irrevocable portion) and to each heir of a deceased settlor under specified circumstances.

115.  Defendant Stephen Paul, in bad faith, concealed his assumption or exercise of trustee duties and failed to serve the legally required notification by trustee as mandated by California Probate Code § 16061.7 upon Trustor/Trustee Betty and Plaintiff, who was a beneficiary and/or heir entitled to such notice, thereby preventing Plaintiff from being duly informed and taking timely action.

116.  Defendant Stephen M. Paul's concealment of his purported "trusteeship" further deprived both then-Trustor/Trustee Betty and Plaintiff Sheryl of not only due process California Probate Code § 16061.7 notice, but deprive both of entitled copy to the Trust (which would have had to include Stephen's 2015 UPL Documents. Stephen's gross failure to serve notice and Trust documents – constituted as elder abuse. bad faith concealment and fraud.

117.  To this very day, Plaintiff Sheryl still does not know if and when Stephen M. Paul ever became a trustee of the Paul Trust – because it seems that Mr. Paul refuses to serve such due process notice – further proof of his bad faith concealment and fraud scheme.

118.  Pursuant to California Probate Code § 16061.9, a trustee who fails to serve the required notification shall be responsible for all damages, attorney's fees, and costs caused by the failure, unless a reasonably diligent effort to comply is shown. Defendant Stephen Paul did not

make such a diligent effort; his failure and concealment were intentional. Sheryl estimates that these particular damages are in excess of $3 million (including treble damages for fraud), these damages exclude punitive, IIED, financial abuse and exploitation, employment wage theft, discrimination, and other damages.

## SECOND CAUSE OF ACTION
### (Violation of RICO - 18 U.S.C. § 1962(c))
### (Against Stephen Paul, Attorney Defendants, Does 1-100)

119.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

120.  Defendants Stephen Paul, Attorney Defendants, and Does 1-100, as members of the "Fraud Enterprise", conducted and participated, directly and indirectly, in the conduct of the "Fraud Enterprise's" affairs through a pattern of racketeering activity, as detailed in the Factual Allegations, including multiple acts of mail fraud and wire fraud, which proximately caused injury to Plaintiff's business or property.

## THIRD CAUSE OF ACTION
### (Conspiracy to Violate RICO - 18 U.S.C. § 1962(d))
### (Against Stephen Paul, Attorney Defendants, Hitchman, Does 1-100)

121.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

122.  Defendants Stephen Paul, Attorney Defendants, Hitchman, and Does 1-100, conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct and participate in the affairs of the "Fraud Enterprise" through a pattern of racketeering activity. They committed overt acts in furtherance of this conspiracy, proximately injuring Plaintiff.

## FOURTH CAUSE OF ACTION
### (Extrinsic Fraud on the Court - California Law)
### (Against Stephen Paul, Attorney Defendants, Does 1-100)

123.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

124.  Defendants Stephen Paul and Attorney Defendants, and Does 1-100, committed extrinsic fraud in the OCSC Case No. 30-2022-01252880-PR-TR-CJC by acts including, but not limited to, proffering fraudulent documents (the 2015 UPL Documents), concealing material evidence from Plaintiff and the court, making material misrepresentations regarding Plaintiff's trustee status and the validity of estate planning documents, and engaging in obstructive tactics that prevented Plaintiff from having a fair opportunity to present her case and assert her rights. This fraud occurred primarily after early 2022.

125.  This claim falls within the recognized exception to the *Rooker-Feldman* doctrine.

### FIFTH CAUSE OF ACTION
**(Financial Elder Abuse, Elder Abuse by Proxy - Cal. Welf. & Inst. Code § 15600 et seq.)**
**(Subject to Tolling)**
**(Against Stephen Paul, Does 1-100)**

126.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

127.  At all relevant times, Betty Paul was an "elder" as defined by Cal. Welf. & Inst. Code § 15610.27.

128.  Defendant Stephen Paul committed financial elder abuse by taking, secreting, appropriating, obtaining, or retaining real or personal property of Betty Paul for a wrongful use or with intent to defraud, or both, and by assisting in such acts, as detailed in the Factual Allegations. This includes, but is not limited to, procuring the 2015 UPL Documents through undue influence, restricting her income, coercing gifts, the fraudulent "frame job" caregiver scheme, interference with Plaintiff's DPOA agency for Betty, and other acts of financial control and manipulation.

129.  Defendant Stephen Paul further, in bad faith, concealed his purported "trusteeship" from Betty and failed to serve CA Probate Code 16061.7 notice onto Betty -then Trustee. Sheryl alleges this was elder abuse and bad faith concealment.

130.  Stephen Paul's conduct was reckless, oppressive, fraudulent, or malicious, entitling Plaintiff to enhanced remedies under the Elder Abuse Act.

131.  The statute of limitations for claims related to the 2015 UPL Documents and associated conduct is tolled due to Stephen Paul's fraudulent concealment.

### SIXTH CAUSE OF ACTION
### (Breach of Fiduciary Duty and Multiple Breaches of Trust)
### (Against Stephen Paul, Hitchman, Does 1-100)

132.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

133.  Defendants Stephen Paul (as *de facto* or purported trustee) owed fiduciary duties to Betty Paul (as Trustor/Trustee/beneficiary) and Sheryl, as beneficiary of the Paul Trust.

134.  Defendant Hitchman (as court-appointed trustee) owed fiduciary duty Sheryl, as beneficiary of the Paul Trust.

135.  Defendants breached these duties through the wrongful acts alleged herein, including defending Stephen M. Paul's 2015 invalid UPL documents, in spite of Betty's subsequent controlling documents, self-dealing, mismanagement, failure to act impartially, failure to preserve assets, failure to account, and acting under conflicts of interest.

### SEVENTH CAUSE OF ACTION
### (Conspiracy to Commit Elder Abuse and Breach of Fiduciary Duty
### Contributing to Wrongful Death)
### (Against Stephen Paul, Does 1-100)

136.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

137.  Defendants conspired to commit elder abuse and breaches of fiduciary duty against Betty Paul, as alleged herein. These wrongful acts, including financial exploitation, isolation, interference with care, and infliction of severe emotional distress, were substantial factors in causing Betty Paul's declining health and wrongful death.

## EIGHTH CAUSE OF ACTION
### (Legal Malpractice)
### (Against Attorney Defendants, Does 1-100)

138.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

139.  Attorney Defendants owed duties of care to the Paul Trust and its beneficiaries, including Plaintiff, when representing Stephen Paul in his purported capacity as trustee. They breached these duties by, *inter alia*, failing to act competently, failing to avoid conflicts of interest, knowingly pursuing litigation based on fraudulent documents, and aiding Stephen Paul's breaches of trust, thereby causing damage to the Trust and Plaintiff.

## NINTH CAUSE OF ACTION
### (Negligence)
### (Against Attorney Defendants, Does 1-100)

140.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

141.  Attorney Defendants owed a duty of care to Plaintiff as a beneficiary foreseeably affected by their representation of Stephen Paul concerning the Paul Trust. They breached this duty through their negligent actions and omissions alleged herein, causing Plaintiff harm.

## TENTH CAUSE OF ACTION
### (Fraudulent Concealment)
### (Against Stephen Paul, Attorney Defendants, Does 1-100)

142.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

143.  Defendant Stephen M. Paul and Attorney Defendants had a duty to disclose material facts to the OCSC and potentially to Plaintiff regarding the invalidity of the 2015 UPL Documents and Stephen Paul's conflicting roles. They intentionally concealed these facts to deceive and induce reliance, causing Plaintiff damage.

1

2

**ELEVENTH CAUSE OF ACTION**
**(Intentional Breach of Fiduciary Duty)**
**(Against Attorney Defendants, Does 1-100)**

3

4

144.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

5

6

7

8

145.  Attorney Defendants, while representing Stephen Paul concerning the Paul Trust, intentionally acted against the interests of the Trust and Sheryl as beneficiary, by knowingly pursuing claims based on fraudulent documents and aiding Stephen Paul's breaches, constituting an intentional breach of fiduciary duties owed.

9

10

11

**TWELFTH CAUSE OF ACTION**
**(Fraud)**
**(Against Stephen Paul, Does 1-100)**

12

13

146.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

14

15

16

147.  Defendant Stephen Paul made numerous material misrepresentations and concealments to Plaintiff and Betty Paul, as detailed herein, with the intent to deceive and induce reliance, causing damage.

17

18

**THIRTEENTH CAUSE OF ACTION**
**(Fraud Conspiracy)**
**(Against Stephen Paul, Attorney Defendants, Does 1-100)**

19

20

148.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

21

22

23

24

149.  Defendants Stephen Paul and Attorney Defendants conspired to commit fraud against Plaintiff and Betty Paul through the scheme alleged herein, involving misrepresentations, concealment, and the use of fraudulent documents.

25

26

**FOURTEENTH CAUSE OF ACTION**
**(Disgorgement of Fees / Aiding and Abetting Breach of Trust / Unjust Enrichment)**
**(Against Attorney Defendants, Hitchman, Does 1-100)**

27

28

150.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

COMPLAINT

151. Attorney Defendants and Hitchman aided and abetted Stephen Paul's breaches of trust and were unjustly enriched by receiving fees paid from Trust funds for improper purposes, including defending fraudulent documents and Stephen Paul's self-interest. Plaintiff seeks disgorgement of such fees.

## FIFTEENTH CAUSE OF ACTION
### (Violation of the Americans with Disabilities Act)
### (Against Stephen Paul, Attorney Defendants, Hitchman, Does 100)

152. Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

153. Plaintiff is a qualified individual with a disability. Defendants, including through their actions impacting trust distributions necessary for Plaintiff's legal representation and participation, discriminated against Plaintiff based on her disability, denying her equal access to benefits and services related to the trust administration and legal proceedings.

## SIXTEENTH CAUSE OF ACTION
### (Violation of the Unruh Civil Rights Act)
### (Against Stephen Paul, Attorney Defendants, Hitchman, Does 1-100)

154. Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

155. Defendants' actions, including discriminatory conduct related to Plaintiff's disability and potentially other protected characteristics in the context of trust administration and related services, violated Plaintiff's rights under the Unruh Act.

## SEVENTEENTH CAUSE OF ACTION
### (Violation of the Bane Act)
### (Against Stephen Paul, Does 1-100)

156. Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

157. Defendant Stephen Paul, through threats, intimidation, or coercion (including threats of bodily harm and litigation), interfered or attempted to interfere with Plaintiff's exercise

and enjoyment of rights secured by the Constitution or laws of the United States or California, including her rights related to the trust, her role as POA, and her right to report elder abuse.

## EIGHTEENTH CAUSE OF ACTION
### (Violation of the Consumers Legal Remedies Act (CLRA))
### (Against Stephen Paul, Attorney Defendants, Hitchman, Does 1-100)

158.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

159.  Defendants engaged in unfair or deceptive acts or practices in transactions intended to result or which resulted in the sale or lease of goods or services (including fiduciary and legal services related to the trust) to Plaintiff or Betty Paul as consumers, in violation of the CLRA.

## NINETEENTH CAUSE OF ACTION
### (Violation of Civil Rights - 42 U.S.C. § 1983)
### (Against Stephen Paul, Attorney Defendants,
### Hitchman as conspirators with any alleged state actors, Does 1-100)

160.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

161.  Defendants, acting under color of state law (including through alleged conspiracy with state actors or misuse of state legal processes), deprived Plaintiff of rights, privileges, or immunities secured by the Constitution and laws, including rights to due process, equal protection, and access to courts.

## TWENTIETH CAUSE OF ACTION
### (Conspiracy to Interfere with Civil Rights - 42 U.S.C. § 1985(2) and § 1985(3))
### (Against Stephen Paul, Attorney Defendants, Does 1-100, and other private defendants
### acting in concert with any alleged state actors)

162.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

163.  Defendants conspired for the purpose of impeding, hindering, obstructing, or defeating the due course of justice in California state courts with intent to deny Plaintiff equal protection, or conspired to injure Plaintiff for lawfully enforcing her rights, or conspired to

deprive Plaintiff of equal protection or equal privileges and immunities under the laws, based on discriminatory animus (including disability).

### TWENTY-FIRST CAUSE OF ACTION
### (Violation of the Ralph Civil Rights Act)
### (Against Stephen Paul, Does 1-100)

164. Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

165. Defendant Stephen Paul committed or threatened violence against Plaintiff motivated by Plaintiff's protected characteristics (including potentially disability or association with Betty Paul), violating the Ralph Act.

### TWENTY-SECOND CAUSE OF ACTION
### (Deprivation of Constitutional Rights & Outrageous Government Conduct)
### (Against Stephen Paul, Attorney Defendants, and relevant Does, acting in concert with any alleged state actors)

166. Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

167. Defendants' conduct, including alleged manipulation of state court proceedings and conspiracy with state actors, was so outrageous and violative of fundamental fairness as to shock the conscience and deprive Plaintiff of her constitutional rights under the 1st, 4th, 5th, 8th, and 14th Amendments.

### TWENTY-THIRD CAUSE OF ACTION
### (Tortious Interference with Agency Relationship (Harm to Agent))
### (Against Stephen Paul, Does 1-100)

168. Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

169. Defendant Stephen Paul intentionally and wrongfully interfered with the agency relationship between Plaintiff and Betty Paul (under the DPOA), causing harm to Plaintiff (e.g., financial loss from unreimbursed loans, emotional distress, liability exposure).

## TWENTY-FOURTH CAUSE OF ACTION
### (Retaliation for Reporting Elder Abuse)
### (Against Stephen Paul, Does 1-100)

170.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

171.  Plaintiff engaged in protected activity by reporting Stephen Paul's suspected financial elder abuse. As a result, Stephen Paul subjected Plaintiff to adverse actions, including interference with employment, housing sabotage, slander, and litigation, constituting unlawful retaliation.

## TWENTY-FIFTH CAUSE OF ACTION
### (Intentional Interference with Expected Inheritance (IIEI))
### (Against Stephen Paul, Does 1-100)

172.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

173.  Plaintiff had a reasonable expectation of receiving an inheritance under Betty Paul's valid estate plan. Defendant Stephen Paul intentionally interfered with this expectancy through tortious conduct (undue influence, fraud, UPL, concealment), preventing Plaintiff from receiving her inheritance and causing damages. Plaintiff lacks an adequate remedy in probate court due to Defendants' extrinsic fraud and obstruction.

## TWENTY-SIXTH CAUSE OF ACTION
### (Wrongful Death)
### (Against Stephen Paul, Does 1-100)

174.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

175.  Defendant Stephen Paul's wrongful acts and neglect, including elder abuse, infliction of emotional distress, and interference with care, were substantial factors in causing the death of Betty C. Paul. Plaintiff, as Betty's granddaughter and heir, brings this claim for wrongful death damages.

1
2

### TWENTY-SEVENTH CAUSE OF ACTION
### (Tortious Interference with Employment Contract/Wage Theft)
### (Against Stephen Paul, Does 1-100)

3

176.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though

4

fully set forth herein.

5

177.  Plaintiff had a valid employment relationship/agreement to provide caregiving

6

services for Betty Paul. Defendant Stephen Paul intentionally disrupted this relationship through

7

wrongful acts (e.g., retaliation, slander, interference with payment), causing Plaintiff loss of

8

wages and other damages.

9
10

### TWENTY-EIGHTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress (IIED))
### (Against Stephen Paul, Does 1-100)

11

12

178.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though

13

fully set forth herein.

14

179.  Defendant Stephen Paul engaged in outrageous conduct (including threats, fraud,

15

abuse of legal process, retaliation) intended to cause, or with reckless disregard of the probability

16

of causing, severe emotional distress to Plaintiff, and Plaintiff did suffer severe emotional

17

distress as a result.

18
19

### TWENTY-NINTH CAUSE OF ACTION**
### (Violation of UCL - Cal. Bus. & Prof. Code § 17200 et seq.)
### (Against All Defendants, Does 1-100)

20

21

180.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though

22

fully set forth herein.

23

181.  Defendants engaged in unlawful, unfair, and fraudulent business acts and practices

24

as alleged herein, including breaches of fiduciary duty, elder abuse, malpractice, fraud, and civil

25

rights violations, causing Plaintiff and the public harm. Plaintiff seeks restitution and injunctive

26

relief.

27
28

COMPLAINT

## THIRTIETH CAUSE OF ACTION
### (Declaratory Relief)
### (Against All Defendants, Does 1-100)

182.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

183.  An actual controversy exists between Plaintiff and Defendants regarding their respective rights and duties concerning Betty Paul's estate plan, the validity of various documents, the administration of the Paul Trust, and the conduct alleged herein.

184.  Plaintiff seeks a judicial declaration of rights, including but not limited to:

185.  That the 2015 UPL Documents are void and unenforceable.

186.  That Betty Paul's 2013 Will (**Exhibit 31**), 2018 Revocation (**Exhibit 32**), and 2019 Trust Amendment (e.g., **Exhibit 23**) and First Codicil (**Exhibit 33**) constitute her valid and controlling estate plan – with her final intent in the 2020 Trust A Amendment (unexecuted due to TIEI/Stephen M. Paul') (**Exhibit 24**)

187.  That Stephen M. Paul triggered the no-contest clauses in Betty Paul's valid Will and Trust and has forfeited all interests thereunder.

188.  The respective duties of the parties regarding the Trust and Estate assets.

189.  That Defendants' conduct violated the various laws and rights as alleged.

190.  A judicial declaration is necessary and appropriate at this time so that the parties may ascertain their rights and duties.

## THIRTY-FIRST CAUSE OF ACTION
### (Accounting)
### (Against Stephen Paul, Hitchman, Does 1-100)

191.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

192.  Defendants Stephen Paul (as *de facto* or purported trustee) and Hitchman (as court-appointed trustee) had and have a duty to account to the beneficiaries for all transactions involving the Paul Trust.

193.  Plaintiff has demanded an accounting, or an adequate accounting has not been provided, and a formal accounting by the Court is necessary to determine the assets, liabilities, receipts, and disbursements of the Trust and Estate.

### THIRTY-SECOND CAUSE OF ACTION
### (Emergency Injunctive Relief)
### (Against All Defendants)

194.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

195.  Plaintiff is likely to succeed on the merits of her claims. Plaintiff will suffer irreparable harm if Defendants are not enjoined from further dissipating Trust and Estate assets, continuing their fraudulent conduct, and obstructing the proper administration of Betty Paul's estate.

196.  Plaintiff seeks a Temporary Restraining Order and Preliminary and Permanent Injunctions enjoining Defendants from:

197.  Selling, transferring, encumbering, or otherwise disposing of any assets of the Paul Trust or Estate of Betty C. Paul without court order or Plaintiff's consent.

### THIRTY-THIRD CAUSE OF ACTION
### (Appointment of Independent Estate Administrator by Federal Court
### Due to State Court Barriers)
### (Against All Defendants, and seeking Order from the Court)

198.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

199.  Betty Paul's estate requires administration. Due to Defendants' extrinsic fraud and the creation of unconstitutional barriers, Plaintiff has been effectively barred from accessing the California state probate court to open probate and be appointed executor.

200.  Federal equity jurisdiction is necessary to provide a remedy.

201.  Plaintiff requests this Court appoint a qualified, independent, and neutral professional fiduciary or attorney as administrator of the Estate of Betty C. Paul to ensure its proper and lawful administration

## THIRTY-FOURTH CAUSE OF ACTION
### (Removal of Paul Trust Trustee / Appointment of Separate Trustees)
### (Against Hitchman, Stephen Paul, Does 1-100)

202.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

203.  Defendant Hitchman has committed serious breaches of trust as alleged herein. Defendant Stephen Paul was unsuitable to act as trustee due to his extensive wrongdoing.

204.  Removal of Hitchman as trustee and an order enjoining Stephen Paul from acting as trustee, and the appointment of one or more independent court-appointed trustee(s) for the Paul Trust (Trust A and Trust B), are necessary to protect the Trust assets and the interests of the beneficiaries.

## THIRTY-FIFTH CAUSE OF ACTION
### (Violation of Uniform Prudent Investor Act - Cal. Prob. Code § 16045 et seq.)
### (Against Stephen Paul, Hitchman Fiduciaries, LLC, and Does 1-100)

205.  Plaintiff incorporates by reference paragraphs 1 through 111, inclusive, as though fully set forth herein.

206.  Defendants Stephen M. Paul as *de facto* trustee or trustee and Hitchman Fiduciaries, LLC, as court-appointed trustees of the Paul Trust, owed a duty to the beneficiaries to comply with the Uniform Prudent Investor Act (UPIA).

207.  Stephen Paul breached his UPIA duties by, *inter alia*: creating complex investments in Betty Paul's trusts designed to cause her increased dependence on him, rather than for prudent investment purposes; managing trust assets partially and for his own benefit; and failing to invest and manage trust assets solely in the interest of the beneficiaries.

208.  Hitchman Fiduciaries, LLC, breached its UPIA duties by, inter alia: imprudently spending Trust funds defending invalid documents and paying its own and Attorney Defendants' fees; failing to preserve trust assets; failing to properly manage and oversee the investment of trust assets in the sole interest of the beneficiaries; and failing to act impartially.

209.  As a direct and proximate result of these UPIA breaches, the Paul Trust has suffered financial losses and diminution in value. Plaintiff, as a beneficiary, has been harmed.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sheryl Moulton f/k/a prays for judgment against Defendants as follows:

1. Compensatory damages against all Defendants, jointly and severally where applicable, including damages for intentional infliction of emotional distress, in an amount to be proven at trial;

2. Treble damages on the RICO claims pursuant to 18 U.S.C. § 1964(c);

3. Treble damages for fraud;

4. Double damages pursuant to California Probate Code Punitive and exemplary damages against Defendants Stephen Paul, Attorney Defendants, and other culpable Defendants according to proof, in an amount sufficient to punish and deter;

5. Statutory damages, including under the Unruh Civil Rights Act, the Bane Act, and the Consumers Legal Remedies Act;

6. All remedies available under the Elder Abuse and Dependent Adult Civil Protection Act (Cal. Welf. & Inst. Code § 15600 et seq.), including enhanced remedies, attorney's fees, costs, disinheritance of Stephen Paul from any interest in Betty Paul's estate or trust, and double damages pursuant to California Probate Code § 859 for bad faith wrongful taking of property;

7. California Probate Code § 259 damages, for elder abuse, bad faith concealment, etc.

8. For damages, including attorney's fees and costs, against Defendant Stephen M. Paul pursuant to California Probate Code § 16061.9 for his bad faith concealment of trusteeship and failure to provide the required trustee notification and copy of Trust;

9. Restitution and disgorgement for violations of the UCL (Cal. Bus. & Prof. Code § 17200 et seq.);

10. Declaratory relief as requested in the Thirtieth Cause of Action;

11. An order compelling a full and complete accounting from Stephen Paul and Hitchman Fiduciaries, LLC for their administration of the Paul Trust;

12. Orders compelling disgorgement of all improper fees and unjust enrichment obtained by Defendants;

13. Temporary, preliminary, and permanent injunctive relief as requested in the Thirty-Second Cause of Action;

14. An order removing Hitchman as trustee of the Paul Trust, enjoining Stephen Paul from acting as trustee, and appointing one or more independent court-appointed trustee(s) for the Paul Trust (Trust A and Trust B);

15. An order from this Federal Court appointing a qualified, independent, and neutral professional fiduciary or attorney as administrator of the Estate of Betty C. Paul;

16. Pre-judgment and post-judgment interest at the legal rate;

17. Reasonable attorney's fees and costs of suit as permitted by law (including under RICO, Elder Abuse Act, ADA, Unruh Act, Bane Act, Ralph Act, 42 U.S.C. § 1988, UCL (BPC §17200 where applicable), Cal. Prob. Code § 16061.9, and any applicable statutes);

17. Such other and further relief as the Court deems just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

SHERYL MOULTON f/k/a

Dated: May 9, 2025

By Sheryl Moulton f/k/a
Sheryl Moulton f/k/a
Plaintiff, In Pro Per

29
COMPLAINT

## EXHIBITS

| 1 | 2019 | Debra Brubaker Burns, Esq. of Schwartz Law Group documented handwritten notes regarding communication with Stephen M. Paul. These notes indicate Stephen allegedly made a false claim that his mother, Betty, "embezzled over $100k," stating he possessed "paperwork" to support this accusation. Stephen's fabricated story appears to be his attempt to conceal the fact that he restricted his mom's income to a poverty level, in alleged violation of California Probate Code 4264(d). Subsequently, Stephen then falsely accused Sheryl of accusing Betty of "embezzlement," to cause Sheryl's disinheritance from her 50% share of Betty's condo. |
|---|---|---|
| 2 | 2014-10-11 | Stephen M. Paul's email to Sheryl: "I talked to [G]randma about changing some of the things in the will and she's agreeable to it." (undue influence) |
| 3 | 2015-01-16 | Stephen M. Paul's alleged UPL (unauthorized practice of law) / coerced trust amendment & will codicil. |
| 4 | 2018-03-13 | Stephen M. Paul email to Sheryl: "You are going to be the only executor in the Will after Grandma finishes (for the second time) taking me out of her will." (proves Stephen's intent for his bad faith concealed 2015 UPL) |
| 5 | 2018-12-28 | Stephen M. Paul email to Betty |
| 6 | 2019-04-12 | Monterey County Sheriff's report |
| 7 | 2019-07-07 | Stephen M. Paul's spreadsheet |
| 8 | 2020-02-05 | Stephen M. Paul email to Betty's attorney, Ms. Debra Brubaker Burns, Esq. |
| 9 | 2020-02-06 | Debra Brubaker Burns, Esq. of Schwartz Law Group letter |
| 10 | 2025-01-23 | Summary Statement: Justine Paul (interview by Ronald I. Parker (PI) |

| 11 | 2025-04-09 | Stephen M. Paul's Objection to Trustee's Notice of Proposed Action |
|---|---|---|

## TRUST & WILL DOCUMENTS

| 12 | 2018 | The Latest Estate Planning Documents (written by Betty's attorney, William B. Daniels, Esq. in 2018) |
|---|---|---|

## TRUSTS

| 13 | 1973-02-20 | Thomas L. Paul and Betty C. Paul Revocable Living Trust |
|---|---|---|
| 14 | 1997-03-24 | Declaration of Trust |
| 15 | 2004-06-10 | Amendment to Paul Trust Dated March 24, 1997 (Trust A - First Amendment) |
| 16 | 2005-01-24 | Amendment to Paul Trust Dated March 24, 1997 (Trust A - Second Amendment) |
| 17 | 2010-02-18 | Amendment to Paul Trust Dated March 24, 1997 (Trust A - Third Amendment) |
| 18 | 2010-06-22 | Amendment to Paul Trust Dated March 24, 1997 (Trust A - Fourth Amendment) |
| 19 | 2012-03-23 | Amendment to Paul Trust Dated March 24, 1997 (Trust A - Fifth Amendment) |
| 20 | 2012-03-23 | Amendment to Paul Trust Dated March 24, 1997 (Trust A - Six Amendment) |
| 21 | 2013-02-10 | Amendment to Paul Trust Dated March 24, 1997 (Trust A - Seventh Amendment) |
| 22 | 2013-02-10 | Amendment to Paul Trust Dated March 24, 1997 (Trust A - Eight Amendment) |
| 23 | 2019-03-29 | Amendment to the Paul Trust Dated March 24, 1997 (Trust A - Ninth Amendment) |
| 24 | 2020-02-06 | Amendment Dated February 6, 2020 to the Paul Trust Dated March 24, 1997 (Trust A - Tenth Amendment) - unexecuted due to Stephen M. Paul's alleged fraud/sabotage. |
| 25 | 2021-04-16 | Sheryl Moulton's Notification by Trustee (CA Probate Code 16061.7) - for both Paul Trust A & B - served onto beneficiaries |

| WILLS | | |
|---|---|---|
| 26 | 1995-11-20 | Will of Betty C. Paul |
| 27 | 1997-03-24 | Will of Betty C. Paul |
| 28 | 1998-11-23 | Will of Betty C. Paul |
| 29 | 2006-07-14 | Will of Betty C. Paul |
| 30 | 2010-02-18 | Will of Betty C. Paul |
| 31 | 2013-02-16 | Will of Betty C. Paul |
| 32 | 2018-08-15 | Betty C. Paul's "Revocation of Codicils Executed After February 16, 2013" (prepared by attorney Willam B. Daniels, Esq.) |
| 33 | 2019-03-29 | First Codicil to Last Will and Testament of Betty C. Paul |

# EXHIBIT 1



She embezzled over #00k
└ I've got paperwork
She did get paid income
└ didn't get paid
└ she take 100k
she had letters
└ only income but corpus
Sharon concerned about
└ Libby did do nothing
I bet caught in this → I tried to
pay it back

# EXHIBIT 2

**Blue Wave Ventures**

| | |
|---|---|
| **From:** | TECHS US <techs_us@outlook.com> |
| **Sent:** | Wednesday, May 1, 2019 6:12 PM |
| **To:** | dbburns@schwartzlawgroup.us |
| **Subject:** | Betty C. Paul - Steve Email |
| | |
| **Categories:** | Duplicate |

Dear Mrs. Brubaker-Burns,

I send these emails to you for safe keeping in the event of an ongoing investigation of Stephen M. Paul.

Another Steve email suggesting alleged undue influence – change to my grandmother's will. (yellow highlight).

Keep in mind – I witnessed Steve demanding my grandmother handwrite a codicil to her will (another alleged undue influence). It believe the codicil was later after this email. When I asked him for a copy to complete Grandma's file – he claimed it no longer existed – I really do not believe that.

Also, note 2014 – the rest of the family is receiving gift money (to my knowledge), except David and his son, Stephen. This email suggests Steve had concerns that David should NOT receive gifts (possible undue influence by Steve).

During this time Steve was brainwashing me about my cousin David – even though Steve's suggestions were "delusion". According to my cousin, Steve was, allegedly, saying bad things about me.

FYI – no need to respond. Thanks.

Thank you,
Sherry Moulton


**From:** TECHS US <techsus@outlook.com>
**Sent:** Saturday, October 11, 2014 10:23 PM
**To:** 'Steve Paul' <stephenmpaul@yahoo.com>
**Subject:** RE: Ozzy

Hi,

So glad everything worked out fine.

I hope Ozzy feels better soon!

Glad you and Leelyn like the orchid.

Thanks,
Sherry

1

**From:** Steve Paul [mailto:stephenmpaul@yahoo.com]
**Sent:** Saturday, October 11, 2014 10:05 PM
**To:** TECHS US
**Subject:** Re: Ozzy

Hi Sherry,

I took grandma out to eat tonight. Ozzie has appointments next week with the vet so I won't be coming into town.

Leelyn says thank you for the orchid it's very nice.

I talked to grandma about changing some of the things in the will and she's agreeable to it, so we will be making an appointment with the attorney sometime in the near future.

I looked through grandma's paperwork and she did not write a check to David for $5000. I think that David was so drunk after drinking almost a bottle of wine down in Big Sur that by the time he got back to grandmas house he had forgotten to have the check written out and given to him. And I think that she may have been a little tipsy also.

Steve
Sent from my iPhone

On Oct 11, 2014, at 11:47 AM, TECHS US <techsus@outlook.com> wrote:

> Hi Steve & Leelyn:
>
> Hope Ozzy is doing better. He is such a sweet dog!
>
> I know you mentioned going to Grandma's next week. I just wanted to let you know Grandma gets her hair done Tuesday and goes to Dr. Clark Wednesday 11:30AM.
>
> We'll go out to eat after the doctor's appointment – maybe to Petra's in PG in case you want to meet us for lunch?
>
> Have a great weekend!
>
> Sherry

# EXHIBIT 3

I wish to change Trust "A" to read that

David Paul gets 20%, Stephen Paul g.

20%, Richard Romando gets 20%, Kendra

Ramondo gets 20% and Sherry Moulton gets

20%.

Stephen and Richard's shares to be

administered by Stephen M. Paul.

Betty C Paul

January 15, 2015

Stephen M. Paul

Sherry A. Moulton

Witnessed

I wish to change my Will on the house Con
to read that Sherry Moulton receives 6...
and Kendra Romando receives 40%.

Stephen M. Paul is to receive the office
and the Secretary.

Betty C Paul
January 16, 2015

Stephen M. Paul
Sheryl A. Moulton
Witnessed

EXHIBIT 4

| | |
|---|---|
| **From:** | Steve Paul <stephenmpaul@yahoo.com> on behalf of Steve Paul |
| **Sent:** | Tuesday, March 13, 2018 1:28 AM |
| **To:** | TECHS US <techs_us@outlook.com> |
| **Subject:** | Re: Grandma's Attorney Letter & PO Mailbox bill |
| | |
| **Follow Up Flag:** | Follow Up |
| **Flag Status:** | Flagged |

Sherry,

You should request the file. You are going to be the only executor in the Will after Grandma finishes (for the second time) taking me out of her will.

Steve

Sent from Yahoo Mail for iPhone

On Monday, March 12, 2018, 10:35 PM, TECHS US <techs_us@outlook.com> wrote:

> Hello,
>
> FYI - Grandma received a letter today from Ian McPhail, Esq. He wants to schedule an appointment with Grandma – probably because he's going into full retirement. If this is the case, you might want to request the entire file.
>
> Also, received PO mailbox bill today.
>
> Thanks,
> Sherry

1

# EXHIBIT 5

**From:** Steve Paul <>
**Sent:** Friday, December 28, 2018 9:21:34 AM
**To:** tpftemail1@gmail.com
**Subject:** Paul trust

Mrs. Paul,

Please have your new financial representative, Sherry Moulton, pick up financial records. I know she is anxious to pay the bills that are right now due. I believe Hacienda, and drug bills are due.

I was surprised to find out that Sherry was now making the stock market and tax decisions. Doug and I wish her luck.

One bill due is the IRS fourth quarter payment of $2400.

I will need a release form from you stating that she can pick material.

Stephen M. Paul


Sent from Yahoo Mail for iPhone

# EXHIBIT 6

**MONTEREY COUNTY SHERIFF**

CA0270000

1414 Natividad Road
Salinas, CA  93906

Phone (831) 755-3700
Fax    (831) 755-3810

| <u>Case Number</u> | <u>Date</u> | <u>Officer</u> |
|---|---|---|
| FG1901625 | 04/12/19 | MORANSP |

## Supplement 04

On 04/12/18, I contacted Moulton at Betty's residence.  I returned the original trust paperwork and power of attorney paperwork she had provided.

Upon review of the trust paperwork, specifically the Special Power of Attorney, it is apparent Stephen had legal right to access and manipulate the trust assets, specifically with a licensee broker/firm when dealing with stocks.  Stephen used, by all accounts, Charles Schwab for the management of Betty's trust, which meets this criterion. Stephen is also named as a trustee on Betty's trust.

# EXHIBIT 7

7/7/2019SAVE-12—Accounting of BP Trust Math-Loans-Corpus-Income.xlsxSheet1

| | | Accounting of Trusts math.....Loans #1 + #2, Corpus, Dividends & Interest -- 3/16/2018 | | amounts | total owed | |
|---|---|---|---|---|---|---|
| | | | | | BP "A"TRUST | |
| | | SP/SM "B" Trust Dividends and Interest income owed to BP Trust, (2013,2014,2015,2016,2017) | | | by SP/SM Trust | |
| 1 | Year 2013 | | | $28,828.32 | | |
| 2 | Year 2014 | | | $30,939.56 | | |
| 3 | Year 2015 | | | $33,963.49 | | |
| 4 | Year 2016 | | | $32,766.30 | | |
| 5 | Year 2017 | | | $33,915.81 | | |
| | | | | | $ 160,413.48 | |
| | | | | | | |
| | Payout from SP/SM "B" Trust to BP Trust in 2013.....$3000.00 + $1000.00 + $1450.43 | | | -$5,450.43 | | |
| | DUE BP "A"TRUST (before corrections on Corpus, Loans and accounting) | | | | $154,963.05 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | CORPUS TAKEN ILLEGALLY BY BETTY PAUL (malfeasance) in 2008,2010,2011,2012 from SP/SM TRUST | | | -$98,951.00 | | |
| | | | | | $56,012.05 | |
| | | | | | | |
| 12/24/2016 | LOAN #1= $50,00( | | | -$50,000.00 | | |
| 12/31/2017 | LOAN #2= $30,00( | | | -$30,000.00 | | |
| | | | | | -$23,987.95 | DUE |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| 2/16/2018 | BP Trust payment to SP/SM "B" Trust  (at Schwab money transfer 2/16/2018) | | | $27,000.00 | | |
| | OVER PAID IN ER | | | | $ 3,012.05 | |
| | | | | | | |
| 3/16/2018 | SP/SM "B" TRUS | rred funds from SP/SM "B" Trust Ckecking #8421 to BP Trust #7592 | | -$3,012.05 | | |
| | | | | | | |
| | | | | | $0.00 | TOT |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

EXHIBIT 8

Debra Burns

**From:**
**Sent:** Steve Paul <stephenmpaul@yahoo.com>
Wednesday, February 5, 2020 4:10 PM
**To:** Debra Burns
**Subject:** Re: Your Phone Call

For the last six weeks I have been taking a number of phone calls about Betty Paul. I believe this is your job as her attorney to handle. I get calls from her insurance company, I get calls from Adult protective services sheriffs department complaining about Sherry Moulton and I get calls about fraud on accounts that you apparently have opened up. You're getting paid to handle these things not me.

Sent from Yahoo Mail for iPhone

# EXHIBIT 9

Attorneys:
Gary D. Schwartz, JD, LLM (Taxation)*
Debra Brubaker Burns, JD, PhD*
Alexander C. Winkle, JD, LLM (Taxation)
**Paralegals:**
Kathryn Baumann, MBA
M. Gregoria Martinez, BA



**Telephone:** 831-625-6255
**Fax:** 831-886-1684
**Office Address:** 200 Clock Tower Pl.,
Suite E-103, Carmel, CA 93923
**Mailing Address:** P.O. Box 22650
Carmel, CA 93922-0650
**Email:** dbburns@schwartzlawgroup.us
**Web Address:** schwartzlawgroup.us

February 6, 2020

Client No.  7209.01

### *PERSONAL AND CONFIDENTIAL*

Betty C. Paul
P.O. Box 221461
Carmel, CA 93922

**Re:    Schwartz Law Group Inc.'s Declination for Continued Legal Representation**

Dear Betty:

I was notified on Monday, February 10, 2020 that your granddaughter Sheryl Moulton filed a complaint with the Monterey County Adult Protective Services against me for alleged "extortion". Extortion is defined as the practice of obtaining money or something else through force or threats. We at Schwartz Law Group have worked diligently on your behalf and have not forced or threatened you in any way. Our mailed monthly billing statements list our time and description of activities undertaken your behalf.

To keep you reasonably informed up through today, enclosed are the letter for your signature and the Bill Payment Overview that Merrill Lynch/Bank of America emailed me today. As you know, we have been working to line up Bank of America as the successor trustee of the Paul Trust and as your bill-pay service.

As a final matter, Schwartz Law Group, Inc. must now decline further representation of you, in part because of your granddaughter's latest false accusation. We will forward your client file promptly to another attorney when requested.

Sincerely,

Debra Brubaker Burns
for SCHWARTZ LAW GROUP, INC.

Encls.

* Certified Specialist in Taxation Law

# EXHIBIT 10

## <u>Summary Statement; Justine Paul</u>

DOB:            ***REDACTED FOR SECURITY***

Address:

Cell Phone:

Occupation:

---

On Thursday, January 23, 2025 at about 6:28 p.m., I phoned Justine Paul and received her digitally recorded interview.

I introduced myself and told Justine that I am a Private Investigator.

I explained to Justine, Sheryl Moulton contacted Attorney, Ashley Bargenquast, in regard to a civil issue pertaining to "Stephen Paul's" possible "elderly abuse" behaviors associated with Stephen Paul's mother's family trust. Betty Paul. (During my interview Justine referred to Sheryl by her nickname of "Shelly".)

Justine told me that she was well aware of issues pertaining to "Betty Paul's" trust.

I told Justine, Sheryl asked that I obtain her interview for the purpose of seeking information to assist in providing the truth regarding "Stephen Paul's" mental state; behaviors; and concerns regarding Stephen's involvement in that trust.

For credibility and further identification, I told Justine I had served (28) years in law enforcement. I served (9) years with the Pittsburg Police Department; (19) years with the Pleasanton Police Department; and (17) years at the position of Police Sergeant. I suffered several job related injuries and received a disability retirement from law enforcement. I then obtained my Private Investigator's license from the California Department of Consumer Affairs\Bureau of Security and Investigations. I have been conducting investigations as a Private Investigator for about (19) years.

I asked Justine if anyone threatened, coerced, or intimated her to provide me any information?

Justine replied, "No".

I asked Justine if her interview was being provided voluntarily and of her own free

1  will?

2      Justine replied, "Yes".

3      I asked Justine if she was providing me any information she knows is false, but was

4  doing so to protect or benefit anyone?

5      Justine replied, "No."

6      Justine indicated that the information she provided during our interview will be the truth

7  and to the best of her recollection.

8      Justine told me, Stephen Paul Sr. is Sheryl Moulton's uncle.

9      Justine further explained, Betty Paul and Thomas Paul were married for more than (60)

10  years.  During their marriage they had (2) biological children; Stephen Paul Sr. (Born in 1951);

11  and Shelly Paul (Sheryl Moulton's mother).

12      Justine said, Sheryl Moulton is Betty Paul's granddaughter.

13      Justine described Betty Paul as being her "grandmother-in-law".

14      Justine further explained, she married David Paul who is Stephen Paul Sr's son.  (David

15  being Betty Paul's grandson.)

16      During about 2004, Thomas Paul died leaving Betty as the soul survivor of their family

17  "Will & Trust".  Justine said, prior to Betty's death she resided in Carmel CA.

18      During about 2021, Betty Paul died while in her "90's" in age.

19      Justine said that to her knowledge, Betty remained mentally alert and of good mental

20  health throughout her life and until her eventual death.

21      Justine said, Betty and Thomas "were in the Mortuary business", which was somewhat

22  of their family trade.  Betty's son (Stephen Paul Sr) also had owned and operated a Mortuary

23  business.

24      Justine told me that to her knowledge Betty and Thomas had inherited a substantial

25  amount of money.  During the course of Betty's life she had acquired additional assets and was

26  considered to have secured a sufficient amount of financial wealth.

27      Justine said, she and her former husband (David Paul) had entered into a dating

28  relationship when they were (18) years old.   Justine and David Paul married, but divorced in

1    2014.

2        Justine said, for about (5) years after her and David's divorce they continued to re-enter

3    into a relationship and described it as being "on again and off again."

4        Justine explained, David wanted to "try again" and make their marriage work.

5        Justine indicated that during 2019 it became apparent she and David were not able to get

6    back together as a married couple.  David then re-married.

7        Justine said, after she and David divorced they continued to communicate and "co-

8    parent" well.   Justine and David remained cordial and respectful toward each other.  Justine

9    remained in communication in regard to David's family and their issues, as each of them shared

10   information about family.

11       Justine described David's family as being "dysfunctional" with a lot of "drama".

12       Justine told me, David often shared information with her in regard to his family trust and

13   which was what Betty Paul and\or Thomas Paul had documented and secured.

14       David also shared information regarding who Betty and\or Thomas had named as

15   beneficiaries in there trust(s).  After Thomas died, Betty was in full control of her finances,

16   assets, and those involved in her family trust.

17       Justine told me, during 2014 and when her and David's divorce was about to finalize,

18   David received a phone voice message from Stephen Paul Sr. (David's father).  Stephen Paul

19   Sr.'s message expressed that David's grandmother (Betty Paul) was leaving David a "check"

20   for his birthday.  Stephen Paul Sr. instructed David not to cash that check upon receipt, stating,

21   "That's my money."   Justine recalled, during that time Betty Paul was still performing her own

22   bookkeeping responsibilities.  Stephen Paul Sr. was possibly the "Executor of the Trust".

23   However, Betty was still "paying her own bills" and writing her own checks from her bank

24   accounts.

25       Justine said that during about 2010 or 2011, her husband (David) told her about "drama"

26   and problems going on between his parents.  Justine indicated that David's father (Stephen Paul

27   Sr.) and David's mother inflicted what Justine described as being a form of "mental abuse"

28   against David.  David decided to avoid his parents and distanced himself from having contact

1    and communication with them to escape their "abuse" and "drama".

2    Justine said, when David was young his parent's sent him to a child Psychiatrist for

3    treatment. During Justine and David's marriage, David shared information explaining what

4    David's father had related to him about David seeing a child Psychiatrist.

5    According to David, Stephen Paul Sr told David that the reason they (David's parents)

6    discontinued having David seen by a child Psychiatrist was due to the Therapist determining

7    mental health\behavioral problem were not associated with David, but was being caused by

8    David's mother.

9    Justine commented, "David was (4) years or so when he went to therapy. There was

10    that kind of mental abuse. There was a lot of dysfunction going on in that family."

11    I asked Justine to described Betty and David's relationship while Betty was alive?

12    Justine replied, "She (Betty) always said, you (David) are my favorite grandson."

13    Justine explained, Betty had (3) grandchildren. They include David, Kendra (sister-in-

14    law), and Sheryl (cousin).

15    I asked Justine to explain her understanding in regard to Betty's trust?

16    Justine replied, "I always knew there was a trust and possibly (2). It was originally

17    suppose to go to my father-in-law Stephen and Shelly, Stephen's sister. I guess grandma Betty

18    and grandpa Thomas disinherited Shelly. They then put Sheryl on the trust who is Shelly's

19    daughter. Betty and Thomas were very close to Sheryl."

20    I asked Justine, to her knowledge was Sheryl always in Betty's trust along with Stephen

21    Paul as the trust beneficiary's?

22    Justine replied, "I don't know if Sheryl was on the trust. This is all just me hearing it

23    throughout the family. My ex husband, David, always told me when grandma passed away I

24    think Sherry and Steven are going to go to court and battle over the inheritance. Little did I

25    know it was going to be Sheryl and my ex-father-in-law (Stephen)."

26    I asked Justine, why did David anticipate legal battles within his family over Betty's

27    inheritance\trust?

28

Page 4 of 13

1    Justine explained, she and her ex-father-in-law (Stephen Paul) had a good relationship
2    back then.  Justine often went to Stephen Paul for advise and support regarding "drama" she
3    experienced while together with David (Stephen's son).
4    Justine told me that Stephen Paul's wife is "Leelyn Paul" and is David's mother.
5    Stephen Paul and Leelyn are still together as a married couple.
6    I asked Justine, how did she get along with her ex mother-in-law, Leelyn?
7    Justine explained, "Leelyn always had something nasty to say.  I held my tongue and
8    didn't say anything."
9    I asked Justine if David ever told her that he may have seen and reviewed Betty's trust?
10    Justine replied, "No.  I don't think my husband had ever seen it."
11    Justine told me that Betty changed things such as "power of attorney" often.  David was
12    once Betty's "power of attorney" for awhile.  Justine did not know who became "power of
13    attorney" after David.  Justine commented, "It could have been Sheryl.  It could have been
14    Stephen Paul."
15    I told Justine, if Betty declared someone "power of attorney" there should be something
16    filed with the court as a notarized filed document.
17    Justine said, when David became "power of attorney" for Betty, David received a letter
18    in the mail declaring him as being Betty's "power of attorney".  Justine indicated that when
19    David received that letter from Betty she (Justine) and David were surprised and knew nothing
20    about that in advance.
21    I asked Justine, why did Betty declare someone "power of attorney" over her estate?
22    Justine explained, Betty was of sound mind and her mental state had nothing to do with
23    her assigning of a "power of attorney".
24    Justine further explained, "There was a fallout in the family during about 2009 and
25    about the time my son was born.  My ex husband (David) had disconnected from his mom and
26    dad.  My ex father-in-law, Stephen, went to see grandma (Betty)."
27    Justine indicated that Stephen was apparently attempting to get Betty to "disconnect"
28    from David.

Page 5 of 13

1      Justine commented, "Grandma is grandma, she is going to stay neutral. My ex father-
2  in-law (Stephen) didn't like that. They got into a disagreement or whatever. I still have an
3  email from Sheryl from back then".

4      Justine read me the email which stated something like, "Hey, I don't know what
5  transpired. Give grandma a call."

6      Justine told me, "I still have that email."

7      Justine told me, Betty died during 2021 or 2022. When Betty died it facilitated a
8  significant amount of "drama" amongst family.

9      Justine said, during 2019 she and her former husband (David) were on speaking terms.
10 David told Justine that Stephen (David's father) had not paid any of grandma's (Betty's) bills
11 and Betty's checks were "bouncing left and right".

12     Justine explained, Betty was financially able to refuse placement into an elderly care
13 facility and was adamant that she was to remain residing at her Carmel residence while being
14 provided nursing care in her home. Justine said, her husband David told her that Betty was
15 paying (2) nurses, $25,000 to $30,000 a month to provide her home care.

16     Justine indicated that she suspected Stephen Paul was not pleased with how Betty was
17 spending her finances in regard to home nursing care, since he was seeing Betty's assets being
18 depleted from the remaining amount Betty would eventually leave in trust upon her death.

19     Justine said, she saw that Stephen's primary interest in regard to his relationship with
20 his mother Betty, was Betty's wealth and only about her money.

21     Justine commented, "Stephen Paul Sr has always been into the inheritance ever since I
22 have known him."

23     Justine said, David had told her that his father, Stephen Paul Sr., once commented that
24 when David's grandmother died (Betty) he (Stephen Paul Sr.) will never have to work again.",
25 referring to living off of Betty's inheritance trust.

26     I told Justine that I had received information to indicate that Stephen Paul Sr's behavior
27 may have included a somewhat of a "mob like" character. Information indicated that Stephen
28 Paul Sr may have made "idle threats" or behave consistent to having a "hit man" personality.

1   I asked Justine, what did she know about that information?

2   Justine replied, when she was with the Paul family she saw a lot of unusual behavior and

3   didn't understand anything that was going on. Justine assumed that the Paul family may have

4   experienced a "bad childhood, depression, whatever". But, after she and David's marriage

5   ended and years of attending therapy regarding marital issues and personal well being, she

6   clearly understands the meaning of "narcism".

7   Justine saw that when Stephen Paul Sr didn't get his way he then elected not to see his

8   grandson (David and Justine's son). Justine saw that after David and his father (Stephen Paul

9   Sr) had their "falling out", Stephen Paul Sr became "vengeful".

10   I told Justine, I also received information regarding something she may have expressed

11   indicating that Stephen Paul Sr had commented, "He knows how to make bodies disappear."

12   Justine commented, "That's what I think Sheryl heard from him."

13   Justine reiterated, the Paul family owned a mortuary business. The business was (4th)

14   generation.

15   I told Justine that I received information regarding Stephen Paul Sr expressing that he

16   will "shoot out her kneecaps".

17   Justine explained, her "ex in-laws" blamed everything on her in regard to her and

18   David's marital issues and eventual divorce. Grandma Betty told David that Stephen Paul Sr

19   mentioned having someone "take her out" (meaning Justine). Justine said, David did have a

20   good relationship with his father (Stephen Paul Sr) until such time the (2) of them had a "falling

21   out".

22   Justine commented, "I also heard...back then either grandma Betty said it or David,

23   about David if he ever goes onto my parent's property my ex father-in-law (Stephen Paul Sr)

24   would shoot him."

25   I told Justine, I received information to indicate one or more family members suspected

26   Stephen Paul Sr as being in someway associated with a "mob crime organization".

27   Justine replied, "He is too stupid. I keep telling Sheryl he is too stupid to think that far."

28   Justine commented, "Stephen Paul Sr will manipulate, like what he is doing right now

Page 7 of 13

1    with the trusts."

2        Justine said, she know's Betty never "liked drama" and she did whatever she could to

3    avoid drama in her family and life.  Betty always enjoyed being an upbeat grandma, going out

4    and enjoying her time at restaurants and spending time with family.  At the time of the family

5    fallout and when all the drama began in regard to "Stephen Paul Sr fighting with David", at that

6    point Justine saw Stephen Paul Sr had become a vengeful person.  Stephen Paul Sr had

7    disinherited "my ex husband", David.

8        Justine said, "Stephen Paul Sr cut him (David) out of everything."

9        Justine told me that she finds Stephen Paul Sr as being of such poor character that he

10   would bring a document to Betty and manipulate Betty to write or sign what Stephen Paul Sr

11   influenced her to write so it was in Betty's handwriting and to make it appear legally binding.

12       Justine explained, Stephen Paul Sr met with his mother (Betty) and "cornered her" with

13   his "intimidating" demeanor, stating, "Of course grandma (Betty) is going to sit down and do

14   what Stephen asked."

15       I asked Justine if to her knowledge Stephen Paul Sr ever sought mental health

16   treatment?

17       Justine replied, "If he has it (mental health issues) he can control it.  I know he cannot

18   handle all this stress at once.  He told my ex husband David, during the ".com" time period

19   where everyone was making all that money then the next thing you know everyone is losing

20   money.  Stephen Paul Sr told David that he lost the majority of his investment and felt suicidal.

21   Grandma (Betty) eventually bailed him out (financially).  I know my former mother-in-law

22   went to a lot of therapy."

23       Justine described Stephen Paul Sr as having a significant amount of control over Betty's

24   decisions.  Stephen was manipulative, coercive, and a times boarder line threatening toward

25   Betty toward facilitating Betty to do what Stephen Paul Sr demanded of her.

26       Justine commented, "Stephen Paul Sr was born with a silver spoon in his mouth.  He

27   had a really good childhood growing up in Pacific Grove.  Betty did everything for him.  You

28   know, when you give a child everything and then you tell them, no, they cannot take, no, for an

Page 8 of 13

answer. They have always had it and expect it. When David decided to cut his parents out of the picture that caused a rejection from Stephen Paul Sr and David's mother. Then they decided to disinherit David."

I asked Justine to explain what she meant by Betty having (2) trust accounts?

Justine explained, one trust account was setup from inheritance assets Betty and her husband received and had been passed down as inheritance from their family, to include Stephen Paul Sr's grandparents. That is the trust Betty is not able to amend or change. That trust was suppose to eventually go to Stephen Paul Sr and Sheryl.

Justine commented, "If the first trust is irrevocable how is Betty to change it. Betty could only change the second trust, because that is what she owned."

The second trust was setup from assets which Betty and her husband had acquired separately. That included Betty's "condo"; her personal assets; and whatever contents in Betty's residence. The second trust is the only one Betty was able to control to "Will to whomever".

Justine told me, the family trust issue has apparently entered into litigation and is before the court to render decisions on trust issues. Justine said, to her surprise the trust case was filed in an Orange County court. Justine did not know why Orange County assumed jurisdiction over the case when Betty resided in Monterey County and where Betty maintained a specific interest in the family trusts.

Justine said, Betty's daughter (Sherry) informed her that the trust case was filed in Orange County and did not know why it had been filed in that jurisdiction.

Justine said, Sherry is attempting to gather all information regarding the filed litigation pertaining to Betty's trust to understand the issues that are pending before the court.

Justine told me that according to David, he does not want to get involved in the "drama" associated with Betty's trust. David indicated to Justine, whatever Betty may have left him in her trust will be fine with him. If Betty did not include him as a beneficiary in her trust, he is not going to dispute that decision.

Justine told me, Stephen Paul Sr has been manipulating and working on getting decisions made regarding Betty's trust that are to his benefit since 2010, which was time of "family fallout".

Justine said, when Betty was alive and during holidays or a family member's birthday, Betty wrote checks in varying amounts as gifts. Betty lived on a "fixed income" having full knowledge of the amount she was able to and not able to give as gifts. Justine saw that Betty was "mentally sharp" and able to do her own personal book work and finances.

Justine explained, if a person was new to the family Betty gave them a check for a lower amount of $300. During the passing years the check amount would then increase.

Justine said that during 2019, Betty wrote a check to David and Justine\David's son (Stephen Paul Jr). Betty had not given David or Stephen Jr any gifts as she had to their other family members for about (5) years. David had received a check for $15,000 and Stephen Jr for $5,000. Betty was basically making things even in regard to what she had given as gifts to her other family. Justine recalled that Betty had Sherry assist in writing checks to David and Stephen Jr.

I asked Justine, is there someone in the family having a problem with that?

Justine replied, "I don't think Stephen Paul Sr knows about it."

Justine said, David remarried in July 2019 which was when her communication with David became significantly less.

During 2019, David told Justine that Betty discontinued writing checks for her bills and Stephen Paul Sr was given that role. Justine does not know if Betty still had control of her bank accounts and if so, which accounts she controlled.

I asked Justine if she knew the status of the litigation pending in Orange County regarding Betty's family trust issue?

Justine replied, she does not know, since Sherry does not appear as if she is able to receive any cooperation from the court. Justine does not understand why the court is not able to make a ruling regarding distribution of the trust as Betty had intended.

Justine said, each time Sherry has asked for an "audit" in regard to Betty's trust she has

been denied.

I told Justine, I would assume that Betty had an attorney overseeing her trusts. I asked Justine if she knows of such an attorney?

Justine replied, "I know that grandma always had an attorney, but I don't know the name of the attorney."

I told Justine, based on what she has related it appears as if Stephen Paul Sr has taken control of all issues pertaining to Betty trusts?

Justine replied, "I feel he has taken control of everything and the court is not cooperating with Sherry. So, basically has to run in circles and try and figure out what is going on. Why can't anyone get a copy of the trust? Why can't anyone get an audit? An audit of all the checks that Stephen Paul Sr supposedly wrote to everybody."

I told Justine, it appears Stephen Paul Sr was declared as being the executor of Betty's estate sometime prior to Betty's death. He may have also obtained "power of attorney" giving him further control of issues pertaining to Betty's trusts. I explained to Justine, it appears there are questions regarding any changes that may have been made to Betty's trusts just prior to Betty's death.

Justine commented, "Yeah. Stephen Paul Sr probably came down that day (days prior to Betty's death) and he had grandma copy whatever. Then he went over and notarized it and slipped some other stuff in. Grandma trusted her son. Stephen Paul Sr use to bring all of Betty's paperwork to his friend, Doug, so Doug could do all of Betty's accounting."

I explained to Justine, if Stephen Paul Sr manipulated, coerced, or in anyway threatened Betty to sign documents pertaining to her Will & Trust accounts such behavior is considered a form of "elderly abuse".

Justine told me, she has experienced Stephen Paul Sr and his wife Leelyn being intimidating before.

Justine said, the last time she saw Betty, Betty was in her (80's) in age. Justine saw that Betty's mental ability was still "sharp".

Page 11 of 13

Justine said, during the last few years of Betty's life and according to Sheryl, police were frequently responding to Betty's residence. Justine did not know the reason. Justine described Betty as residing in an Senior Development community.

I asked Justine if the police may have been called to conduct a welfare check on Betty?

Justine replied, "I don't know? All the time? So you are going to stress grandma out. You know how to speed up an elderly's death having worked in the mortuary business."

I asked Justine if she suspected Stephen Paul Sr may have behaved toward Betty by manipulating, coercing, or threatening Betty on issues pertaining to her finances as being a form of elderly abuse?

Justine replied, "I would not be surprised."

Justine told me that Sheryl has always been there for grandma (Betty). Whenever Justine and David visited Betty, Sheryl was present assisting Betty.

Justine described Sheryl as taking Betty to the store, Betty's medical appointments, and was "Betty's regular companion".

I asked Justine if she saw that Sheryl was more involved in the care taking of Betty than Stephen Paul Sr?

Justine replied, "Yeah. Sheryl takes grandma to the doctors, hair appointments, they go out to eat."

Justine told me that Stephen Paul Sr only visited with Betty when there was a check for him for his birthday.

Justine told me that the Paul family has a shared cabin. At times Stephen Paul Sr may visit with Betty while on his way to the family cabin. Stephen Paul Sr never assisted Betty with her medical appointments and daily needs. Sheryl was always there to do that for Betty.

Justine said, from what she understood Shelly (Sheryl's mother) and Betty were once best friends and had a fallout. Betty then "disinherited" Shelly from her Will and included Sheryl, as if "Shelly out, Sheryl in."

Justine told me that to her knowledge Sheryl has been included as a beneficiary in Betty's Will for many years, having no information to indicate anything had ever been changed

in that regard. Justine's understanding is that Stephen Paul Sr was to receive half of Betty's Will and Sheryl was to receive the other half.

Justine told me, Sherry's issue is that the "court is not hearing her out."

Justine said, her involvement in all of this is to hopefully assist in "making this whole thing go away."

Justine told me that Stephen Paul Sr was born in 1951. Stephen Paul Sr's was the sole owner of a mortuary and cremation business. Before Stephen Paul Sr was (50) years old he sold his mortuary and cremation business, retired from work at a relatively early age.

I asked Justine if she had any additional information she may want to share and which I had not asked of her?

Justine replied, "No. I just wanted to share the background so you guys can show this is why we are here now."

Justine described Stephen Paul Sr as being "suing over anything".

Justine told me, she wants to see all the drama and the issues regarding Betty's trust resolved and everything end.

Justine said, Sheryl has in some ways dedicated her entire life to taking care of Betty. Betty showed Sheryl her appreciation by including Sheryl in her Will and Trust upon death.

Justine recalled Sheryl had actually used some of her own money to assist in paying some of Betty's bills.

Justine said, "Grandma flip flopped. She should not have touched the Will\Trust."

Justine said, at one time David was Betty's "power of attorney", then Sheryl was Betty's "power of attorney", but to her knowledge Sheryl was never assigned as being the "executor of the estate" regarding Betty's Will\Trust.

**Received by:  Ronald I. Parker (PI 24634)        Date Completed:  January 26, 2025**



Page 13 of 13

# EXHIBIT 11

Roger J. Buffington (State Bar No. 191960)
Rye Mhtar (State Bar No. 330837)
Buffington Law Firm, PC
8840 Warner Ave., Suite 300
Fountain Valley, CA 92708
Main: (714) 842-6124
Fax: (714) 842-6134
notice@buffingtonlawfirm.com

Attorneys for: Beneficiary Stephen M. Paul

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF ORANGE

| | |
|---|---|
| In re the Matter of<br>Trust B of The Thomas L. Paul and Betty C.<br>Paul Revocable Living Trust dated February<br>20, 1973, restated March 24, 1997, as amended | No. 30-2022-01252880-PR-TR-CJC<br><br>**STEPHEN M. PAUL'S OBJECTION TO<br>TRUSTEE'S NOTICE OF PROPOSED<br>ACTION** |

**STEPHEN M. PAUL'S OBJECTION TO TRUSTEE'S NOTICE OF PROPOSED ACTION**

1

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2    **NOTICE IS HEREBY GIVEN** that Stephen M. Paul formally **OBJECTS** to Brett Hitchman,

3    Trustee of Trust B of The Thomas L. Paul and Betty C. Paul Revocable Living Trust dated

4    February 20, 1973 (hereinafter the "Trust" or "Trust B") proposal to liquidate sufficient assets to

5    make a preliminary distribution of One Hundred Thousand Dollars ($100,000.00) to

6    Stephen M. Paul and One Hundred Thousand Dollars ($100,000.00) to Sheryl Moulton. This

7    objection is being submitted in a timely manner within the period allowed by the Notice of

8    Proposed Action.

9         **Mr. Paul opposes the proposed liquidation of Trust assets** for the purpose of making a

10    preliminary distribution to himself and Sheryl Moulton in an amount of $100,000 each. *Mr. Paul*

11    *has consistently maintained in past communications that any distribution of his beneficial share*

12    *must be made **strictly in kind**,* rather than in cash derived from the sale of Trust assets. In other

13    words, Mr. Paul **does not consent to the Trust's selling assets** in order to distribute money to

14    him. This position has been communicated to you previously and remains unwavering. Mr. Paul

15    **insists that any distribution of his share be accomplished by an in-kind transfer** of assets

16    equal in value to his entitlement, and not by converting those assets to cash.

17         Accordingly, on behalf of Mr. Paul, we **respectfully request that you refrain from**

18    **liquidating any Trust assets with respect to his share.** If a preliminary $100,000 distribution

19    to Mr. Paul is to proceed, it must be carried out by distributing Trust assets *in kind* to Mr. Paul

20    (for example, by transferring to him an equivalent value of stock or other assets from the Trust).

21    Such an in-kind distribution would honor Mr. Paul's long-standing request and avoid any

22    potential unnecessary tax consequences or loss of value that might result from liquidation. In

23    contrast, proceeding with asset sales over his objection would directly contravene his express

24    wishes and could lead to further dispute.

25         Please note that Mr. Paul values the Trust's assets and has a strong interest in preserving

26    their character within his share. He believes that an in-kind distribution is in the best interest of

27    all parties with respect to his portion, and he is prepared to cooperate with you to identify

28

1    suitable assets for distribution. By honoring this request, you will respect the beneficiary's

2    preferences and potentially avoid the need for court intervention.

3

4                                    Buffington Law Firm, P.C.

5

6                                    Roger J. Buffington
7                                    Rye Mhtar
                                     Attorneys for Stephen Paul
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STEPHEN M. PAUL'S OBJECTION TO TRUSTEE'S NOTICE OF PROPOSED ACTION**

3

S:\Clients 2025\Paul-TRST-2022\Hitchman Trustee NPOA\Stephen Paul - Objection to NPOA.docx

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 8840 Warner Ave., Suite 300 Fountain Valley, CA 92708.

On April 9, 2025, I served the foregoing document(s) described as:

- **LETTER TO BRETT HITCHMAN, TRUSTEE AND CYNTHIA ROEHL**
- **STEPHEN M. PAUL'S OBJECTION TO TRUSTEE'S NOTICE OF PROPOSED ACTION**

in the following manner: *(X) Via E-service & (X) Via U.S. Mail*

| | |
|---|---|
| SHERYL MOULTON<br>650 Castro St., Ste 120 #93928<br>Mountain View, CA 94041<br>Email(s): thepaultrust@proton.me;<br>impropervenue@laws.estate;<br>nodueprocess@1983.us;<br>internetvideo@protonmail.com;<br>sherrym@internetvideo.com;<br>Attorney for: In pro per | Cynthia V. Roehl<br>Katherine (Katie) F. Biadasz Khamis<br>Roehl & Glowacki, PC<br>Email: Katherine@rg.legal<br>cynthia@rg.legal<br>Attorney For: Brett Hitchman, Court<br>Appointed Trustee of Trust A and B of the<br>Paul Trust |

Electronic Mail: I caused such document to be transmitted by electronic mail transmission to the person(s) and address(es) listed herein and/or their attorneys of record as stated above and/or on the attached service list to their known electronic mail address(es). The document(s) was/were transmitted by electronic mail.

US Mail: I am "readily familiar" with the Firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under the practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Orange County, California, in the ordinary course of business. The envelope is sealed and placed for collection and mailing on this date, following ordinary business practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage date is more than 1 day after date of deposit for mailing in this affidavit.

Executed on April 9, 2025 at Orange County, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

*Krysti Torrey*
Krysti Torrey

# EXHIBIT 12

### The Latest Estate Planning Documents

1    February 20, 1973 Thomas L. and Betty C. Paul Revocable Living Trust.

A.    The Paul's transfer real property in Pacific Grove to the Trust. They appoint themselves as co-trustees. If husband dies, they appoint Tony Karachale as successor Trustee. If wife dies, tire husband shall become the sole trustee.

B.    If husband dies, wife receives entire income of the estate and sums necessary for her support, care, comfort and maintenance.

C.    When both husband and wife dies:

-The trust shall be divided into Trust A and Trust B.

-Trust A shall be distributed to Stephen.

-The net income of the trust and distribute principal as necessary for his support, comfort and maintenance. At Stephen's death, Trust A shall be distributed, if Stephen has no kids, to Trust B. If Stephen has surviving issue, the Trust A shall be distributed to them by right of representation, if the child is over 21. If the child is under the age of 21, child gets income  and so much of principal that is necessary for its support, education and health. When the underage child reaches 21, Trust A will be distributed.

-Trust B shall be distributed to Shelley L. Moulton. She'll receive income and so much of principal that is needed for her healthcare, support and maintenance. When she dies, Trust B will be divided into 2 separate trusts and distributed to Sheryl Anne Moulton and Mary Jennifer Moulton (?)   If one dies, Trust B shall be payable to the survivor. If Sheiyl or Mary fail to survive, Trust B shall be divided into two separate equal trusts, one allocated to the children of Sheryl or Mary as the case may be and shall in turn, be divided into as many separate equal trusts and there are children surviving Sheryl and Mary. Beneficiaries under the age of 21, the trustee shall apply income to the beneficiary. When a beneficiary reaches the age of 30, the trustee distributes 1/3 of the trust to that beneficiary. When the beneficiary reaches the age 35, the beneficiary receives his or her share free of trust. If Sheryl or Mary have no kids, the undistributed balance of Trust B shall be added to Trust A.

D.    Under Paragraph 3 a power to revoke or amend is retained for living trustors. The document provides that Ronald A. Melanson of Financial Marketing Cooperation shall be in the investment advisor. The investment advisor's decisions are controlling. Betty retains the power to relieve the investment advisor and appoint a new investment advisor or relinquish the investment power to a successor trustee.

E.    Trustees given standard powers. Is immune from liability, taxes may be paid out of principal or income in the discretion of the trustee. The trust contains a spendthrift clause.

2.    January 12, 1995 Betty appoints Stephen as attorney-in-fact for health care decisions.

3.    January 12, 1995 Betty appoints Sheryl and Stephen as attorneys-in-fact for estate management.

4.    November 20, 1995 Betty creates a will leaving her residential Hacienda property to Stephen and Sheryl. Stephen gets the automobile and Sheryl and Stephen share personal items. She gives all of her Limited Partnership interests to Stephen and creates for issue a 30 year old limitation under a testamentary trust created under the will.

5.    March 24, 1997 Declaration of Trust. Betty creates a trust. (1973 Trust is not revoked but nearly replaced. The new trust is for the benefit for both Betty and Thomas who remains alive until April 28, 2004.)

A.    The trust creates a marital deduction trust, Trust B. Trust A is the remainder to the trust estate. [i]

B.    Upon Tom's death, the income of the A and B Trusts shall be paid to Betty and for her to receive so much of principal as is necessary for her healthcare, comfort and maintenance.

C.    Upon Betty's death, Trustee shall pay the principal of Trust A and what's left of Trust B. Trust B shall be distributed to Stephen Paul and Sheryl Moulton. If one does not survive, it shall pass to the survivor. If Hacienda residence is not in the trust estate, cash in the amount of $200,000 should be distributed equally to Stephen or Sheryl or their issue by right of representation.

D.    The Trustee is given standard powers. Betty and Tom are given the power to revoke.

E.    The assets transferred to the trust are: [ii]

- Unit at Hacienda Carmel, Carmel, Ca.

- Schwab Account

- Residue of proceeds of sale of Quail Lodge Shares

- Bank Accounts, U.S. Treasury Securities listed on the attached list, with the exception of the item listed on Lines 24 and 25.

- All interests in Limited Partnerships.

6.    March 24, 1997 Will of Betty Paul.

        A.    She gives specific requests to Stephen alone of "my automobile." She leaves personal property to Stephen and Sheryl for their kids by right of representation.

7.    March 24, 1997 Will of Betty Paul

8.    November 23, 1998 Betty creates a will leaving her automobile to son Stephen and she leaves personal property to Stephen and Sheryl in equal shares. She appoints Stephen and Sheryl co-executors and leaves the residue of the estate to the trustee of the 1997 trust.

9.    May 11, 2004 Betty appoints Sheryl and Stephen her attorneys-in-fact for all purposes and empowers them to act separately.

10.    May 11, 2004 Betty appoints Sheryl and Stephen as HIPPA representatives.

11.    June 10, 2004 Betty creates amendment. She amends C.5 c-e by deleting them and saying that the Hacienda property goes to Stephen and Sheryl in equal shares.

        A. The promissory note payable by David L. Paul to the Paul Trust shall be reduced by $25,000 or the remaining balance of said note, whichever is lower.

        B. Kendra shall get an equivalent in cash.

        C. Trustee shall distribute the residue of Trust A in equal shares to Sheryl, David and Kendra subject to the age 35 limitation.

12.    January 13, 2005  Assignment of Demand Promissory Note. As trustee under the 97 trust, Betty has signed a note dated January 10, 1988 payable by David and Justine Paul to herself as trustee.

13.    January 24, 2005 Betty revokes amendment signed June 10, 2004. Amends C.5 c-e of the trust to provide that on her death, Stephen and Sheryl shall receive the proceeds of sale.

        A.    Trust A shall be distributed in equal shares to Sheryl, David, and Kendra or their issue by right of representation subject to the 35th birthday continuation on the trust.

14.    July 14, 2006 Betty appoints Stephen as attorney-in-fact for health care.

15.    July 14, 2006 Will of Betty Paul.

A. She gives her automobile to Stephen and to Sheryl specific requests of jewelry and art and all other personal property to Stephen and Sheryl in equal shares or to their issue by right of representation.

B. She gives the residue of the estate to the trust.

C. She appoints Stephen and Sheryl as co-executors.

16.    February 18, 2010 Will of Betty Paul.

A.    She gives her automobile to Sheryl as well as specific requests to David L. Paul and Kendra Paul and all other personal property to David and Sheryl equally.

B.    She gives the residue of her estate to the trust created on March 24, 1997 and appoints David and Sheryl as co-executors.

17.    February 18, 2010 Uniform Power of Attorney. Betty grants all powers to David L. Paul and Sheryl Moulton and authorizes them to act separately.

18.    February 18, 2010 Betty appoints Sheryl and David as her attorneys-in-fact for her healthcare.

19.    February 18, 2010 Betty gives David and Sheryl a HIPPA waiver.

20.    February 18, 2010 Amendment to Trust dated March 24, 1997.

A.    Betty amends C-5c – E of Trust A by deleting those provisions and stating the following:

-Hacienda Carmel property goes in equal shares to Sheryl Moulton and David Paul.

B.    Trustee shall distribute $25,000 to Kendra or to her issue by right of representation.

C.    The residue of the trust shall go in equal shares to David and Sheryl. If Sheryl does not survive, her share goes to David. She creates a continuing trust for any beneficiary under the age of 35.

D.    Amending F1, Betty appoints David and Sheryl as successor co-trustees.

21.    June 22, 2010 Amendment to trust authorizing David and Sheryl to receive copies of brokerage accounts and other materials and to act in the name of Betty C. Paul to direct the broker.

22.    June 22, 2010 Betty creates a special power of attorney designating Sheryl and David as co-agents with respect to the brokerage account and to act on her behalf with respect to that account.

23.    March 9, 2012 Betty appoints David and Stephen as agents for healthcare.

24.    March 9, 2012 Betty appoints David and Stephen as attorneys-in-fact for estate purposes.

25.    March 23, 2012 Amendment to Trust Dated March 24, 1997. Betty revokes the amendment dated February 18, 2010.

26.    March 23, 2012 Betty revokes the amendment to the trust executed on June 22, 2010 and authorizes herself to execute a power of attorney permitting David and Stephen to act as her agent with respect to the brokerage account.

27.    March 23, 2012 Betty amends her trust revoking all prior amendments and amends the trust's estate in Paragraph C.5 c-e that the Hacienda property goes to Stephen M. Paul. If he fails to survive, ½ goes to David L. Paul, ¼ to Sheryl Moulton, and ¼ to Kendra and provides for the trust to continue until beneficiaries reach the age of 35. She points David Paul as successor trustee. And Stephen as successor trustee if David cannot perform.

28.    February 10, 2013 Uniform Statutory Form Power of Attorney. Betty C. Paul appoints Stephen M. Paul and Sheryl A. Moulton as her Attorneys-in-fact. They are empowered to act separately.

29.    February 10, 2013 Betty amends the Paul Trust dated March 24, 1997. The amendments amends the Trust Paragraph C.5 (c) - (e) of said trust as to Trust A by deleting those provisions and substituting the following provisions.

A.    Stephen Paul receives the Hacienda Carmel residence. If he fails to survive Betty, that asset will be distributed as the residue of Betty's estate.

B.    The residue goes ½ to grandson, David L. Paul. If he fails to survive, it goes to his issue by right of representation.

C.    ¼ passes to Sheryl. If she fails to survive, it goes to her issue by right of representation.

D.    ¼ goes to Kendra L. Paul. If she fails to survive, it goes to her issue by right of representation.

E.    If any beneficiaries are under the age of 35 at the death of Betty, the trust continues. Pending their 35th birthday, distribution may be made for support, care and education of the underage beneficiary.

        F.      If Betty ceases to act as trustee by resignation, death or disability, Stephen and Sheryl as successor co-trustees. If one ceases to act, the survivor shall be the trustee.

30.    February 10, 2013 Further Amendment. Betty authorizes herself to execute a special power of attorney permitting "Stephen M. Paul and or Sheryl A. Moulton to act as agents with limited powers to receive brokerage account statements held in the Paul Trust and to give direction to the Broker to execute purchases and sales.

31.    February 16, 2013 Will of Betty C. Paul. She identifies her two children as Stephen M. Paul and Shelley Moulton who she disinherits. She states she has three grandchildren names Sheryl A. Moulton, David L. Paul, and Kendra Paul. Under the plan she gives specific items to Sheryl and provides that the specific request will pass to the survivor in the event one of her beneficiaries fails to survive. She gives the residue of her estate to the trustee of the trust executed March 24, 1997. She appoints Stephen M. Paul and Sheryl A. Moulton as co-executors. The will provides a no contest clause.

32.    February 16, 2013 Authorization to disclose HIPPA information is granted to Stephen M. Paul and Sheryl A. Moulton.

---

[i] The Trust B is the bypass trust which became irrevocable on Tom's death. This raises the question of the value of the bypass trust and how it was treated on the 706. Trust A remains revocable by Betty. We need to determine what asset allocations were made to the A and B Trusts.

[ii] The attachment to the Trust shows financial institution assets, bonds, treasury notes, CDs, totaling $556,000.

# EXHIBIT 13

*AVOID PROBATE & TAXES*

## THOMAS L. PAUL AND BETTY C. PAUL
## REVOCABLE LIVING TRUST

THOMAS L. PAUL and BETTY C. PAUL, husband and wife, the undersigned Trustors, hereinafter referred to jointl  s "Trustors", and individually as "husband" and "wif   espectively, hereby transfer and deliver without cons__ ration to ourselves as Co-Trustees all our right, title and interest to the property described in Exhibit "A" attached hereto.

Should the wife predecease the husband, the husband shall become the sole Trustee hereunder. Upon the death of the husband, we appoint Anthony T. Karachale to serve as sole successor trustee.

This trust shall be known as the THOMAS L. PAUL AND BETTY C. PAUL REVOCABLE LIVING TRUST.

PARAGRAPH ONE:  TRUST ESTATE:

The property now or hereafter subject to this trust, and listed on Exhibit "A" attached hereto, shall constitute the trust estate, and shall be held, administered and distributed in accordance with this instrument.

All property transferred to this trust is and shall be deemed to be the community property of the settlors and shall remain community property after

its transfer.

It is the settlors' intention that the trustees shall have no more extensive power over any community property transferred to the trust estate than either of the settlors would have had under California Civil Code Sections 5124 and 5125 had this trust not been created, and this instrument shall be so interpreted to achieve this intention.

PARAGRAPH TWO:  DISTRIBUTION OF INCOME AND PRINCIPAL:

A.  The trustors while both shall live, or the husband if he be the survivor, shall have the right to receive or direct the disposition of the principal and income, including distributions of capital gains of the trust estate.

B.  Upon the death of either of the trustees, the successor trustee is hereby authorized and directed upon assuming that office to accept additional assets which may be payable to this trust.  Additional assets may include, but not be limited to, the proceeds of life insurance upon the lives of the trustors or others, amounts payable to the trust pursuant to the terms of their Will and additions from any other source, testamentary or otherwise.

- 2 -

C.  Upon the death of the husband, and during the lifetime of the wife, the successor trustee shall pay the entire net income from the trust estate quarterly, or at more frequent intervals, to the wife or as she may direct from time to time in writing and the Trustee shall also pay to her such part or all of the principal of the trust estate as she shall request in writing from time to time.  If at any time or times the wife is under a legal disability, or by reason of illness or mental or physical disability is, in the opinion of the Trustee, unable properly to manage her affairs, the Trustee shall use the income and such part or all of the principal of the trust estate as it deems necessary or advisable, in such manner as it deems best, for the care, support, and comfort of the wife, for the payment of any premiums on insurance on her life, or for any other purpose the Trustee deems to be for the best interests of the wife.

D.  Upon the death of both husband and wife, the Trustee shall divide the entire trust estate into two (2) separate trusts, which are hereinafter referred to as Trust "A" and Trust "B".  Trust "A" shall be held and administered by the Trustee as follows:

- 3 -

or retained in trust as follows:

    (1) If, at the time Trust "A" is divided During the lifetime of our son, deceased STEPHEN M. PAUL, the trustee shall pay to or apply for his benefit all of the net income of Trust "A". Said payment shall be made quarterly or at more frequent intervals. In addition, the trustee shall distribute as much of the principal of Trust "A" as is necessary in the trustee's discretion for the proper health, education, support, maintenance, comfort, and welfare of STEPHEN M. PAUL, after taking into consideration, to the extent the trustee shall deem advisable, any income or other resources of our son, outside this trust, known to the trustee.

    2. At our son's death, the undistributed balance of Trust "A" shall be distributed or retained in trust, as follows: If our son has no surviving issue at his death, then the undistributed balance of Trust "A" shall be added to Trust "B" and shall be held and administered as provided therein. If our son has surviving issue at his death, the undistributed balance of Trust "A" shall be divided into as many shares as there are issues of our deceased son, and each such share shall be distributed

or retained in trust as follows:

(1)   If, at the time Trust "A"
is divided into separate shares, no child of our deceased
son is living who is under age twenty-one (21), the
share shall thereupon be distributed, free of trust, to
our deceased son's issue then living, by right of rep-
resentation.

(2)   If a child of our deceased son
is then living who is under age twenty-one (21), the
shares of Trust "A" shall be retained by the trustee as
a separate trust for the benefit of our deceased son's
living issue as a group, including those aged twenty-one
(21) or older.  Each share shall be held, administered,
and distributed as follows:

(a)   The trustee shall pay to
or apply for the benefit of issue, of whatever degree,
living from time to time, including those whose ances-
tor or ancestors are still living, as much of the net
income and principal of the trust as the trustee in the
trustees discretion shall deem necessary for their proper
support, care, maintenance, and education, after taking
into consideration, to the extent the trustee shall deem

- 5 -

advisable, any other income or resources of such issue,
known to the trustee.  Any net income not distributed
shall be accumulated and added to principal.  In exer-
cising the discretion granted by this subparagraph, the
trustee may pay more to apply more for some beneficiaries
than others and may make payments to or applications of
benefits for one or more beneficiaries to the exclusion
of others.  Any payment or application of benefits pur-
suant to this subparagraph shall be charged against the
trust as a whole rather than against the ultimate distri-
butive share of the beneficiary to whom or for whose
benefit the payment is made.

(b)  The trust shall terminate
as soon as no child of our deceased son is living who is
under age twenty-one (21).  Upon termination, the remain-
ing balance of the trust shall be distributed, free of
trust, to the then living issue of our deceased son, by
right of representation.  <u>Trust "B" shall be held and
administered by the Trustee as follows:</u>

1.  During the lifetime of our daughter, SHELLEY
L. MOULTON, the trustee shall pay to or apply for her
benefit all of the net income of Trust "B".  Said payment

- 6 -

shall be made quarterly or at more frequent intervals. In addition, the trustee shall distribute as much of the principal of Trust "B" as is necessary in the trustee's discretion for the proper health, education, support, maintenance, comfort, and welfare of SHELLEY L. MOULTON, after taking into consideration, to the extent the trustee shall deem advisable any income or other resources of our daughter, outside this trust, known to the trustee.

2. At our daughter's death, the undistributed balance of Trust "B" shall be distributed or retained in trust and administered as follows:

a. If both of our grandchildren, SHERYL ANN MOULTON and MERRY JENNIFER MOULTON shall be living at the date of our daughter's death, then the trustee shall divide Trust B as then constituted into two separate trusts of equal amounts. One of such trusts shall be allocated and administered for the benefit of our grand-child SHERYL, and the other shall be allocated and administered for the benefit of our grandchild MERRY.

b. If either SHERYL or MERRY shall fail to survive our daughter and shall leave no surviving children, then no division of Trust B shall be necessary and all of Trust B shall be held and administered for the benefit of the grandchild who is living at the date of death of our daughter.

- 7 -

c.  If either SHERYL or MERRY shall fail to survive our daughter, but shall leave surviving children, then Trust B shall be divided into two equal separate trusts and one share shall be allocated to the children of SHERYL or MERRY, as the case may be, and that share shall in turn be divided into as many separate equal trusts as there are children surviving SHERYL or MERRY.

d.  All of the above-designated trusts which shall arise from the division of Trust B, or Trust B, if no division is necessary, shall be held and administered as follows:

(1)  Until the beneficiary shall reach the age of twenty-one (21) years, the trustee shall pay to or apply for his or her benefit only so much of the trust income from that beneficiary's trust as the trustee in his discretion shall deem necessary.  Any income not distributed shall be accumulated, and added to the principal of that beneficiary's trust.  In addition, the trustee shall pay to or apply for the benefit of the beneficiary such amounts of the principal of the beneficiary's trust as the trustee deems necessary for the beneficiary's proper support, care, maintenance and education.

(2)  At the time that each beneficiary shall attain the age of twenty-one (21) years, the trustee

- 8 -

shall pay to that beneficiary all of the net income of the trust quarterly or at more frequent intervals. In addition, the trustee shall pay to or apply for that beneficiary's benefit such amounts of the principal of that beneficiary's share of the trust as may be necessary in the trustees' discretion for the proper support, care, maintenance or education of the beneficiary.

(3)   When the beneficiary reaches the age of thirty (30) years, the trustee shall distribute to him or her, outright and free of trust, one-third (1/3) of the trust principal of his or her trust.

(4)   When each beneficiary reaches the age of thirty-five (35) years, the trustee shall pay to him or her outright and free of trust the remaining two-thirds (2/3) of the principal of his or her trust.

(5)   If any beneficiary of the above-designated trusts shall fail to survive to the date when he or she would be entitled to outright distribution of the principal of that beneficiary's trust in full, then the remaining trust principal and any accumulated income of that beneficiary's trust shall be distributed outright and free of trust to such persons or entities as that beneficiary shall appoint by Will and in default of such appointment the undistributed balance of that beneficiary's trust shall be added proportionately

- 9 -

to the surviving beneficiaries of trusts created
under Trust B and administered in accordance with
the terms of these trusts.

e.  If both SHERYL and MERRY shall fail to
survive our daughter and neither shall leave surviving
children, then the undistributed balance of Trust B
shall be added to Trust A and shall be held and admini-
stered as provided therein.

PARAGRAPH THREE:   RIGHTS RESERVED BY TRUSTORS:

During the lifetimes of both or either of the
Trustors, this trust may be revoked or amended in whole
or in part by either trustor by an instrument in writing
signed by either trustor and delivered to the trustee.
On revocation, the trustee shall deliver to husband,
if he shall be living, all of the designated portion of
the trust estate which shall continue to be community
property and shall be held and administered by the
trustors as community property.

On the death of both Husband and Wife, this
trust shall become irrevocable.

- 10 -

PARAGRAPH FOUR:   INVESTMENT ADVISER:

1.   If Husband shall predeceased Wife, then
Wife shall be vested with full and sole responsibility
for the investment management of the trust estate.
Notwithstanding the foregoing reservation of this
investment power to wife, the trustors hereby assign
to the Investment Adviser said investment power and do
appoint as Investment Adviser of this trust RONALD A.
MELANSON of Financial Marketing Corporation (or in the
event of his unavailability an officer or director of
said corporation).

2.   The Successor trustee shall not invest,
sell, exchange, encumber, or otherwise dispose of any
asset of the trust estate without the written direction
of the Investment Adviser.   The successor trustee shall
comply promptly with any written direction of the
Investment Adviser and shall incur no liability by so
doing, shall be under no duty or obligation or express
its opinion upon such direction, or to review, evaluate,
or reevaluate from time to time the investments made
pursuant to such direction.

- 11 -

3.  The surviving wife may upon written notice relieve the then Investment Adviser of his responsibility and appoint in writing and with written notice to the successor trustee and new Investment Adviser or said wife may irrevocably relinquish in writing the invest-ment power to the successor trustee.  Following the death or legally declared incompetency of the wife, said investment power will be vested with the successor trustee.

PARAGRAPH FIVE: POWERS OF THE TRUSTEE:

To carry out the purposes of this trust, and subject to any limitations elsewhere herein, the trustee is vested with the following powers in addition to those now or hereafter conferred by law affecting the trust and the trust estate:

1.  To continue to hold any property, although not of a type or quality, nor constituting a diversifi-cation considered proper for trust investments, and to operate, at the risk of the trust estate and not at the risk of the trustee, any property or business received in this trust, as long as it may deem advisable, the profits and losses therefrom to inure or be chargeable to the trust estate as a whole and not to the trustee.

2.   To invest and reinvest the principal, and
income if accumulated, in such bonds, mortgages, trust
deeds, debentures, preferred to common stocks, shares
of registered mutual investment companies, or other
property, real or personal, as the trustee may deem
advisable, whether or not authorized by law for the
investment of trust funds.

3.   To manage, control, sell, convey, exchange,
partition, divide, subdivide, improve, repair; to grant
options and to sell upon deferred payments; to lease for
terms within or extending beyond the duration of this
trust for any purpose; to create restrictions and other
servitudes.

4.   To advance funds to this trust for any trust
purpose, such advances with interest at current rates
to be a first lien on and to be repaid out of principal
or income; to reimburse itself from principal or income
for any loss or expense incurred by reason of its owner-
ship or holding of any property in this trust.

5.   To compromise, arbitrate or otherwise adjust
claims in favor of or against the trust; to carry such
insurance as the trustee may deem advisable.

- 13 -

6.   To borrow money for any trust purpose upon such terms and conditions as the trustee may deem proper; and to obligate the trust estate for repayment; to encumber the trust estate or any of its property by mortgage, deed of trust, pledge or otherwise, using such procedure to consummate the transaction as the trustee may deem advisable.

7.   To make payments to any beneficiary under disability by making them to the guardian of the person of the beneficiary or to the parent of the beneficiary, if a minor, or to apply them for the beneficiary's benefit, or to make payments directly to minor beneficiaries, who, in the judgment of the trustee, have attained sufficient age and discretion to render it probable that the monies will be properly expended.

8.   To have respecting securities all the rights, powers and privileges of an owner, including the power to give proxies, pay assessments and other sums deemed by the trustee necessary for the protection of the trust estate; to participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers and liquidations, and in connection therewith, to deposit securities with and transfer title to any protective or other committee under such terms as the trustee may deem advisable; to exercise or sell stock subscription or

- 14 -

conversion rights; to accept and retain as an invest-
ment any securities or other property received through
the exercise of any of the foregoing powers, regardless
of any limitations elsewhere in this instrument relative
to the investments by the trustee.

9.  To hold property in its own name or in the
name of its nominee, with or without disclosure of
fiduciary relationship, affecting such property.

10.  To sell such property as the trustee may deem
necessary make division or distribution as to partition,
allot and distribute the trust estate in undivided
interests or in kind, or partly in money and partly in
kind, at valuations determined by the trustee.

11.  To budget the estimated annual income and
expenses of the trust in such manner as to equalize,
as far as practicable periodic income payments to bene-
ficiaries.

12.  To determine what is principal, gross income
or net distributable income and to charge the premium
of any security purchased at a premium either against
income or principal, or partly against income and partly
against principal as may be deemed best by the trustee
in its discretion.

– 15 –

Unless specifically limited, all discretions conferred upon the trustee shall be absolute and their exercise conclusive on all persons interested in this trust. The enumeration of certain powers of the trustee shall not limit its general powers, the trustee being vested with and having all the rights, powers and privileges which an absolute owner of the same property would have.

PARAGRAPH SIX:  GENERAL PROVISIONS:  TRUSTEE AND SUCCESSOR TRUSTEE:

1. Until the trustee shall receive from some person interested in this trust written notice of any death, birth, marriage or other event upon which the right to payments from this trust may depend, the trustee shall incur no liability for disbursement made in good faith to persons whose interests may have been affected by such event.

2. Income accrued or unpaid on trust property when received into the trust shall be treated as any other income. Income accrued or held undistributed by the trustee at the termination of any interest or estate under this trust shall go to the beneficiaries entitled to the next eventual interest in the proportions in which

they take such interest, except as may be contrary to
any other provisions of this trust.  Periodic payments
out of principal, not due upon the termination of any
interest or estate, shall not be apportioned to that
date.  The trustee shall not be required to prorate
taxes and other current expenses to the date of termination.

3.  Any estate, inheritance, succession or other
death taxes, domestic or foreign, and any ante mortem
claims, funeral or other necessary expenses arising from
the death of trustors, may be paid by the trustee out of
the principal or income of any trust or trusts herein
with allocation and apportionment to be made in the full
and absolute discretion of the trustee.  Such taxes shall
not be charged against the remainderman or beneficiary
herein nor paid by the respective interests of any bene-
ficiary, remainderman or any person interested herein.

4.  The trustee shall pay out of principal or
income as it may elect, or partly out of each, in such
shares as it may determine, property taxes, assessments,
charges, attorneys' fees, the trustee's compensation and
other expenses incurred in the administration or protec-
tion of this trust.  The discretion of the trustee to
pay these items from income or principal, or partly
from each, may be exercised not only in the interest of
the trust estate but for the benefit of any beneficiary.

- 17 -

The income remaining after such expenditures as the
trustee shall elect to pay therefrom, shall constitute
net income.

5.   The trustee shall have the right to resign at
any time, and in that event the trustors, may designate
a substitute therefore to whom the assets of the trust
shall be transferred and delivered subject to the terms
and conditions hereof.  If neither trustor be then living,
the substitute trustee shall be designated by the eldest
beneficiary then living, or by his or her guardian if a
minor or otherwise incompetent at that time.  Such
substitute shall be a corporate trustee.  Compensation
for its services may be negotiated.

6.  Other property acceptable to the trustee may
be added to this trust.

7.  If any provisions of the instrument is unen-
forceable, the remaining provisions shall nevertheless
be carried into effect..

8.  Whenever in the judgment of the trustee it shall
be necessary or proper in the administration of this
trust, it may disclose the existence, nature, terms and
conditions hereof.

9.  All rights granted to any person by any pro-
visions of this trust may be exercised by such person

- 18 -

at any time during his or her lifetime and competency, unless otherwise specifically provided herein; and for all purposes of this trust, it shall be conclusively presumed that each such person is competent unless he or she shall have been declared incompetent by a court having jurisdiction to determine such incompetency and until a duly certified or authenticated copy of determination of such incompetency issued by such court shall have been served upon and delivered to the trustee.

10.  No beneficiary of this trust shall have any right to alienate, encumber or hypothecate his or her interest in the principal or income of the trust in any manner, nor shall such interest of any beneficiary be subject to claims of his or her creditors or liable to attachment, execution or other process of law.

11.  This Declaration of Trust shall be construed and governed as to the Successor Trustee in accordance with the laws of the state wherein the Successor Trustee resides or maintains its principal place of business.

12.  Any successor of the Successor Trustee whether by consolidation, merger, transfer of trust business, conversion, resignation, or otherwise, shall succeed as Successor Trustee with like effect as though

- 19 -

originally named as such.

13. No person or entity dealing with the trustee shall be responsible for the use, application or disposition of money or property properly transferred or loaned by such person or entity to the trustee.

14. The successor trustee shall not be liable for any of the acts or ommissions of the former trustee and shall be under no duty or obligation or examine or review the acts or accounts of the trustee.

15. The Successor Trustee shall not receive any compensation prior to its assuming the duties of trustee; however, as trustee, said Successor Trustee shall be entitled to reasonable compensation for its ordinary services and for any extraordinary services performed by it.

Executed at Pacific Grove, California on February 20, 1973.

THOMAS L. PAUL
TRUSTEE


BETTY C. PAUL
TRUSTEE

We certify that we have read the foregoing
Declaration of Trust and that it correctly states the
terms and conditions under which the trust estate is
to be held, managed, and disposed of by the trustees.
We approve the Declaration of Trust in all particulars
and request that the trustees execute it.


Dated:  February 20, 1973

THOMAS L. PAUL
TRUSTOR


BETTY C. PAUL
TRUSTOR


State of California,)
                    )
County of Monterey  )

On February 20, 1973, before me, RITA H. GRAY,
personally appeared THOMAS L. PAUL and BETTY C. PAUL,
known to me to be the trustees of the trust created by
the above instrument, and to be the persons whose names
are subscribed to the instrument, and they acknowledged

- 21 -

that they executed the same as such trustees.

IN WITNESS WHEREOF, I have hereunto set my hand
and affixed my official seal the day and year first
above written.



OFFICIAL SEAL
RITA H. GRAY
NOTARY PUBLIC · CALIFORNIA
Principal Office in MONTEREY County
My Commission Expires March 14, 1976

NOTARY PUBLIC FOR THE STATE
OF CALIFORNIA

- 22 -

1.  Lots Numbered Twenty-two and Twenty-three in Block
Numbered Two as said Lots and Block are shown on that
certain Map entitled "Map of a Spazier Subdivision
Pacific Grove, California, May, 1928", filed for record
June 8, 1928 in the office of the County Recorder of
the County of Monterey, State of California, in Volume
3 of Maps, "Cities and Towns", at page 52.

2.  PARCEL 1:

Lot 42 of Tract No. 537 in the County of Monterey,
State of California, as shown on the Map filed April 15,
1967 in Volume 9 of Maps of Cities and Towns, at Page 10,
in the office of the County Recorder of said County.

PARCEL 2:

A non-exclusive easement for private road and public
utilities easement purposes 30.00 feet wide lying 15.00
feet on each side of the following described centerline:

Beginning at the intersection of the southerly
line of via Paloma, a County road, and the center-
line of a certain 30 foot private road and public
utilities easement as said lines are shown on said
map referred to in Parcel 1; thence along said
centerline

(1)  S. 25° 27' 50" W. 131.19 feet, thence

(2)  S. 11° 43' 40" W. 223.98 feet, thence

(3)  S. 41° 11' 40" W. 78.38 feet to a point in
the northeasterly line of Lot 42, Block 1,

# EXHIBIT 14

## DECLARATION OF TRUST

BETTY C. PAUL hereby declares that she is holding in trust as Trustee certain property described in Schedule A attached hereto under the provisions stated hereinbelow. THOMAS L. PAUL and BETTY C. PAUL, husband and wife, shall be known hereinbelow as the "Trustors".

Trustee agrees to receive, accept, hold and administer said property, and all other property hereafter becoming subject to this Agreement, in trust, with the powers and for the uses, purposes and beneficiaries and subject to the conditions following:

A.    Trustee may receive other property, real or personal, from the Trustors or from any person by deed, assignment, bequest or devise and such proceeds or other property when received and accepted by the Trustee shall become part of the trust estate and shall be held and administered in the manner provided herein and subject to all of the conditions hereof.

B.    It is the intention that all community property transferred to this trust and the proceeds thereof (called the "community estate") shall retain its character as community property during the joint lifetimes of the Trustors, subject, however, to all the terms and conditions of this instrument.

It is the intention that all quasi-community property and separate property of either spouse and the proceeds thereof (called the "separate estate") shall retain its character during the joint lifetimes of the Trustors, subject also to all the terms and conditions of this instrument.

C.    DISTRIBUTION OF INCOME AND PRINCIPAL

1.    During the joint lifetimes of the Trustors, the Trustee shall pay to BETTY C. PAUL or apply for the benefit of

IAN D. MCPHAIL
A PROFESSIONAL CORPORATION
ATTORNEY AT LAW
VILLA CARMEL, SUITE 4
MISSION AT FOURTH
P. O. BOX 2734
CARMEL, CALIFORNIA 93921
TELEPHONE (408) 625-4135

Trustors, and each of them, as community property, income and/or principal of the community estate as and when, and in the amounts which BETTY C. PAUL shall from time to time designate. If, in the future, BETTY C. PAUL shall be unable to so designate, due to her physical and/or mental condition, then the Trustee shall apply for the benefit of Trustors, and each of them, so much of the income and/or principal of the community estate, up to the whole thereof, as the Trustee, in the Trustee's discretion, may from time to time deem necessary or advisable for the comfort, support (in the manner to which they are accustomed), medical care and general welfare of Trustors and each of them.

 During the joint lifetimes of the Trustors, the Trustee shall also pay to or for his or her benefit, income and/or principal of that Trustors's separate estate as and when, and in the amounts, which he or she shall from time to time designate. If, in the future, he or she is unable to so designate, due to his or her physical and/or mental condition, then the Trustee shall pay to or for his or her benefit, so much of the income and/or principal of that Trustor's separate estate, up to the whole thereof, as the Trustee, in the Trustee's discretion, may from time to time deem necessary or advisable for the comfort, support (in the manner to which he or she is accustomed), medical care and general welfare of said Trustor.

 2. Upon the death of the first of the Trustors to die (hereafter called the "predeceased spouse"), the Trustee may in the Trustee's discretion pay out of the trust estate the predeceased spouse's last illness and funeral expenses, attorneys' fees and other costs incurred in administering the predeceased spouse's probate and/or non-probate estate, other obligations incurred for the predeceased spouse's support and any estate or inheritance taxes (including interest and penalties thereon) arising by reason of the predeceased spouse's death.

 3. Upon the death of the predeceased spouse, the Trustee shall divide the trust estate (including any additions made by the Will of the predeceased spouse or by any life insurance

- 2 -

proceeds, or otherwise) into two separate trusts, designated "Trust A" and "Trust B", as follows:

(a)    Trust B shall consist of that portion of the predeceased spouse's interest in the trust estate (whether separate property, quasi-community property, community property, or a combination thereof) which represents a pecuniary amount equal to the maximum sum which can be allocated to a trust which does not qualify for the federal estate tax marital deduction to any extent, without producing any federal estate tax, after taking into account:

(1)    All available deductions taken in determining the estate tax payable by reason of the death of the predeceased spouse;

(2)    All credits allowed for federal estate tax purposes, provided that no credit shall be taken into account if such credit shall result in the disallowance of the marital deduction;

(3)    The net value of all other property included in the gross estate of the predeceased spouse, whether or not passing under this Trust Agreement, that passes at the time of the predeceased spouse's death or has passed before the predeceased spouse's death to any person, trust or other entity, and that does not qualify for the federal estate tax marital deduction.

(b)    Trust A shall consist of the remainder of the trust estate.

(c)    It is the intent of Trustors that that interest of the predeceased spouse in the trust estate which is transferred to Trust A as a result of the death of the predeceased spouse under the provisions of section (b) of this subparagraph 3 qualify for the marital deduction for federal estate tax purposes under the Internal Revenue Code, that the provisions of this Trust Agreement relating to the marital deduction, including any power, duty, or discretionary authority, comply with the marital deduction provisions of the Internal Revenue Code, and that they be construed to conform to that intent.  To the extent that any such provisions

- 3 -

cannot be so construed, it shall be deemed to be void.  In no event shall the Trustee take any action or have any power that will impair the marital deduction, and all provisions regarding Trust A shall be interpreted to conform to that primary objective.

(d)  The Trustee shall satisfy the marital deduction amount in cash or in kind or partly in each, with assets selected by the Trustee from those includible in the predeceased spouse's gross estate and eligible for the marital deduction for federal estate tax purposes.  The assets so allocated in kind shall be deemed to satisfy the marital deduction amount on the basis of their value at the date or dates of distribution to Trust A.

(e)  Nothing in this instrument shall be construed as limiting the discretion of the person required to file the predeceased spouse's federal estate tax return to make, where allowable, an election for federal estate tax purposes to value the predeceased spouse's estate on the date of his or her death or pursuant to the alternate valuation method provided for by the Internal Revenue Code or pursuant to any other valuation provision of the Internal Revenue Code, provided that such valuation method or the use of such valuation provision is allowable in determining the marital deduction for federal estate tax purposes.

(f)  The predeceased spouse's last illness and funeral expenses, obligation incurred for the predeceased spouse's support, attorneys' fees and other estate administration expenses, to the extent paid from the trust, shall be paid from and deducted from Trust B.

(g)  All estate and inheritance taxes paid by the Trustee by reason of the death of the predeceased spouse shall be paid from and deducted from Trust B.

(h)  If the surviving spouse shall make a valid disclaimer of the gift to Trust A, or any portion thereof, said disclaimed property shall be allocated to Trust B, and the terms of Trust B shall control the disposition of said disclaimed property.

- 4 -

4.    From and after the death of the predeceased spouse, the Trustee shall pay the net income and/or principal of Trusts A and B as follows:

(a)    If BETTY C. PAUL is the predeceased spouse, the Trustee shall distribute Trust B, free of trust, in equal shares to Trustors' son, STEPHEN M. PAUL, and Trustors' granddaughter, SHERYL A. MOULTON.  If a said beneficiary does not survive BETTY C. PAUL, his or her share shall be distributed to his or her issue who survive the Trustor, by right of representation. If SHERYL does not survive BETTY C. PAUL and does not leave issue surviving BETTY C. PAUL, the share of SHERYL shall be distributed in equal shares to those children of STEPHEN M. PAUL who survive BETTY C. PAUL.

(b)    If BETTY C. PAUL is the predeceased spouse, the Trustee shall add the income of Trust A to the principal thereof and the Trustee shall pay to or apply for the benefit of THOMAS L. PAUL as the surviving spouse such sums out of the income and principal of Trust A as the Trustee, in the Trustee's discretion, deems necessary for the maintenance and health of THOMAS L. PAUL and for his support in his accustomed manner of living.

(c)    If THOMAS L. PAUL is the predeceased spouse, the Trustee shall pay the net income of Trusts A and B to or for the benefit of BETTY C. PAUL as the surviving spouse in monthly or other convenient installments, but no less frequently than in quarterly installments.

(d)    If THOMAS L. PAUL is the predeceased spouse, BETTY C. PAUL as the surviving spouse shall have the right, from time to time, to direct the Trustee in writing to pay to her or apply for her benefit such amounts from the principal of Trust A as she shall designate; if she should be unable to so designate, due to her physical or mental condition, the Trustee shall distribute amounts of principal of Trust A, if at all, solely under later provisions of this subparagraph 4.

- 5 -

(e)   If THOMAS L. PAUL is the predeceased spouse, BETTY C. PAUL as the surviving spouse shall have the right, from time to time, to direct the Trustee in writing, to pay to her, or apply for her benefit, such sums out of the principal of Trust B as shall be necessary for the maintenance in health of BETTY C. PAUL and for her support in her accustomed manner of living.

(f)   If THOMAS L. PAUL is the predeceased spouse, and if the Trustee deems the income payments from Trusts A and B to be insufficient, the Trustee shall, from time to time, pay to or apply for the benefit of the BETTY C. PAUL as the surviving spouse such sums out of the principal of Trusts A and B as the Trustee, in the Trustee's discretion, deems necessary for her comfort, support (in the manner to which she is accustomed at the time of the death of THOMAS L. PAUL), medical care and general welfare, including a reasonable number of luxuries, after taking into consideration, to the extent the Trustee deems advisable, any independent income or other resources of BETTY C. PAUL, known to the Trustee. Such payments to or for the benefit of BETTY C. PAUL may be made first out of the principal of Trust A until it is exhausted, and only thereafter out of the principal of Trust B, if for any reason the Trustee deems this advisable. In exercising the discretionary powers under this section, the Trustee shall be mindful of the fact that the primary concern of Trustors in establishing this trust is the welfare of BETTY C. PAUL and others in this trust are to be subordinate thereto. However, the powers granted to the Trustee in this section (f) shall be suspended and shall be of no effect so long as BETTY C. PAUL shall be serving as the Trustee.

5.   Upon the death of the surviving spouse, the Trustee shall distribute the remaining balance of Trusts A and B as follows:

(a)   The Trustee may, in the Trustee's discretion, pay out of the principal of Trust A, or, if Trust A shall have been entirely exhausted, out of Trust B, the surviving spouse's last illness and funeral expenses, attorneys' fees and

other costs incurred in administering the surviving spouse's probate and/or non-probate estate, other obligations incurred for the surviving spouse's support and any estate or inheritance taxes (including interest and penalties) arising by reason of the surviving spouse's death.

(b)    If Trust B is still held under this Trust Agreement, which it will be if BETTY C. PAUL is the surviving spouse, the Trustee shall distribute Trust B in equal shares to STEPHEN M. PAUL and SHERYL A. MOULTON.    If one (1) of said beneficiaries does not survive the surviving spouse, his or her share shall be distributed to his or her issue who survive the surviving spouse, by right of representation.    If SHERYL A. MOULTON does not survive the surviving spouse, and if she does not leave issue surviving the surviving spouse, her share shall be distributed in equal shares to DAVID L. PAUL and KENDRA L. PAUL.

(c)    The Trustee shall distribute from Trust A residential real property in Hacienda Carmel, or that replacement residential real property or, if no residential real property is held in Trust A upon the death of the surviving spouse, cash in the amount of Two Hundred Thousand Dollars ($200,000.00), in equal shares to STEPHEN M. PAUL and SHERYL A. MOULTON.    If one of them does not survive the surviving spouse, his or her share shall be distributed to his or her issue who survive the surviving spouse, by right or representation.

(d)    The Trustee shall distribute the residue of Trust A in equal shares to Trustors' grandchildren, SHERYL A. MOULTON, DAVID L. PAUL and KENDRA L. PAUL.

(e)    If a grandchild of Trustor does not survive the surviving spouse, his or her share shall be distributed to the issue of said deceased grandchild of Trustors who survive the surviving spouse, by right of representation, in absence of whom it shall be distributed equally to those designated grandchildren of Trustors who survive the surviving spouse.

- 7 -

### D.    POWERS AND DUTIES OF THE TRUSTEE

1.    The Trustee shall have the power, with respect to the property of the trust estate or any part thereof, and upon such terms and in such manner as the Trustee may deem advisable, to sell, convey, exchange, convert, improve, repair, manage, operate and control; to lease for terms within or beyond the terms of these trusts and for any purposes, including exploration for and removal of gas, oil and other minerals; and to enter into community oil leases, pooling and utilization agreements; to borrow money for any trust purposes, and to encumber or hypothecate by mortgage, deed of trust, pledge or otherwise; to carry insurance of such kinds and in such amounts as the Trustee may deem advisable, at the expense of the trust; to compromise or otherwise adjust any claims against or in favor of the trust; to invest and reinvest the trust funds in such property as the Trustee may deem advisable, whether or not of the character permitted by law for the investment of trust funds; and with respect to securities held in trust, to vote, give proxies and pay assessments or other charges, to participate in foreclosures, reorganizations, consolidations, mergers and liquidations and incident thereto, to deposit securities with and transfer title to any protective or other committee upon such terms as the Trustee may deem advisable, and to exercise or sell stock subscription or conversion rights; and the Trustee shall have such additional powers as may now or hereafter be conferred upon the Trustee by law or as may be necessary to enable the Trustee to administer the trust estate in accordance with the provisions of this Agreement, subject to any limitations thereof that may be provided for herein.

2.    The Trustee is authorized to buy, sell and trade in securities of any nature including option contracts and short sales for cash or on margin, and for such purpose may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by him with such brokers as security for loans and advances made to the Trustee.

3.    Without limiting the generality of the foregoing powers, the Trustee is authorized to purchase on behalf of the trust estate any assets which may be offered for sale by the personal representative of the estate of either Trustor and/or to lend money to the estate of either Trustor upon a reasonable rate of interest without requiring security therefor beyond the written representation by the personal representative of the estate that the net worth of the estate is sufficient to repay said loan.

4.    The Trustee is authorized to retain in the trust, for such time as the Trustee may deem advisable, any property received by the Trustee, whether or not of the character permitted by law for the investment of trust funds, and to continue to operate any business which the Trustee may receive hereunder, so

- 8 -

long as in the Trustee's discretion, the Trustee may deem it advisable to do so.

5.    The Trustee may hold securities or other property in the Trustee's name as Trustee hereunder, or the Trustee may hold such securities unregistered in such condition that ownership will pass by delivery.  If the Trustee is a bank, the Trustee may hold securities or other property in this trust in the Trustee's own name or in the name of its nominee.

6.    Notwithstanding any provision in this Trust Agreement to the contrary, the surviving spouse, after the death of the predeceased spouse, shall have the power to require, in a written demand delivered to the Trustee, that the aggregate return on all investments in Trust A shall be reasonable in light of the then existing circumstances and that unproductive property held in Trust A shall be made productive or disposed of within a reasonable time.

7.    Upon the death of any income beneficiary of a trust during its continuance, any accumulated income not distributed (other than income from Trust A which shall in all events be paid to the surviving spouse or his or her estate, as the case may be) which would have been paid to such beneficiary had he or she survived shall not be payable to his or her estate but shall be paid to his or her successor(s) in interest in the trust as hereinabove provided.

8.    The Trustee is authorized to employ counsel and corporate or other agents in the discharge of the Trustee's duties and to pay them a reasonable compensation and to rely upon the advice of counsel and to suffer no liability resulting from any action taken or withheld in good faith pursuant to such advice.

9.    The Trustee is authorized to pay from time to time all taxes, assessments, including corporate assessments, and other charges levied or accruing against or on account of the trust estate and to pay all expenses of the trust estate, including all reasonable compensation to the Trustee.

10.    The Trustee in the Trustee's discretion may make payments to a minor or other beneficiary under disability by making payments to the Guardian of his or her person, or to any suitable person with whom he or she resides, or the Trustee may apply payments directly for the beneficiary's benefit.  The Trustee, in the Trustee's discretion, may make payments directly to a minor if in the Trustee's judgment he or she is of sufficient age and maturity to spend the money properly.

11.    In any case in which the Trustee is required, pursuant to the provisions of the trust, to divide any trust property into parts or shares for the purpose of distribution, or

- 9 -

otherwise, the Trustee is authorized, in the Trustee's absolute discretion, to make the division and distribution in kind, including undivided interests in any property, or partly in kind and partly in money, and for this purpose to make such sales of the trust property as the Trustee may deem necessary on such terms and conditions as the Trustee shall see fit.

E.    POWERS TO AMEND AND REVOKE

During the lifetime of both Trustors, the community estate may be revoked in whole or in part by either Trustor, and any separate estate may be revoked in whole or in part by the Trustor who created it. The power of revocation shall be exercised by written notice delivered to the other Trustor and to the Trustee. In the event of such revocation, the community estate or the revoked portion of the community estate shall revert to both Trustors as their community property and shall be distributed to BETTY C. PAUL as the Custodian thereof, and the revoked separate property shall revert to the Trustor who created it and shall constitute his or her separate or quasi-community property as if this trust had not been created, and shall be distributed to BETTY C. PAUL as the Custodian thereof. This Declaration of Trust may be amended during the lifetime of both Trustors by BETTY C. PAUL. From and after the death of the predeceased spouse, the surviving spouse shall have the power to alter, amend or revoke Trust A, but Trust B may not be altered, amended or revoked by any person. From and after the death of the surviving spouse, no part of this Trust Agreement may be altered, amended or revoked by any person.

F.    PROVISIONS RELATING TO TRUSTEE

1.    Should BETTY C. PAUL cease to act as the Trustee, because of her resignation, death, disability or otherwise, STEPHEN M. PAUL and SHERYL A. MOULTON shall thereafter act as successor co-Trustees. Should one of the co-Trustees for any reason be unable to act or refuse to act as such, or having accepted said appointment, later cease to act as Trustee for any reason, the remaining co-Trustee shall act as the sole successor Trustee.

- 10 -

2.    Any successor Trustee shall succeed as Trustee with like effect as though originally named as such herein.  All authority and powers conferred upon the original Trustee hereunder shall pass to any successor Trustee.

3.    The Trustee shall make a reasonable accounting, from time to time, to the then beneficiary or beneficiaries of the income of the trusts, unless waived in writing by said beneficiaries.

4.    In the event that a successor Trustee is mentioned as such in this Trust Agreement and agrees to serve as Trustee, or if a successor Trustee is not mentioned as such in this Trust Agreement but agrees to serve as such and is appointed by the Court to serve as successor Trustee, said successor Trustee shall have no liability for any acts or failure to act on behalf of previous Trustees occurring prior to the date when said successor Trustee takes office.

G.    GENERAL PROVISIONS

1.    If any provision of this instrument is unenforceable, the remaining provisions shall nevertheless be carried into effect.

2.    This instrument shall be construed and administered; and the validity of the trust hereby created shall be determined in accordance with the laws of the State of California.

3.    Until the Trustee shall receive written notice of any birth, death or other event upon which the right to payments from the trust may depend, the Trustee shall incur no liability to persons whose interests may have been affected by the event for disbursements made in good faith.

4.    As used in this instrument, the term "issue" shall refer to lineal descendants of all degrees, and the terms "child", "children", and "issue" shall include adopted persons who are minors at the date of adoption.

5.    As used in this instrument, the masculine, feminine or neuter gender, and the singular or plural number, shall

- 11 -

each be allowed to include the other whenever the context so indicates.

6.    For the sake of operation of the provisions of this Agreement, a Trustor who fails to survive the other Trustor by thirty (30) days shall be treated as having predeceased said Trustor, and any person who fails to survive the death of the surviving spouse by thirty (30) days shall be treated as having predeceased the surviving spouse.

7.    If there is a time when two (2) Trustees are serving together, the powers of the Trustee may be exercised either by both Trustees or by one of the Trustees acting independently of the other, in which latter event the act of one Trustee shall bind the other, and any person or entity dealing with a Trustee under this Trust Agreement will be fully protected by the act of only one Trustee.

8.    No interest in the principal or income of any irrevocable portion of the trust estate shall be anticipated, assigned or encumbered or subject to any creditor's claim or to legal process, prior to its actual receipt by the beneficiary.

9.    Trustors have purposely made no provision in this Trust Agreement for any other person, whether claiming to be an heir of Trustors or not, and if any person whether a beneficiary under this Trust Agreement or not mentioned herein shall contest this Trust Agreement or object to any of the provisions hereof, such person so contesting or so objecting shall be given the sum of ONE DOLLAR ($1.00) and no more, in lieu of the provisions which Trustors have made, or which Trustors might have made, herein for such person so contesting or so objecting.

H.    Declarant makes no provision in this Declaration of Trust for SHELLY L. MOULTON, daughter of Trustors.

Dated: MARCH 24, 1997.

_Betty C Paul_
BETTY C. PAUL
Trustor and Trustee

- 12 -

STATE OF CALIFORNIA )
                    )  ss.
COUNTY OF MONTEREY  )

On MARCH 24, 1997, before me, the undersigned, a Notary Public in and for said State, personally appeared BETTY C. PAUL personally known to me, or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

IAN D. MC PHAIL
COMM. # 1057433
Notary Public — California
SANTA CRUZ COUNTY
My Comm. Expires MAY 17, 1999

- 13 -

EXHIBIT 15



# AMENDMENT TO PAUL TRUST DATED
## MARCH 24, 1997

BETTY C. PAUL, as surviving Trustor and Trustee under the PAUL TRUST dated March 24, 1997, with THOMAS L. PAUL having died April 28, 2004, and in anticipation of the division of the trust estate into Trusts A and B, with only Trust A continuing to be revocable and amendable by BETTY C. PAUL, hereby amends said Trust solely so far as it affects Trust A thereof as follows:

1.    BETTY C. PAUL confirms that she and her deceased husband, THOMAS L. PAUL, have two (2) living children, STEPHEN M. PAUL and SHELLY L. MOULTON. Trustors have no other children living or deceased. BETTY C. PAUL knowingly and deliberately omits to make any provision hereunder for SHELLY L. MOULTON, daughter of the Trustors. SHELLY L. MOULTON has one (1) child, SHERYL A. MOULTON. STEPHEN M. PAUL has two (2) children, DAVID L. PAUL and KENDRA L. PAUL.

2.    BETTY C. PAUL amends C.5.(c) through (e) of said Trust, solely so far as it affects Trust A thereof, by deleting all the provisions thereof and by substituting the following provisions therefor:

"(c) The Trustee shall distribute from Trust A residential real property in Hacienda Carmel, or that replacement residential real property, if any, or if no residential real property is held in Trust A upon the death of BETTY C. PAUL, cash in the amount of the net proceeds of sale of the last residential real property occupied by BETTY C. PAUL to be sold, in equal shares to STEPHEN M. PAUL and SHERYL A. MOULTON. If one of them does not survive BETTY C. PAUL, his or her share shall be distributed to his or her issue who survive BETTY C. PAUL, by right of representation. If one of them dies without leaving issue who survive BETTY C. PAUL, said share shall be added to the other share.

(d)    If that Promissory Note payable by DAVID L. PAUL to the PAUL TRUST is held in Trust A upon the death of BETTY C. PAUL, the Trustee shall reduce the principal thereof by Twenty-five Thousand Dollars ($25,000.00) or by the remaining balance of said

Note on the death of BETTY C. PAUL, whichever is the lesser amount. The Trustee shall also distribute to KENDRA L. PAUL cash in the equivalent amount of the reduction of said Note on the death of BETTY C. PAUL. If said Note is held in Trust B on the death of BETTY C. PAUL, the Trustee shall distribute from Trust A to Trust B the amount of Twenty-five Thousand Dollars ($25,000.00) or the remaining balance of the Note on the death of BETTY C. PAUL, whichever is the lesser amount, in consideration of the Trustees of Trust B agreeing to reduce the principal of said Note by said amount, in which event the Trustee shall also distribute to KENDRA L. PAUL cash in the equivalent amount so distributed by Trust A to Trust B.

(e)    The Trustee shall distribute the residue of Trust A in equal shares to Trustors' grandchildren, SHERYL A. MOULTON, DAVID L. PAUL and KENDRA L. PAUL. If a said grandchild of Trustors does not survive BETTY C. PAUL, his or her share shall be distributed to the issue of said deceased grandchild of Trustors who survive BETTY C. PAUL, by right of representation, in absence of whom it shall be added equally to the shares of those grandchildren of Trustors who survive BETTY C. PAUL and those grandchildren of Trustors who predecease BETTY C. PAUL but who leave issue surviving BETTY C. PAUL.

(f)    Notwithstanding earlier provisions of this subparagraph 5. to the contrary, the share of any beneficiary who is under age thirty-five (35) years upon the date of death of BETTY C. PAUL shall continue to be held in Trust by the Trustee and shall be administered and distributed as follows:

(1)    The Trustee shall pay to or apply for the benefit of the beneficiary as much of the net income and principal of the beneficiary's Trust, up to the whole thereof, as the Trustee, in the Trustee's reasonable discretion, may from time to time deem necessary or advisable for the beneficiary's proper support, care, maintenance, and education, after taking into consideration, to the extent the Trustee deems advisable, any income or other resources of the beneficiary, outside the beneficiary's Trust, known to the Trustee, including the beneficiary's capacity for gainful employment after completion of the beneficiary's

-2-

education.  Any net income not distributed shall be accumulated and added to the principal of the beneficiary's Trust.

       (2)   When the beneficiary attains age thirty-five (35) years, the Trustee shall distribute to the beneficiary the then remaining balance of the beneficiary's Trust.  If the beneficiary dies before attaining age thirty-five (35) years, the Trustee shall distribute the balance remaining of the beneficiary's Trust on the beneficiary's death to the issue of the beneficiary who shall survive the beneficiary, by right of representation, in absence of whom it shall be distributed in equal shares to the siblings of the beneficiary who survive the beneficiary, in absence of whom it shall be distributed to the issue of the Trustors then surviving, by right of representation (although SHELLY L. MOULTON shall be excluded as a beneficiary under this subsection (2) by being treated as having predeceased the deceased beneficiary); provided, however, that if a Trust is then being administered for a said beneficiary under earlier provisions of this Trust Agreement, the share of that beneficiary shall be added to that beneficiary's Trust and administered as a part thereof.

       (3)   Whenever provision is made in this Paragraph for payment for the "education" of a beneficiary, the term "education" shall be construed to include a technical or vocational school, college, and postgraduate study, so long as pursued to advantage by the beneficiary, at an institution of the beneficiary's choice; and, in determining payments to be made for such education, the Trustee shall take into consideration the beneficiary's related living expenses to the extent that they are reasonable."

    3.   In all other respects,  BETTY C. PAUL confirms the terms and provisions of said Trust as presently constituted.

Dated: _JUNE 10, 2004_

_Betty C Paul_
BETTY C. PAUL
Trustor and Trustee

-3-

STATE OF CALIFORNIA )
                              ) ss.
COUNTY OF MONTEREY )

On ___JUNE 10_____, 2004, before me, the undersigned, a Notary Public in and for said State, personally appeared BETTY C. PAUL, personally known to me, or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within agreement and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the agreement the person or the entity upon behalf of which the person acted, executed the agreement.

WITNESS my hand and official seal.

_____
Notary Public, State of California

IAN D. MC PHAIL
Commission # 1418974
Notary Public - California
Santa Cruz County
My Comm. Expires May 17, 2007

-4-

EXHIBIT 16

# AMENDMENT TO PAUL TRUST DATED
## MARCH 24, 1997

BETTY C. PAUL, as surviving Trustor and Trustee under the PAUL TRUST dated March 24, 1997, with THOMAS L. PAUL having died April 28, 2004, and in anticipation of the division of the trust estate into Trusts A and B, with only Trust A continuing to be revocable and amendable by BETTY C. PAUL, hereby amends said Trust solely so far as it affects Trust A thereof as follows:

1.    BETTY C. PAUL revokes Amendment to Paul Trust signed June 10, 2004.

2.    BETTY C. PAUL confirms that she and her deceased husband, THOMAS L. PAUL, have two (2) living children, STEPHEN M. PAUL and SHELLY L. MOULTON. Trustors have no other children living or deceased. BETTY C. PAUL knowingly and deliberately omits to make any provision hereunder for SHELLY L. MOULTON, daughter of the Trustors. SHELLY L. MOULTON has one (1) child, SHERYL A. MOULTON. STEPHEN M. PAUL has two (2) children, DAVID L. PAUL and KENDRA L. PAUL.

3.    BETTY C. PAUL amends C.5.(c) through (e) of said Trust, solely so far as it affects Trust A thereof, by deleting all the provisions thereof and by substituting the following provisions therefor:

"(c) The Trustee shall distribute from Trust A residential real property in Hacienda Carmel, or that replacement residential real property, if any, or if no residential real property is held in Trust A upon the death of BETTY C. PAUL, cash in the amount of the net proceeds of sale of the last residential real property occupied by BETTY C. PAUL to be sold, in equal shares to STEPHEN M. PAUL and SHERYL A. MOULTON. If one of them does not survive BETTY C. PAUL, his or her share shall be distributed to his or her issue who survive BETTY C. PAUL, by right of representation. If one of them dies without leaving issue who survive BETTY C. PAUL, said share shall be added to the other share.

IAN D. McPHAIL
ATTORNEY AT LAW

(d)   The Trustee shall distribute the residue of Trust A in equal shares to Trustors' grandchildren, SHERYL A. MOULTON, DAVID L. PAUL and KENDRA L. PAUL. If a said grandchild of Trustors does not survive BETTY C. PAUL, his or her share shall be distributed to the issue of said deceased grandchild of Trustors who survive BETTY C. PAUL, by right of representation, in absence of whom it shall be added equally to the shares of those grandchildren of Trustors who survive BETTY C. PAUL and those grandchildren of Trustors who predecease BETTY C. PAUL but who leave issue surviving BETTY C. PAUL.

(e)   Notwithstanding earlier provisions of this subparagraph 5. to the contrary, the share of any beneficiary who is under age thirty-five (35) years upon the date of death of BETTY C. PAUL shall continue to be held in Trust by the Trustee and shall be administered and distributed as follows:

(1)   The Trustee shall pay to or apply for the benefit of the beneficiary as much of the net income and principal of the beneficiary's Trust, up to the whole thereof, as the Trustee, in the Trustee's reasonable discretion, may from time to time deem necessary or advisable for the beneficiary's proper support, care, maintenance, and education, after taking into consideration, to the extent the Trustee deems advisable, any income or other resources of the beneficiary, outside the beneficiary's Trust, known to the Trustee, including the beneficiary's capacity for gainful employment after completion of the beneficiary's education. Any net income not distributed shall be accumulated and added to the principal of the beneficiary's Trust.

(2)   When the beneficiary attains age thirty-five (35) years, the Trustee shall distribute to the beneficiary the then remaining balance of the beneficiary's Trust. If the beneficiary dies before attaining age thirty-five (35) years, the Trustee shall distribute the balance remaining of the beneficiary's Trust on the beneficiary's death to the issue of the beneficiary who shall survive the beneficiary, by right of representation, in absence of whom it shall be distributed in equal shares to the siblings of the beneficiary who survive the beneficiary, in absence of whom it shall be distributed to the issue of the Trustors then

-2-

surviving, by right of representation (although SHELLY L. MOULTON shall be excluded as a beneficiary under this subsection (2) by being treated as having predeceased the deceased beneficiary); provided, however, that if a Trust is then being administered for a said beneficiary under earlier provisions of this Trust Agreement, the share of that beneficiary shall be added to that beneficiary's Trust and administered as a part thereof.

(3)    Whenever provision is made in this Paragraph for payment for the "education" of a beneficiary, the term "education" shall be construed to include a technical or vocational school, college, and postgraduate study, so long as pursued to advantage by the beneficiary, at an institution of the beneficiary's choice; and, in determining payments to be made for such education, the Trustee shall take into consideration the beneficiary's related living expenses to the extent that they are reasonable."

4.    In all other respects,  BETTY C. PAUL confirms the terms and provisions of said Trust as presently constituted.

Dated: _January 24, 2005_

_Betty C. Paul_
BETTY C. PAUL
Trustor and Trustee


STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF MONTEREY     )

On _JAN. 24_____, 2005, before me, IAN D. McPHAIL, the undersigned, a Notary Public in and for said State, personally appeared BETTY C. PAUL, personally known to me, or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within agreement and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the agreement the person or the entity upon behalf of which the person acted, executed the agreement.

WITNESS my hand and official seal.

_Ian D. McPhail_
Notary Public, State of California

IAN D. MC PHAIL
Commission # 1418974
Notary Public - California
Santa Cruz County
My Comm. Expires May 17, 2007

-3-

# EXHIBIT 17

*2/18/18*
*Revised*

# AMENDMENT TO PAUL TRUST DATED
## MARCH 24, 1997

BETTY C. PAUL, as surviving Trustor and Trustee under the PAUL TRUST dated March 24, 1997, with THOMAS L. PAUL having died April 28, 2004, hereby amends said Trust solely so far as it affects Trust A thereof as follows:

1.    BETTY C. PAUL revokes Amendments to Paul Trust signed June 10, 2004 and January 24, 2005.

2.    BETTY C. PAUL confirms that she and her deceased husband, THOMAS L. PAUL, have two (2) living children, STEPHEN M. PAUL and SHELLY L. MOULTON. Trustors have no other children living or deceased.  BETTY C. PAUL knowingly and deliberately omits to make any provision hereunder for either STEPHEN M. PAUL or SHELLY L. MOULTON, son and daughter of the Trustors.  SHELLY L. MOULTON has one (1) child, SHERYL A. MOULTON. STEPHEN M. PAUL has two (2) children, DAVID L. PAUL and KENDRA L. PAUL.

3.    BETTY C. PAUL amends C.5.(c) through (e) of said Trust, solely so far as it affects Trust A thereof, by deleting all the provisions thereof and by substituting the following provisions therefor:

"(c) The Trustee shall distribute from Trust A residential real property in Hacienda Carmel, or that replacement residential real property, if any, in equal shares to DAVID L. PAUL and SHERYL A. MOULTON.

(d)    The Trustee shall distribute cash in the amount of Twenty-five Thousand Dollars ($25,000.00) to Trustors' granddaughter, KENDRA L. PAUL.  If she does not

IAN D. McPHAIL
ATTORNEY AT LAW
APTOS & CARMEL, CALIFORNIA

survive BETTY C. PAUL, said gift shall be distributed instead to the issue of KENDRA L. PAUL who survive BETTY C. PAUL, by right of representation, in absence of whom it shall be distributed as part of the residue of Trust A.

      (e)    The Trustee shall distribute the residue of Trust A in equal shares to two (2) of Trustors' grandchildren, namely DAVID L. PAUL and SHERYL A. MOULTON.

      (f)    If DAVID L. PAUL does not survive BETTY C. PAUL, his share of Trust A shall be distributed to his issue who survive BETTY C. PAUL, by right of representation, in absence of whom it shall be distributed to SHERYL A. MOULTON. If SHERYL A. MOULTON does not survive BETTY C. PAUL, her share of Trust A shall instead be added to the share of DAVID L. PAUL. Any differential distribution of Trust A to the grandchildren of Trustors is not intended to indicate that BETTY C. PAUL loves one of her grandchildren more or less than the others.

      (g)    Notwithstanding earlier provisions of this subparagraph 5. to the contrary, the share of any beneficiary who is under age thirty-five (35) years upon the date of death of BETTY C. PAUL shall continue to be held in Trust by the Trustee and shall be administered and distributed as follows:

      (1)    The Trustee shall pay to or apply for the benefit of the beneficiary as much of the net income and principal of the beneficiary's Trust, up to the whole thereof, as the Trustee, in the Trustee's reasonable discretion, may from time to time deem necessary or advisable for the beneficiary's proper support, care, maintenance, and education, after taking into consideration, to the extent the Trustee deems advisable, any income or other resources of the beneficiary, outside the beneficiary's Trust, known to the Trustee, including the beneficiary's capacity for gainful employment after completion of the beneficiary's education. Any net income not distributed shall be accumulated and added to the principal of the beneficiary's Trust.

      (2)    When the beneficiary attains age thirty-five (35) years, the Trustee shall distribute to the beneficiary the then remaining balance of the beneficiary's Trust. If the

beneficiary dies before attaining age thirty-five (35) years, the Trustee shall distribute the balance remaining of the beneficiary's Trust on the beneficiary's death to the issue of the beneficiary who shall survive the beneficiary, by right of representation, in absence of whom it shall be distributed in equal shares to the siblings of the beneficiary who survive the beneficiary, in absence of whom it shall be distributed to the issue of the Trustors then surviving, by right of representation (although STEPHEN M. PAUL and SHELLY L. MOULTON shall be excluded as beneficiaries under this subsection (2) by being treated as having predeceased the deceased beneficiary); provided, however, that if a Trust is then being administered for a said beneficiary under earlier provisions of this Trust Agreement, the share of that beneficiary shall be added to that beneficiary's Trust and administered as a part thereof.

       (3)   Whenever provision is made in this Paragraph for payment for the "education" of a beneficiary, the term "education" shall be construed to include a technical or vocational school, college or university, and postgraduate study, so long as pursued to advantage by the beneficiary, at an institution of the beneficiary's choice; and, in determining payments to be made for such education, the Trustee shall take into consideration the beneficiary's related living expenses to the extent that they are reasonable."

    4.    BETTY C. PAUL amends F.1., solely so far as it affects Trust A thereof, by deleting all the provisions thereof and by substituting the following provisions therefore:

    "F.   PROVISIONS RELATING TO TRUSTEE

       1.    Should BETTY C. PAUL cease to act as the Trustee, because of her resignation, death, disability or otherwise, DAVID L. PAUL and SHERYL A. MOULTON shall thereafter act as successor co-Trustees. Should one of the co-Trustees for any reason be unable to act or refuse to act as such, or having accepted said appointment, later cease to act as Trustee for any reason, the remaining co-Trustee shall act as the sole successor Trustee."

5.    In all other respects,  BETTY C. PAUL confirms the terms and provisions of said Trust as presently constituted.

Dated: _FEB. 18_____, 2010.



BETTY C. PAUL
Trustor and Trustee

STATE OF CALIFORNIA

COUNTY OF MONTEREY

On _FEB - 18_____, 2010  before me, IAN D. McPHAIL, Notary Public, personally appeared BETTY C. PAUL, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature 

IAN D. MCPHAIL
Commission # 1746425
Notary Public - California
Santa Cruz County
My Comm. Expires May 22, 2011

-4-

EXHIBIT 18

## AMENDMENT TO PAUL TRUST DATED
## MARCH 24, 1997

BETTY C. PAUL, as surviving Trustor and Trustee under the PAUL TRUST dated March 24, 1997, with THOMAS L. PAUL having died April 28, 2004, hereby amends said Trust Agreement as follows:

1.    BETTY C. PAUL adds the following provision to the PAUL TRUST dated March 24, 1997:

"BETTY C. PAUL, who is serving as Trustee under the PAUL TRUST dated March 24, 1997, hereby authorizes herself as Trustee to execute a Special Power of Attorney to permit DAVID L. PAUL and SHERYL A. MOULTON to act as agents with the following limited powers in regard to said PAUL TRUST:

To receive copies of any and all brokerage account statements and any other materials sent to the Trustee in regard to any said brokerage accounts, held in the Paul Trust, and to act in the name of Betty C. Paul, Trustee, in authorizing or directing the broker under said brokerage accounts to execute any purchases or sales of securities held in said accounts."

2.    In all other respects, BETTY C. PAUL confirms the terms and provisions of the PAUL TRUST dated March 24, 1997, as said Trust is presently constituted.

Dated: _____JUNE  22_____, 2010.

_____
BETTY   C.  PAUL
Trustor and Trustee

IAN D. MCPHAIL
ATTORNEY AT LAW
APTOS & CARMEL, CALIFORNIA

STATE OF CALIFORNIA

COUNTY OF MONTEREY

On _JUNE 22_____, 2010  before me, IAN D. McPHAIL, Notary Public, personally appeared BETTY C. PAUL, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

IAN D. MCPHAIL
Commission # 1746425
Notary Public - California
Santa Cruz County
My Comm. Expires May 22, 2011

-2-

EXHIBIT 19

## AMENDMENT TO THE PAUL TRUST DATED
## MARCH 24, 1997

BETTY C. PAUL, as surviving Trustor and Trustee under the PAUL TRUST dated March 24, 1997, with THOMAS L. PAUL having died April 28, 2004, hereby amends said Trust solely so far as it affects Trust A thereof as follows:

1.    BETTY C. PAUL revokes any and all Amendments to Paul Trust signed by her since the death of her husband, THOMAS L. PAUL.

2.    BETTY C. PAUL confirms that she and her deceased husband, THOMAS L. PAUL, have two (2) living children, STEPHEN M. PAUL and SHELLY L. MOULTON. Trustors have no other children living or deceased.  BETTY C. PAUL knowingly and deliberately omits to make any provision hereunder for SHELLY L. MOULTON, daughter of the Trustors.  SHELLY L. MOULTON has one (1) child, SHERYL A. MOULTON. STEPHEN M. PAUL has two (2) children, DAVID L. PAUL and KENDRA L. PAUL.

3.    BETTY C. PAUL amends C.5.(c) through (e) of said Trust, solely so far as it affects Trust A thereof, by deleting all the provisions thereof and by substituting the following provisions (c) through (f) therefor:

"(c)  The Trustee shall distribute from Trust A residential real property in Hacienda Carmel to STEPHEN M. PAUL. If STEPHEN M. PAUL does not survive BETTY C. PAUL, said residential real property shall be added to the residue of Trust A which will be distributed immediately hereinbelow.

(d)  The Trustee shall distribute the residue of Trust A in the following proportions:

(i)  One-half (½) thereof, to DAVID L. PAUL, grandson of BETTY C.

IAN D. McPHAIL
ATTORNEY AT LAW
APTOS & CARMEL, CALIFORNIA



PAUL. If DAVID does not survive BETTY, his share shall be distributed to the issue of DAVID L. PAUL who survive BETTY C. PAUL, by right of representation.

(ii)    One-quarter (1/4) thereof to SHERYL A. MOULTON, one of the granddaughters of BETTY C. PAUL. If SHERYL does not survive BETTY C. PAUL, her share shall be distributed instead to the issue of SHERYL A. MOULTON who survive BETTY C. PAUL, by right of representation.

(iii)    One-quarter (1/4) thereof to KENDRA L. PAUL, one of the granddaughters of BETTY C. PAUL. If KENDRA does not survive BETTY C. PAUL, her share shall be distributed to the issue of KENDRA L. PAUL who survive BETTY C. PAUL by right of representation.

(e)    Any differential distribution of Trust A to the grandchildren of Trustors is not intended to indicate that BETTY C. PAUL loves one of her grandchildren more or less than the others.

(f)    Notwithstanding earlier provisions of this subparagraph 5. to the contrary, the share of any beneficiary who is under age thirty-five (35) years upon the date of death of BETTY C. PAUL shall continue to be held in Trust by the Trustee and shall be administered and distributed as follows:

(1)    The Trustee shall pay to or apply for the benefit of the beneficiary as much of the net income and principal of the beneficiary's Trust, up to the whole thereof, as the Trustee, in the Trustee's reasonable discretion, may from time to time deem necessary or advisable for the beneficiary's proper support, care, maintenance, and education, after taking into consideration, to the extent the Trustee deems advisable, any income or other resources of the beneficiary, outside the beneficiary's Trust, known to the Trustee, including the beneficiary's capacity for gainful employment after completion of the beneficiary's education. Any net income not distributed shall be accumulated and added to the principal of the beneficiary's Trust.

-2-

(2)    When the beneficiary attains age thirty-five (35) years, the Trustee shall distribute to the beneficiary the then remaining balance of the beneficiary's Trust. If the beneficiary dies before attaining age thirty-five (35) years, the Trustee shall distribute the balance remaining of the beneficiary's Trust on the beneficiary's death to the issue of the beneficiary who shall survive the beneficiary, by right of representation, in absence of whom it shall be distributed in equal shares to the siblings of the beneficiary who survive the beneficiary, in absence of whom it shall be distributed to the issue of the Trustors then surviving, by right of representation; provided, however, that if a Trust is then being administered for a said beneficiary under earlier provisions of this Trust Agreement, the share of that beneficiary shall be added to that beneficiary's Trust and administered as a part thereof.

(3)    Whenever provision is made in this Paragraph for payment for the "education" of a beneficiary, the term "education" shall be construed to include a technical or vocational school, college or university, and postgraduate study, so long as pursued to advantage by the beneficiary, at an institution of the beneficiary's choice; and, in determining payments to be made for such education, the Trustee shall take into consideration the beneficiary's related living expenses to the extent that they are reasonable."

4.    BETTY C. PAUL amends F.1., solely so far as it affects Trust A thereof, by deleting all the provisions thereof and by substituting the following provisions therefore:

"F.    PROVISIONS RELATING TO TRUSTEE

1.    Should BETTY C. PAUL cease to act as the Trustee, because of her resignation, death, disability or otherwise, DAVID L. PAUL shall thereafter act as successor co-Trustee. Should DAVID L. PAUL for any reason be unable to act or refuse to act as such, or having accepted said appointment, later cease to act as Trustee for any reason, STEPHEN M. PAUL shall thereafter act as the sole successor Trustee."

-3-

5.    In all other respects,  BETTY C. PAUL confirms the terms and provisions of said Trust as presently constituted.

Dated: _MARCH  23_ , 2012.

_Betty C Paul_
BETTY C. PAUL
Trustor and Trustee

STATE OF CALIFORNIA

COUNTY OF MONTEREY

On _MARCH  23_ , 2012, before me, IAN D. McPHAIL, Notary Public, personally appeared BETTY C. PAUL, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Ian McPhail_

IAN D. MCPHAIL
Commission # 1933884
Notary Public - California
Santa Cruz County
My Comm. Expires May 22, 2015

-4-

EXHIBIT 20



## AMENDMENT TO THE PAUL TRUST DATED
## MARCH 24, 1997

BETTY C. PAUL, as surviving Trustor and Trustee under the PAUL TRUST dated March 24, 1997, with THOMAS L. PAUL having died April 28, 2004, hereby amends said Trust Agreement as follows:

1.     BETTY C. PAUL revokes Amendment to the Paul Trust dated March 24, 1997, executed June 22, 2010.

2.     BETTY C. PAUL adds the following provision to the PAUL TRUST dated March 24, 1997:

"BETTY C. PAUL, who is serving as Trustee under the PAUL TRUST dated March 24, 1997, hereby authorizes herself as Trustee to execute a Special Power of Attorney to permit DAVID L. PAUL and/or STEPHEN M. PAUL to act as agent(s) with the following limited powers in regard to said PAUL TRUST:

To receive copies of any and all brokerage account statements and any other materials sent to the Trustee in regard to any said brokerage accounts, held in the Paul Trust, and to act in the name of Betty C. Paul, Trustee, in authorizing or directing the broker under said brokerage accounts to execute any purchases or sales of securities held in said accounts."

2.     In all other respects, BETTY C. PAUL confirms the terms and provisions of the PAUL TRUST dated March 24, 1997, as said Trust is presently constituted.

Dated: ___MARCH 23___, 2012.


___Betty C. Paul___
BETTY C. PAUL
Trustor and Trustee


IAN D. MCPHAIL
ATTORNEY AT LAW
APTOS & CARMEL, CALIFORNIA

STATE OF CALIFORNIA

COUNTY OF MONTEREY

On MARCH 23 , 2012, before me, IAN D. McPHAIL, Notary Public, personally appeared BETTY C. PAUL, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____

IAN D. MCPHAIL
Commission # 1933884
Notary Public - California
Santa Cruz County
My Comm. Expires May 22, 2015

-2-

# EXHIBIT 21

## AMENDMENT TO THE PAUL TRUST DATED
## MARCH 24, 1997

BETTY C. PAUL, as surviving Trustor and Trustee under the PAUL TRUST dated March 24, 1997, with THOMAS L. PAUL having died April 28, 2004, hereby amends said Trust solely so far as it affects Trust A thereof as follows:

1.  BETTY C. PAUL revokes Amendments to Paul Trust signed June 10, 2004, January 24, 2005, and February 18, 2010.

2.  BETTY C. PAUL confirms that she and her deceased husband, THOMAS L. PAUL, have two (2) living children, STEPHEN M. PAUL and SHELLY L. MOULTON. Trustors have no other children living or deceased.  BETTY C. PAUL knowingly and deliberately omits to make any provision hereunder for SHELLY L. MOULTON, daughter of the Trustors.  SHELLY L. MOULTON has one (1) child, SHERYL A. MOULTON. STEPHEN M. PAUL has two (2) children, DAVID L. PAUL and KENDRA L. PAUL.

3.  BETTY C. PAUL amends C.5.(c) through (e) of said Trust, solely so far as it affects Trust A thereof, by deleting all the provisions thereof and by substituting the following provisions therefor:

"(c) The Trustee shall distribute from Trust A residential real property in Hacienda Carmel to STEPHEN M. PAUL. If STEPHEN M. PAUL does not survive BETTY C. PAUL, said residential real property shall be added to the residue of Trust A which will be distributed immediately hereinbelow.

(d)  The Trustee shall distribute the residue of Trust A in the following proportions:

IAN D. MCPHAIL
ATTORNEY AT LAW
APTOS & CARMEL, CALIFORNIA

(i)     One-half (½) thereof to DAVID L. PAUL, grandson of BETTY C. PAUL. If DAVID does not survive BETTY, his share shall be distributed to the issue of DAVID L. PAUL who survive BETTY C. PAUL, by right of representation.

(ii)     One-quarter (1/4) thereof to SHERYL A. MOULTON, one of the granddaughters of BETTY C. PAUL. If SHERYL does not survive BETTY C. PAUL, her share shall be distributed instead to the issue of SHERYL A. MOULTON who survive BETTY C. PAUL, by right of representation.

(iii)     One-quarter (1/4) thereof to KENDRA L. PAUL, one of the granddaughters of BETTY C. PAUL. If KENDRA does not survive BETTY C. PAUL, her share shall be distributed to the issue of KENDRA L. PAUL who survive BETTY C. PAUL by right of representation.

(e)     Any differential distribution of Trust A to the grandchildren of Trustors is not intended to indicate that BETTY C. PAUL loves one of her grandchildren more or less than the others.

(f)     Notwithstanding earlier provisions of this subparagraph 5. to the contrary, the share of any beneficiary who is under age thirty-five (35) years upon the date of death of BETTY C. PAUL shall continue to be held in Trust by the Trustee and shall be administered and distributed as follows:

(1)     The Trustee shall pay to or apply for the benefit of the beneficiary as much of the net income and principal of the beneficiary's Trust, up to the whole thereof, as the Trustee, in the Trustee's reasonable discretion, may from time to time deem necessary or advisable for the beneficiary's proper support, care, maintenance, and education, after taking into consideration, to the extent the Trustee deems advisable, any income or other resources of the beneficiary, outside the beneficiary's Trust, known to the Trustee, including the beneficiary's capacity for gainful employment after completion of the beneficiary's education. Any net income not distributed shall be accumulated and added to the principal of the beneficiary's Trust.

-2-

(2)    When the beneficiary attains age thirty-five (35) years, the Trustee shall distribute to the beneficiary the then remaining balance of the beneficiary's Trust. If the beneficiary dies before attaining age thirty-five (35) years, the Trustee shall distribute the balance remaining of the beneficiary's Trust on the beneficiary's death to the issue of the beneficiary who shall survive the beneficiary, by right of representation, in absence of whom it shall be distributed in equal shares to the siblings of the beneficiary who survive the beneficiary, in absence of whom it shall be distributed to the issue of the Trustors then surviving, by right of representation; provided, however, that if a Trust is then being administered for a said beneficiary under earlier provisions of this Trust Agreement, the share of that beneficiary shall be added to that beneficiary's Trust and administered as a part thereof.

(3)    Whenever provision is made in this Paragraph for payment for the "education" of a beneficiary, the term "education" shall be construed to include a technical or vocational school, college or university, and postgraduate study, so long as pursued to advantage by the beneficiary, at an institution of the beneficiary's choice; and, in determining payments to be made for such education, the Trustee shall take into consideration the beneficiary's related living expenses to the extent that they are reasonable."

4.    BETTY C. PAUL amends F.1., solely so far as it affects Trust A thereof, by deleting all the provisions thereof and by substituting the following provisions therefore:

"F.    PROVISIONS RELATING TO TRUSTEE

1.    Should BETTY C. PAUL cease to act as the Trustee, because of her resignation, death, disability or otherwise, STEPHEN M. PAUL and SHERYL A. MOULTON shall thereafter act as successor co-Trustees. Should one of them for any reason be unable to act or refuse to act as such, or having accepted said appointment, later cease to act as co-Trustee for any reason, the other co-Trustee shall thereafter serve as the sole successor Trustee."

-3-

5.   In all other respects, BETTY C. PAUL confirms the terms and provisions of said Trust as presently constituted.

Dated: ~~FEB . 10~~ , 2013.

_Betty C. Paul_
BETTY   C.   PAUL
Trustor and Trustee

STATE OF CALIFORNIA

COUNTY OF MONTEREY

On ~~FEB . 10~~ , 2013, before me, IAN D. McPHAIL, Notary Public, personally appeared BETTY C. PAUL, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

IAN D. MCPHAIL
Commission # 1933884
Notary Public - California
Santa Cruz County
My Comm. Expires May 22, 2015

-4-

IAN D. McPHAIL
ATTORNEY AT LAW
APTOS & CARMEL, CALIFORNIA

EXHIBIT 22

2-10-13

## AMENDMENT TO THE PAUL TRUST DATED
## MARCH 24, 1997

BETTY C. PAUL, as surviving Trustor and Trustee under the PAUL TRUST dated March 24, 1997, with THOMAS L. PAUL having died April 28, 2004, hereby amends said Trust Agreement as follows:

1.    BETTY C. PAUL revokes Amendment to the Paul Trust dated March 24, 1997, executed June 22, 2010.

2.    BETTY C. PAUL adds the following provision to the PAUL TRUST dated March 24, 1997:

"BETTY C. PAUL, who is serving as Trustee under the PAUL TRUST dated March 24, 1997, hereby authorizes herself as Trustee to execute a Special Power of Attorney to permit STEPHEN M. PAUL and/or SHERYL A. MOULTON to act as agent(s) with the following limited powers in regard to said PAUL TRUST:

To receive copies of any and all brokerage account statements and any other materials sent to the Trustee in regard to any said brokerage accounts, held in the Paul Trust, and to act in the name of Betty C. Paul, Trustee, in authorizing or directing the broker under said brokerage accounts to execute any purchases or sales of securities held in said accounts."

2.    In all other respects, BETTY C. PAUL confirms the terms and provisions of the PAUL TRUST dated March 24, 1997, as said Trust is presently constituted.

Dated: FEB - 10 , 2013.

_Betty C Paul_
BETTY C. PAUL
Trustor and Trustee

IAN D. McPHAIL
ATTORNEY AT LAW
APTOS & CARMEL, CALIFORNIA

STATE OF CALIFORNIA

COUNTY OF MONTEREY

On _____FEB 10_____, 2013, before me, IAN D. McPHAIL, Notary Public, personally appeared BETTY C. PAUL, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____

IAN D. MCPHAIL
Commission # 1933884
Notary Public - California
Santa Cruz County
My Comm. Expires May 22, 2015

# EXHIBIT 23

**AMENDMENT TO THE
PAUL TRUST DATED MARCH 24, 1997**

BETTY C. PAUL as surviving Trustor hereby amends the PAUL TRUST dated March 24, 1997 as previously amended by the Amendments thereto on March 23, 2012 and February 10, 2013 (the "Trust") and accept this Amendment as Trustee as follows:

FIRST: PARAGRAPH F.1 of the Trust is hereby deleted in its entirety and the following substituted in its place:

"1. Should BETTY C. PAUL cease to act as the Trustee, because of her resignation, death, disability or otherwise, LIZA HORVATH and SHERYL MOULTON shall thereafter act as successor co-Trustees. Should one of them for any reason be unable to act or refuse to act as such, or having accepted said appointment, later cease to act as co-Trustee for any reason, the other co-Trustee shall thereafter serve as the sole successor Trustee"

SECOND: Except as amended above, the PAUL TRUST dated March 24, 1997 (as amended) shall remain in full force and effect, including, but not limited to, the right to further amend said Trust.

IN WITNESS WHEREOF, the Trustor and Trustee have executed this Amendment on the ~~March 29~~ day of _____, 2019.

Trustor and Trustee

_Betty C. Paul_
BETTY C PAUL
aka BETTY PAUL  BCP
Betty Paul

1

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California    )
                   ) ss
County of Monterey   )

On _5/22/2019_ before me, _KATHRYN BAUMANN_, notary public
personally appeared **BETTY PAUL**, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

KATHRYN BAUMANN
Notary Public - California
Monterey County
Commission # 2167959
My Comm. Expires Nov 11, 2020

Signature _Kathryn Baumann_

# EXHIBIT 24

**AMENDMENT DATED FEBRUARY 6, 2020 TO THE**

**PAUL TRUST DATED MARCH 24, 1997**

BETTY J. PAUL (aka BETTY C. PAUL) as surviving Trustor and Trustee under the PAUL TRUST dated March 24, 1997 (the "Trust"), with THOMAS L. PAUL having died April 28, 2004 and the trust estate having been divided into Trust A (the surviving spouse's revocable trust) and Trust B (irrevocable trust holding deceased spouse's estate), hereby affirms that any and all previous Trust Amendments are revoked, including but not limited to the Trust Amendments dated June 10, 2004, January 24, 2005, February 18, 2010, June 22, 2010, March 23, 2012 (two Amendments), February 10, 2013 (two Amendments), and March 29, 2019, and as Trustor amends this Trust and as Trustee accepts this Amendment dated hereunder as follows:

1.  BETTY C. PAUL reaffirms that she and her deceased husband, THOMAS L. PAUL, have two (2) living children, STEPHEN M. PAUL and SHELLY L. MOULTON (aka SKYE ROSE MOULTON). Trustors have no other children living or deceased. SHELLY L. MOULTON has one (1) living child, SHERYL A. MOULTON and one (1) deceased child, MERRY JENNIFER MOULTON, leaving no issue. STEPHEN M. PAUL has two (2) children, DAVID L. PAUL and KENDRA RAMONDO (aka KENDRA L. PAUL). BETTY C. PAUL's two children, STEPHEN M. PAUL and SHELLY L. MOULTON, are intentionally omitted as beneficiaries of Trustor BETTY C. PAUL's trust estate (Trust A) hereunder.

2.  The Trust's PARAGRAPH C.5(c) through PARAGRAPH C.5(e) regarding BETTY C. PAUL's TRUST A (survivor's trust) are hereby deleted in their entirety and the following Trust's PARAGRAPH C.5(c) through PARAGRAPH C.5(g) are substituted in their place:

"(c)   Residue of Trust Estate.   All assets in BETTY C. PAUL's TRUST A (survivor's trust) shall be treated as trust residue. The residue of Trustor's Trust A after payment of all the expenses and taxes as provided PARAGRAPH C.5(a) above shall be divided and distributed in equal shares as follows:

(1)   One (1) share thereof to be distributed to Trustor's grandchild DAVID L. PAUL if he survives Trustor. If DAVID L. PAUL fails to so survive Trustor, this gift shall be distributed to his issue in equal shares by right of representation, or if not then living, this gift shall lapse. Each share for a then-living issue of grandchild DAVID L. PAUL shall be distributed free of trust to such issue provided such has then attained age 25, otherwise the trustee shall continue to hold, administer, and distribute that issue's share in a separate trust for that issue according to the terms set forth in PARAGRAPH C.5(c)(f) below applicable to a separate share trust for issue.

(2)   One (1) share thereof to be distributed to Trustor's grandchild SHERYL A. MOULTON if she survives Trustor. If SHERYL A. MOULTON fails to so survive Trustor, this gift shall lapse.

(3)   If none of SHERYL A. MOULTON, DAVID L. PAUL, or DAVID L. PAUL's issue so survive Trustor, Trustor's remaining trust estate (Trust A)

1

shall be distributed to Trustor's grandchild KENDRA RAMONDO if then living. If KENDRA RAMONDO fails to so survive Trustor, this gift shall be distributed to her by right of representation, or if not then living, this gift shall lapse. Each share for a then-living issue of KENDRA RAMONDO shall be distributed free of trust to such issue provided such has then attained age twenty give (25), otherwise the trustee shall continue to hold, administer, and distribute that issue's share in a separate trust for that issue according to the terms set forth in PARAGRAPH C.5(f) below applicable to a separate-share trust for issue.

        (d)    Trustor BETTY C. PAUL's two children, STEPHEN M. PAUL and SHELLY L. MOULTON, are intentionally omitted as beneficiaries of Trustor BETTY C. PAUL's trust estate (Trust A) hereunder.

        (e)    <u>Disabled Child: Special Needs Trust Provisions</u>. In the event that the issue ("beneficiary") is receiving SSI benefits, Medi-Cal, or any other need-based government disability benefits that would be adversely affected by an outright distribution of that beneficiary's share, the trustee may elect to establish for that beneficiary a special needs trust to receive and administer that beneficiary's share of the trust estate. Such special needs trust shall have the same remainder distribution provisions as set forth herein in the event of the death of that disabled child.

        (f)    <u>Preventing Outright Distribution to Young Beneficiary</u>. Each trust share created for any beneficiary hereunder who has not then attained age 25 shall immediately vest in such issue ("beneficiary") but shall be held as a separate trust and disposed of as follows:

        (i)    <u>Payment of Net Income To Beneficiary</u>. Until the beneficiary attains age 25, the trustee shall distribute to the beneficiary so much of the net income from the beneficiary's share as the trustee deems reasonable for the beneficiary's health, education, support and maintenance and shall add to principal at annual intervals any net income not so distributed. Upon the beneficiary attaining age 25, the net income from the beneficiary's share shall be distributed to or for the beneficiary in convenient installments, at least quarterly to the beneficiary.

        (ii)    <u>Discretionary Payment of Principal to Beneficiary</u>. The trustee may also pay to the beneficiary such sums from the principal of his or her share as the trustee deems reasonable or advisable from time to time for his or her health, education, support and maintenance.

        (iii)    <u>Beneficiary's Rights of Withdrawal</u>. The beneficiary may withdraw any part or all of the principal of his or her trust share after attaining age 25 by written request therefor delivered to the trustee.

        (iv)    <u>Distribution of Beneficiary's Share After Beneficiary's Death Before Complete Distribution</u>. Except as otherwise expressly provided herein, if a beneficiary dies before receiving complete distribution of trust share, the remaining balance of such beneficiary trust share shall be distributed to the beneficiary's issues by right of representation, or if none then to Trustor's other then living issue by right of representation, or if none, as provided in PARAGRAPH C.5(g) below. Any part of such remaining trust share that would otherwise be distributed to a person for whose benefit a trust is then being administered under this instrument

2

shall be added instead to any other trust share hereunder for said beneficiary and administered according to its terms. Any additions to a partially distributed trust shall augment proportionally the distributed and undistributed portions of the trust.

        (g)   <u>Distribution of Remainder If No Named Beneficiary</u>. If at any time before full distribution of the trust estate of the Trustor, all of Trustor's issue are deceased and no other disposition of the Trustor's trust estate is directed by this instrument, the remaining portion of such Trustor's trust estate shall then be distributed to the persons who would be legal heirs of Trustor, the identity and respective shares of those heirs to be determined in all respects as though the death of Trustor had occurred as of the event requiring distribution, and shall be determined according to the laws of succession of the State of California then in force relating to separate property not acquired from a parent, grandparent, or previously deceased spouse."

     3.    PARAGRAPH D.2 of the Trust is hereby deleted in its entirety and the following substituted in its place:

        "2.    Power to invest in or retain any securities or other property, real or personal (within or without the United States), including by way of illustration, but not limitation: any security as defined by the Securities Act of 1933 or other applicable law, any contract of sale of a commodity for future delivery within the meaning of the Commodity Exchange Act, shares or interests in any private investment fund, private equity or venture capital fund, hedge fund, common trust fund, joint venture, general or limited partnership, limited liability company, statutory or common law business trust, statutory trust, real estate investment trust or an open-end (including any mutual fund) or closed-end management type investment company or unit investment trust, whether registered under the Investment Company Act of 1940 or unregistered, any money market instrument, bank deposit account (including but not limited to savings, time, certificate of deposit and transaction accounts), precious metal, foreign exchange, structured product, insurance contract, options, options on futures and variable forward contracts, swaps, caps, collars and other derivative instruments of a financial nature, notwithstanding the fact that the Trustee, investment manager or custodian, its respective parent or any affiliate, is an issuer of such investment or provides services (whether as manager, underwriter, distributor, custodian, advisor, agent, servicer, Trustee or otherwise) with respect to any such investment and further notwithstanding that the Trustee, investment manager, custodian or its respective parent or any affiliate may receive compensation with respect to any such investment (in addition to Trustee's commissions), so long as the total compensation received is reasonable. To the extent permitted by applicable law, this provision is intended to override any contrary provision of law prohibiting such additional fees or otherwise requiring either a reduction in Trustee's commissions or an election between such additional fees and such commissions. Any diversification requirement that would otherwise apply, including one imposed by a Prudent Investor Act or similar applicable law, is negated."

4.    PARAGRAPH F.1 of the Trust is hereby deleted in its entirety and the following substituted in its place:

"1.    Should BETTY C. PAUL cease to act as the Trustee, because of her resignation, death, disability or otherwise, BANK OF AMERICA, N.A. shall thereafter act as successor Trustee. Should for any reason BANK OF AMERICA, N.A. be unable to act or refuse to act as such, or having accepted said appointment, later cease to act as Trustee for any reason, BANK OF AMERICA, N.A. may appoint by written instrument a corporate or professional trustee as its respective successor in trusteeship. If no one is acting as such Trustee, a majority of the then beneficiaries may appoint one or more corporate or professional trustees to act as successor trustee(s) hereunder."

5.    PARAGRAPH F.3 of the Trust is hereby deleted in its entirety and the following substituted in its place:

"3.    Accounting by Trustee. During the Trustor's lifetime, the Trustee shall account only to the Trustor and Trustor's written approval shall be final and conclusive for transactions disclosed in the account concerning all beneficiaries of the Trust, including unborn, un-ascertained, and contingent beneficiaries. After the death of Trustor the Trustee shall render an accounting, from time to time but not less frequently than every one (1) year after any prior accounting, regarding the transactions of any trust created in this instrument, unless a more frequent accounting is required by applicable law. Accountings shall also be rendered by any Trustee or the Trustee's representative within 60 days after such Trustee's resignation, death, disability, or removal by a court of competent jurisdiction. The Trustee shall pay the costs and expenses of such action, including the compensation and expenses of accountants, attorneys, and guardians, from the principal or income, or both, of the trust as the Trustee(s) determine(s).

(a)    Accountings shall be made by delivering a written accounting to each beneficiary entitled to current income distribution, or if there are no current income beneficiaries, to each beneficiary entitled to current distribution from income or principal in the Trustee's discretion. If any person entitled to receive an accounting is a minor or is disabled, the accounting shall be delivered to the parents or guardian of his or her person if a minor, or to the guardian or conservator of his or her person if disabled.

(b)    Unless any beneficiary, including parents, guardians, or conservators of beneficiaries, shall deliver a written objection to the Trustee within one hundred eighty (180) days after receipt of the Trustee's account, the account shall be final and conclusive for transactions disclosed in the account concerning all beneficiaries of the trust, including unborn, un-ascertained, and contingent beneficiaries.

(c)    After settlement of the account by agreement of the parties objecting to it or by expiration of the one hundred eighty (180) day period, the Trustee shall no longer be liable to any beneficiary of the trust, including unborn, un-ascertained, and contingent beneficiaries, for transactions disclosed in the account, except for the Trustee's intentional wrongdoing or fraud."

4

6.      PARAGRAPH F.5 regarding Trustee compensation is hereby added to the Trust as follows:

"5.      Bank of America, N.A. shall be entitled to receive compensation for its services in any fiduciary capacity in accordance with its schedule of rates, published from time to time and in effect at the time the compensation is paid, including minimum fees, and additional compensation for special investments, closely-held business interests and certain other services. The Trustor intends this trust provision be for specific rates or amounts of commissions within the meaning of any applicable state statute requiring such a provision. The Grantor recognizes that such compensation may exceed the compensation for such services in effect from time to time under applicable law."

7.      PARAGRAPH G.9 of PAUL's TRUST dated March 24, 1997 is hereby affirmed in this Amendment as follows:

"9.      Trustors have purposely made no provision in this Trust Agreement for any other person, whether claiming to be an heir of Trustors or not, and if any person whether a beneficiary under this Trust Agreement or not mentioned herein shall contest this Trust Agreement or object to any of the provisions hereof, such person so contesting or so objecting shall be given the sum of ONE DOLLAR ($1.00) and no more, in lieu of the provisions which Trustors have made, or which Trustors might have made, herein for such person so contesting or so objecting."

8.      Except as amended above, the PAUL TRUST dated March 24, 1997 (as amended) shall remain in full force and effect, including, but not limited to, the right to further amend said Trust.

IN WITNESS WHEREOF, the Trustor and Trustee have executed this Amendment on _____, 2020.

Trustor and Trustee

_____
BETTY J. PAUL (aka BETTY C. PAUL), Trustor and Trustee of THE PAUL TRUST dated March 24, 1997

5

On the date written below, BETTY J. PAUL (aka BETTY C. PAUL), declared to us, the undersigned, that this instrument, consisting of four (4) pages, including the page signed by us as witnesses, was her Amendment dated February 6, 2020 to the PAUL TRUST dated March 24, 1997 (as amended) and requested us to act as witnesses to it. She thereupon signed this Amendment in our presence, all of us being present at the same time. We now, at her request, in her presence, and in the presence of each other, subscribe our names as witnesses.

We believe that BETTY J. PAUL (aka BETTY C. PAUL) is over age 18, of sound mind, and are under no constraint or undue influence.

Executed on _____, at Carmel, California.

We declare under penalty of perjury that the foregoing is true and correct.

_____ residing at _____, California

_____ residing at _____, California

6

## ACKNOWLEDGMENT

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California    )
                         ) ss
County of Monterey  )


On _____ before me, _____, notary public personally appeared **BETTY J. PAUL,** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature_____

EXHIBIT 25

Sheryl A. Moulton
3141 Stevens Creek Blvd. #40083
San Jose, CA 95117
(408) 475-0233
tpftemail1@gmail.com

April 16, 2021

TO:    All beneficiaries, Heirs, Contingent Beneficiaries of the following trust documents:
THOMAS L. PAUL and BETTY C. PAUL REVOCABLE LIVING TRUST (Dated February 20, 1973)
DECLARATION OF TRUST dated March 24, 1997
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated June 10, 2004)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated January 24, 2005)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated February 18, 2010)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated June 22, 2010)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated March 23, 2012)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated March 23, 2012)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated February 10, 2013)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated February 10, 2013)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated March 29, 2019)

### NOTIFICATION BY TRUSTEE

Dear Beneficiary/Heir/Contingent Beneficiary/Interested Party:

This letter is made to provide you with notification by trustee of Trust A (revocable trust).

THOMAS L. PAUL AND BETTY C. PAUL executed the THOMAS L. PAUL AND BETTY C. PAUL
REVOCABLE LIVING TRUST (dated February 20, 1973) in their capacities as
Trustors/Trustees.

BETTY C. PAUL later executed the DECLARATION OF TRUST DATED MARCH 24, 1997 in her
capacity as Trustor/Trustee on March 24, 1997. Said Trust Agreement became irrevocable as
of the date of death of THOMAS L. PAUL April 28, 2004.  which was later amended June 10,
2004, January 24, 2005, February 18, 2010, June 22,2010, March 23, 2012, February 10, 2013,
March 29, 2019.

1. The name, mailing address and telephone number of the trustee of the trust is set forth
below:

Sheryl A. Moulton
3141 Stevens Creek Blvd #40083
San Jose, CA 95117
(831) 224-9169
tpftemail1@gmail.com

2. The address of the principal place of trust administration pursuant to Probate Code § 17002 is set forth below:

> Sheryl A. Moulton
> c/o Betty C. Paul
> 209 Hacienda Carmel
> Carmel, CA 93923

3. You are entitled to receive from the trustee a true and complete copy of the terms of the trust by requesting same from the trustee listed above.

4. You are entitled, as possible beneficiary, heir, or contingent beneficiary, to request from the trustee a true and complete copy of the "Terms of the Trust" as that term is defined in the Probated Code § 16060.5. However, in your case, the Trustee has elected to enclose with this Notification a true and complete copy of the following trust documents:

THOMAS L. PAUL AND BETTY C. PAUL REVOCABLE LIVING TRUST (Dated February 20, 1973)
DECLARATION OF TRUST DATED MARCH 24, 1997
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated June 10, 2004)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated January 24, 2005)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated February 18, 2010)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated June 22, 2010)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated March 23, 2012)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated March 23, 2012)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated February 10, 2013)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated February 10, 2013)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated March 29, 2019)

**WARNING: YOU MAY NOT BRING AN ACTION TO CONTEST THE TRUST MORE THAN 120 DAYS FROM THE DATE THIS NOTIFICATION BY THE TRUSTEE IS SERVED UPON YOU OR 60 DAYS FROM THE DAY ON WHICH A COPY OF THE TERMS OF THE TRUST IS MAILED OR PERSONALLY DELIVERED TO YOU DURING THAT 120-DAY PERIOD, WHICHEVER IS LATER.**

Dated: April 14, 2021

Sheryl A. Moulton, Trustee of
THOMAS L. PAUL AND BETTY C. PAUL
REVOCABLE LIVING TRUST (Dated
February 20, 1973), DECLARATION OF
TRUST DATED MARCH 24, 1997

Sheryl A. Moulton
3141 Stevens Creek Blvd. #40083
San Jose, CA 95117
(408) 475-0233
tpftemail1@gmail.com

April 16, 2021

TO:    All beneficiaries, Heirs, Contingent Beneficiaries of the following trust documents:
THOMAS L. PAUL and BETTY C. PAUL REVOCABLE LIVING TRUST (Dated February 20, 1973)
DECLARATION OF TRUST dated March 24, 1997
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated June 10, 2004)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated January 24, 2005)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated February 18, 2010)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated June 22, 2010)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated March 23, 2012)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated March 23, 2012)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated February 10, 2013)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated February 10, 2013)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated March 29, 2019)

### NOTIFICATION BY TRUSTEE PURSUANT
### TO PROBATE CODE §16061.7

Dear Beneficiary/Heir/Contingent Beneficiary/Interested Party:

This letter is made pursuant to Section 16061.7 of the California Probate Code and is to
provide you with notification by trustee of Trust B (irrevocable trust).

Pursuant to California Probate Code § 16061.7:

(a) A trustee shall serve a notification by the trustee as described in this section in the
following events:
(1) When a revocable trust or any portion thereof becomes irrevocable because of the
death of one or more of the settlors of the trust, or because, by the express terms of the
trust, the trust becomes irrevocable within one year of the death of a settlor because of
a contingency related to the death of one or more of the settlors of the trust.
(2) Whenever there is a change of trustee of an irrevocable trust.

THOMAS L. PAUL AND BETTY C. PAUL executed the THOMAS L. PAUL AND BETTY C. PAUL REVOCABLE LIVING TRUST (dated February 20, 1973) in their capacities as Trustors/Trustees.

BETTY C. PAUL later executed the DECLARATION OF TRUST DATED MARCH 24, 1997 in her capacity as Trustor/Trustee on March 24, 1997. Said Trust Agreement became irrevocable as of the date of death of THOMAS L. PAUL April 28, 2004.  which was later amended June 10, 2004, January 24, 2005, February 18, 2010, June 22,2010, March 23, 2012, February 10, 2013, March 29, 2019.

1. The name, mailing address and telephone number of the trustee of the trust is set forth below:

> Sheryl A. Moulton
> 3141 Stevens Creek Blvd #40083
> San Jose, CA 95117
> (831) 224-9169
> tpftemail1@gmail.com

2. The address of the principal place of trust administration pursuant to Probate Code § 17002 is set forth below:

> Sheryl A. Moulton
> c/o Betty C. Paul
> 209 Hacienda Carmel
> Carmel, CA 93923

3. You are entitled to receive from the trustee a true and complete copy of the terms of the trust by requesting same from the trustee listed above.

4. You are entitled, as possible beneficiary, heir, or contingent beneficiary, to request from the trustee a true and complete copy of the "Terms of the Trust" as that term is defined in the Probated Code § 16060.5. However, in your case, the Trustee has elected to enclose with this Notification a true and complete copy of the following trust documents:

THOMAS L. PAUL AND BETTY C. PAUL REVOCABLE LIVING TRUST (Dated February 20, 1973)
DECLARATION OF TRUST DATED MARCH 24, 1997
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated June 10, 2004)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated January 24, 2005)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated February 18, 2010)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated June 22, 2010)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated March 23, 2012)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated March 23, 2012)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated February 10, 2013)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated February 10, 2013)
AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated March 29, 2019)

**WARNING: YOU MAY NOT BRING AN ACTION TO CONTEST THE TRUST MORE THAN 120 DAYS FROM THE DATE THIS NOTIFICATION BY THE TRUSTEE IS SERVED UPON YOU OR 60 DAYS FROM THE DAY ON WHICH A COPY OF THE TERMS OF THE TRUST IS MAILED OR PERSONALLY DELIVERED TO YOU DURING THAT 120-DAY PERIOD, WHICHEVER IS LATER.**

Dated: April 16, 2021

Sheryl A. Moulton, Trustee of
THOMAS L. PAUL AND BETTY C. PAUL
REVOCABLE LIVING TRUST (Dated
February 20, 1973), DECLARATION OF
TRUST DATED MARCH 24, 1997

## PROOF OF SERVICE BY MAIL

I declare that I am employed in the County of _Monterey_, California. I am over the age over the age of eighteen (18) years and not a party to the within action. My business address is: _199 17th Street, Ste. C, Pacific Grove, CA 93950_

On the 16th day of April 2021, I served the following documents:

**NOTIFICATION BY TRUSTEE**
**NOTIFICATION BY TRUSTEE PURSUANT TO PROBATE CODE §16061.7**
**THOMAS L. PAUL AND BETTY C. PAUL REVOCABLE LIVING TRUST (Dated February 20, 1973) DECLARATION OF TRUST DATED MARCH 24, 1997**
**AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated June 10, 2004)**
**AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated January 24, 2005)**
**AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated February 18, 2010)**
**AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated June 22, 2010)**
**AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated March 23, 2012)**
**AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated March 23, 2012)**
**AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated February 10, 2013)**
**AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated February 10, 2013)**
**AMENDMENT TO THE PAUL TRUST DATED MARCH 24, 1997 (Dated March 29, 2019)**

On each of the interested parties noticed below, by placing a true copy thereof, in the United States Mail, in a sealed envelope with postage fully paid. The enveloped were addressed as follows:

Betty C. Paul
P.O. Box 221461
Carmel, CA 93922

David L. Paul
135 Twinberry Cir.
Reno, NV 89511

Stephen M. Paul
15276 Castroville Blvd.
Castroville, CA 95012

Stephen T. Paul
c/o David L. Paul
135 Twinberry Cir.
Reno, NV 89511

Skye Rose Beach Moulton
(a/k/a Shelley L. Moulton,
Shelly L. Moulton (sic))
238 San Benancio Cyn. Rd.
Salinas, CA 93908

Kendra L. Ramondo
(a/k/a Kendra L. Paul)
1060 Del Cambre Dr.
San Jose, CA 95129

Merry Jennifer Moulton (deceased)
c/o Skye Rose Beach Moulton
c/o John Moulton
238 San Benancio Cyn. Rd.
Salinas, CA 93908

Richard Ramondo (Jr.)
c/o Kendra L. Ramondo
c/o Richard Ramondo
1060 Del Cambre Dr.
San Jose, CA 95129

Henry Ramondo
c/o Kendra L. Ramondo
c/o Richard Ramondo
1060 Del Cambre Dr.
San Jose, CA 95129

Penelope Ramondo
c/o Kendra L. Ramondo
c/o Richard Ramondo
1060 Del Cambre Dr.
San Jose, CA 95129

Lisa Horvath
Monterey Trust Management
Private Client Services
400 Camino El Estero
Monterey, CA 93940

Heather Urbanovsky, CTFA
Assistant Vice President
Trust Administrative Officer II
Bank of America
1152 15th Street, NW, Suite 6000
Washington, DC 20005

Served by Laurie Urquidi
PO Box 1568
Seaside, CA 93955
831-383-2344
Monterey Co. Reg. No. RPS.127
EXP 11/25/2021

Served By: **LAURIE L. URQUIDI**
Address: **PO BOX 1568**
City: **SEASIDE**   State: **CA**  Zip Code: **93955**
Phone: **831-383-2344**
Registered Process Server County: **MONTEREY**   Registration Number: **127**

**Laurie L. Urquidi**
Print Name:

Signature of RPS:

**04/16/2021**
Date:

# EXHIBIT 26

*11-20-95*
*Revoked*

# WILL
## OF
### BETTY C. PAUL

I, BETTY C. PAUL, a resident of Monterey County, California, hereby make and declare this to be my last Will and revoke all Wills and Codicils previously made by me.

FIRST:    I am married to THOMAS L. PAUL and all references in this Will to "my spouse" are to him.  We have two (2) children, namely STEPHEN M. PAUL and SHELLEY L. MOULTON.  I make no provision in this Will for my daughter, SHELLEY L. MOULTON.  I have three (3) grandchildren, namely SHERYL A. MOULTON, DAVID L. PAUL and KENDRA L. PAUL.

SECOND:    It is my intention to dispose of all real and personal property of which I have a right to dispose by Will.

THIRD:    I give my estate as follows:

A.    I give my automobile to my son, STEPHEN M. PAUL.  I give my jewelry, clothing, household furniture, furnishings, silver, chinaware, books, pictures, paintings, works of art and other tangible articles of a personal nature, or my interest in such property, not otherwise specifically disposed of by this Will or in any other manner, together with any insurance on the property, in equal shares to my son, STEPHEN M. PAUL and my granddaughter, SHERYL A. MOULTON.  If STEPHEN does not survive me, his share shall be distributed equally to his children.  If SHERYL does not survive me, her share shall be distributed equally to her children, in absence of whom it shall be added to STEPHEN's share.

B.    I give my residential real property at Hacienda Carmel in equal shares to STEPHEN M. PAUL and SHERYL A. MOULTON.

C.    I give one hundred (100) shares Quail Lodge, Inc. to SHERYL A. MOULTON and the rest of my shares in Quail Lodge, Inc. to STEPHEN M. PAUL.

IAN D. McPHAIL
A PROFESSIONAL CORPORATION
ATTORNEY AT LAW
VILLA CARMEL, SUITE 4
MISSION AT FOURTH
P. O. BOX 2734
CARMEL, CALIFORNIA 93921
TELEPHONE (408) 625-4135

D.   I give my entire interests in any and all limited partnerships to STEPHEN M. PAUL. If my spouse does not survive me, I also give thirty-two thousand dollars ($32,000.00) to STEPHEN M. PAUL.

E.   If my spouse does not survive me, I give thirty thousand dollars ($30,000.00) to SHERYL A. MOULTON.

F.   If my spouse survives me, the residue of my estate shall be distributed to my Trustees named hereinbelow, in Trust, and the Trustees shall pay to or apply for the benefit of my spouse, THOMAS L. PAUL, so much of the income thereof as the Trustees shall deem necessary for his support and general welfare, after taking into consideration his other income and resources, known to the Trustee.  Any income not distributed to or for the benefit of my spouse in a calendar year shall be distributed in equal shares to STEPHEN M. PAUL, SHERYL A. MOULTON, DAVID L. PAUL and KENDRA L. PAUL.  However, I create this Trust primarily for the benefit of my spouse, to the extent that he needs the income, and the interests of the other beneficiaries named hereinabove shall be subordinate to his.   Upon the death of my spouse, the then remaining balance of the trust estate shall be distributed in equal shares to my three (3) grandchildren, per capita, or to those of them or to the one of them who survive my spouse.

G.   If my spouse does not survive me, I give the residue of my estate in equal shares to my three (3) grandchildren, per capita, or to those of them or to the one of them who survive me.

H.   If STEPHEN M. PAUL does not survive me, his share of my estate shall be distributed to his issue who survive me, by right of representation.  If SHERYL A. MOULTON does not survive me, her share of my estate shall be distributed to her issue who survive me, by right of representation, or, if she does not leave issue surviving me, her share shall be added to the share of STEPHEN M. PAUL.

I.   In regard to Third C., E., F. (from the death of the second to die of my spouse and me), G. and H., and in spite of provisions in said subparagraphs for distribution to the

- 2 -

beneficiaries thereof outright, the share of any beneficiary thereof who is under age thirty (30) upon the date of my death or upon the date of death of my surviving spouse, if my spouse survives me, shall be given to the Trustee named below and shall be administered and distributed as follows:

     1.   The Trustee shall pay to, or apply for the benefit of, the beneficiary as much of the net income and principal of the beneficiary's Trust, up to the whole thereof, as the Trustee, in the Trustee's reasonable discretion, may from time to time deem necessary or advisable for the beneficiary's proper support, care, maintenance, and education after taking into consideration, to the extent the Trustee deems advisable, any income or other resources of the beneficiary, outside the beneficiary's Trust, known to the Trustee including the capacity for gainful employment after completion of the beneficiary's education. Any net income not distributed shall be accumulated and added to the principal of the beneficiary's Trust.

     2.   When the beneficiary attains age thirty (30), the Trustee shall distribute to the beneficiary the then remaining balance of the beneficiary's Trust. If the beneficiary dies before attaining age thirty (30), the Trustee shall distribute the balance remaining of the beneficiary's Trust on the beneficiary's death to the issue of the beneficiary who shall survive the beneficiary, by right of representation, in absence of whom it shall be distributed in equal shares to the siblings of the beneficiary who survive the beneficiary, in absence of whom it shall be distributed to the issue of Trustors then surviving, by right of representation; provided, however, that if a Trust is then being administered for a said beneficiary under earlier provisions of this Will, the share of that beneficiary shall be added to that beneficiary's Trust and administered as a part thereof.

     3.   The Trustee shall have the power, with respect to the property of the Trust or any part thereof, and upon such terms and in such manner as the Trustee may deem advisable, to sell, convey, exchange, convert, improve, repair, manage, operate,

- 3 -

and control; to lease for terms within or beyond the term of this Trust and for any purpose; to borrow money for any Trust purposes, and to encumber or hypothecate by mortgage, deed of trust, pledge or otherwise; to carry insurance of such kinds and in such amounts as the Trustee may deem advisable, at the expense of the Trust; to compromise or otherwise adjust any claims against or in favor of the Trust; to invest and reinvest the Trust funds in such property as the Trustee may deem advisable, whether or not of the character permitted by law for the investment of Trust funds; and with respect to securities held in the Trust, to vote, give proxies, and pay assessments or other charges, to participate in foreclosures, reorganizations, consolidations, mergers, and liquidations, and incident thereto, to deposit securities with and transfer title to any protective or other committee upon such terms as the Trustee may deem advisable, and to exercise or sell stock, subscription, or conversion rights; and the Trustee shall have such additional powers as may now or hereafter be conferred upon the Trustee by law, or as may be necessary to enable the Trustee to administer this Trust in accordance with the provisions of this Will, subject to any limitations thereof that may be provided for herein.

4.    The Trustee is authorized to buy, sell, and trade in securities of any nature, including option contracts and short sales for cash or on margin, and for such purpose may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by him with such brokers as security for loans and advances made to the Trustee.

5.    The Trustee is authorized to retain in the Trust, for such time as the Trustee may deem advisable, any property received by the Trustee under the terms of this Will, whether or not of the character permitted by law for the investment of Trust funds, and to continue and operate any business which the Trustee may receive hereunder, so long as, in the Trustee's discretion, the Trustee may deem it advisable to do so.

6.    The Trustee may hold securities or other property in this Trust in the Trustee's name as Trustee, in the

- 4 -

name of the Trustee's nominee, or the Trustee may hold such securities unregistered in such condition that ownership will pass by delivery.   If the Trustee is a bank, the Trustee may hold securities or other property in this Trust in the Trustee's own name.

7.   No interest in the principal or income of the Trust created under this Will shall be anticipated, assigned, or encumbered, or subject to any creditor's claim, or to legal process prior to its actual receipt by the beneficiary.

8.   The Trustee shall be entitled to compensation in an amount equal to Trustee's fees typically charged in the State of California from time to time by professional Trustees of living trusts (whether or not the Trustee is a professional Trustee).  Any person interested from time to time in the Trust or Trusts created in this Will shall have the right to challenge said fees and to have them reviewed and determined by the appropriate Court.   The Trustee(s) shall render an accounting to all adult beneficiaries and the Guardians or other personal representatives of all minor beneficiaries of the Trust(s) at least annually.

9.   The Trustee, in the Trustee's discretion, may make payments to a minor or other beneficiary under disability by making payments to the Guardian of his or her person, or to any suitable person with whom he or she resides, or the Trustee may apply payments directly for the beneficiary's benefit. The Trustee, in the Trustee's discretion, may make payments directly to a minor if, in the Trustee's judgment, he or she is of sufficient age and maturity to spend the money properly.

10.   In any case in which the Trustee is required, pursuant to the provisions of the Trust, to divide any Trust property into parts or shares for the purpose of distribution, or otherwise, the Trustee is authorized, in the Trustee's absolute discretion, to make the division and distribution in kind, including undivided interests in any property, or partly in kind and partly in money, and for this purpose to make such sales of the

- 5 -

Trust property as the Trustee may deem necessary on such terms and conditions as the Trustee shall see fit.

      11.  Whenever provision is made in this Paragraph for payment for the "education" of a beneficiary, the term "education" shall be construed to include a technical or vocational school, college, and postgraduate study, so long as pursued to advantage by the beneficiary, at an institution of the beneficiary's choice; and, in determining payments to be made for such education, the Trustee shall take into consideration the beneficiary's related living expenses to the extent that they are reasonable.

      12.  Unless sooner terminated in accordance with other provisions of this Trust Agreement, each Trust created under this Agreement shall terminate twenty-one (21) years after the death of the last survivor of the class composed of all Trustor's descendants living on the date of this Trust Agreement. All principal and undistributed income of any Trust so terminated shall be distributed to the then income beneficiaries of that Trust in the proportions in which they are, at the time of termination, entitled to receive the income; provided, however, that if the rights to income are not then fixed by the terms of the Trust, distribution under this clause shall be made, by right of representation, to such issue of Trustor as are then entitled or authorized in the Trustee's discretion to receive income payments, or, if there are no such issue of Trustor, in equal shares to those beneficiaries who are then entitled or authorized to receive income payments.

    FOURTH:  For the sake of the operation of the provisions of this Will, any beneficiary who fails to survive my death by thirty (30) days shall be treated as having predeceased me.

    FIFTH:  I appoint STEPHEN M. PAUL and SHERYL A. MOULTON as co-Executors of this Will, each to serve without bond. If either co-Executor fails to act, the remaining co-Executor shall serve as sole Executor without bond. I authorize my personal representative

- 6 -

to sell or lease property of my estate, subject to such confirmation of Court as may be required by law.

SIXTH:    As used in this Will, the masculine, feminine, or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

SEVENTH:  As used in this Will, the term "issue" shall refer to lineal descendants of all degrees, and the terms "child", "children" and "issue" shall include adopted persons who were minors at the date of adoption.

EIGHTH:   I have purposely made no provision for any other person, whether claiming to be an heir of mine or not, and if any person, whether a beneficiary under this Will or not mentioned herein, shall contest this Will or object to any of the provisions hereof, I give to such person so contesting or so objecting the sum of ONE DOLLAR ($1.00) and no more, in lieu of the provisions which I have made, or which I might have made, herein for such person so contesting or so objecting.

NINTH:    I appoint STEVEN M. PAUL and SHERYL A. MOULTON as Co-Trustees of each Trust created herein.  If either fails to act or ceases to act as a co-Trustee for any reason, the other one shall thereafter serve as sole Trustee.

THIS WILL was signed by me on the ___20___ day of __NOVEMBER__, 19_95_, at Carmel, California.

_Betty C. Paul_
BETTY C. PAUL


The foregoing instrument, consisting of eight (8) pages, including the page signed by us as witnesses, was at the date hereof, by BETTY C. PAUL signed as and declared to be her Will, in the presence of us who, at her request and in her presence and in to the presence of each other, have subscribed our names as witnesses thereto.  Each of us observed the signing of this Will by BETTY C. PAUL and by each other subscribing witness and knows that each signature is the true signature of the person whose name was signed.

- 7 -

Each of us is now more than eighteen (18) years of age and a competent witness and resides at the address set forth after his or her name.

We are acquainted with BETTY C. PAUL. At this time, she is over the age of eighteen (18) years, and to the best of our knowledge she is of sound mind and is not acting under duress, menace, fraud, misrepresentation or undue influence.

We declare, under penalty of perjury, that the foregoing is true and correct.

Executed on _NOV. 20_____, 19_95_, at Carmel, California.

_____ residing at _24325 San Juan R,_
                                        _Carmel, CA. 93923_

_Cheryl B. Bilgin_____ residing at _977 Portola Drive_
                                     _Del Rey Oaks, CA 93940_

- 8 -

# EXHIBIT 27

3-24-97
Revoked

WILL

OF

BETTY C. PAUL

I, BETTY C. PAUL, a resident of Monterey County, California
hereby make and declare this to be my last Will and revoke all
Wills and Codicils previously made by me.

FIRST:    I am married to THOMAS L. PAUL and all references in
this Will to "my spouse" are to him.  We have two (2) children,
namely STEPHEN M. PAUL and SHELLY L. MOULTON.  I make no provision
in this Will for my daughter, SHELLY L. MOULTON.  I have three (3)
grandchildren, namely SHERYL A. MOULTON, DAVID L. PAUL and KENDRA
L. PAUL.

SECOND:    It is my intention to dispose of all real and
personal property of which I have a right to dispose by Will.

THIRD:    I give my estate as follows:

A.    I give my automobile to my son, STEPHEN M. PAUL.  I
give my jewelry, clothing, household furniture, furnishings,
silver, chinaware, books, pictures, paintings, works of art and
other tangible articles of a personal nature, or my interest in
such property, not otherwise specifically disposed of by this Will
or in any other manner, together with any insurance on the
property, in equal shares to my son, STEPHEN M. PAUL and my
granddaughter, SHERYL A. MOULTON.  If STEPHEN M. PAUL does not
survive me, his share shall be distributed equally to his children.
If SHERYL A. MOULTON does not survive me, her share shall be
distributed equally to her children, in absence of whom it shall be
added to STEPHEN's share.

B.    I give the residue of my estate to the then acting
Trustee of the Declaration of Trust executed earlier this day and

IAN D. MCPHAIL
A PROFESSIONAL CORPORATION
ATTORNEY AT LAW
VILLA CARMEL, SUITE 4
MISSION AT FOURTH
P. O. BOX 2734
CARMEL, CALIFORNIA 93921
TELEPHONE (408) 625-4135

bearing the same date as this Will, of which I am Trustor, and I direct that the residue of my estate shall be added to, administered, and distributed as a part of that Trust Agreement, according to the terms of that Trust Agreement on the date of my death, giving effect to any amendments made to it prior to the date of my death, and any amendments thereafter made in accordance with the terms of that Trust by the exercise of a power of amendment, appointment, withdrawal, or otherwise.

   C. If for any reason the disposition of subparagraph B of this Paragraph THIRD is not operative or is invalid, or if the Trust Agreement referred to in subparagraph B of this Paragraph THIRD fails or has been revoked, then I hereby incorporate herein by reference the terms of said Trust Agreement as amended before the execution of this Will, without giving effect to any subsequent amendments thereto, and I give the residue of my estate to the Trustee named in said Trust Agreement, in trust, to be held, administered, and distributed as therein provided.

   FOURTH: For the sake of the operation of the provisions of this Will, any beneficiary who fails to survive my death by thirty (30) days shall be treated as having predeceased me.

   FIFTH: I appoint STEPHEN M. PAUL and SHERYL A. MOULTON as co-Executors of this Will, each to serve without bond. Should either fail to act, the other shall serve as sole Executor without bond. I authorize my personal representative to sell or lease property of my estate, subject to such confirmation of Court as may be required by law.

   SIXTH: As used in this Will, the masculine, feminine, or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

   SEVENTH: As used in this Will, the term "issue" shall refer to lineal descendants of all degrees, and the terms "child," "children," and "issue" shall include adopted persons who were minors at the date of adoption.

   EIGHTH: I have purposely made no provision for any other person, whether claiming to be an heir of mine or not, and if any

- 2 -

person, whether a beneficiary under this Will or not mentioned herein, shall contest this Will or object to any of the provisions hereof, I give to such person so contesting or so objecting the sum of ONE DOLLAR ($1.00) and no more, in lieu of the provisions which I have made, or which I might have made, herein for such person so contesting or so objecting.

THIS Will was signed by me on the 24 day of MARCH, 19 97, at Carmel, California.

*Betty C Paul*

BETTY C PAUL

The foregoing instrument, consisting of three (3) pages, including the page signed by us as witnesses, was, at the date hereof, by BETTY C. PAUL signed as and declared to be her Will, in the presence of us who, at her request and in her presence, and in the presence of each other, have subscribed our names as witnesses thereto. Each of us observed the signing of this Will by BETTY C. PAUL and by each other subscribing witness and knows that each signature is the true signature of the person whose name was signed.

Each of us is now more than eighteen (18) years of age and a competent witness, and resides at the address set forth after his or her name.

We are acquainted with BETTY C. PAUL. At this time, she is over the age of eighteen (18) years, and to the best of our knowledge she is of sound mind and is not acting under duress, menace, fraud, misrepresentation or undue influence.

We declare, under penalty of perjury, that the foregoing is true and correct.

Executed on MARCH 24, 19 97, at Carmel, California.

_____ residing at 24325 San Juan Rd, Carmel, Ca 93923

*Cheryl B. Bilgin* residing at 977 Portola Drive

Del Rey Oaks, CA 93940

-- 3 --

EXHIBIT 28

*11-23-98*
*Revoked*

# WILL

## OF

## BETTY C. PAUL

I, BETTY C. PAUL, a resident of Monterey County, California hereby make and declare this to be my last Will and revoke all Wills and Codicils previously made by me.

FIRST:    I am married to THOMAS L. PAUL and all references in this Will to "my spouse" are to him.  We have two (2) children, namely STEPHEN M. PAUL and SHELLY L. MOULTON.  I make no provision in this Will for my daughter, SHELLY L. MOULTON.  I have three (3) grandchildren, namely SHERYL A. MOULTON, DAVID L. PAUL and KENDRA L. PAUL.

SECOND:  It is my intention to dispose of all real and personal property of which I have a right to dispose by Will.

THIRD:    I give my estate as follows:

A.    I give my automobile to my son, STEPHEN M. PAUL.  I give my mother's diamond ring to my granddaughter, SHERYL A. MOULTON.  I give the rest of my jewelry, clothing, household furniture, furnishings, silver, chinaware, books, pictures, paintings, works of art and other tangible articles of a personal nature, or my interest in such property, not otherwise specifically disposed of by this Will or in any other manner, together with any insurance on the property, in equal shares to my son, STEPHEN M. PAUL and my granddaughter, SHERYL A. MOULTON.  If STEPHEN M. PAUL does not survive me, his share shall be distributed equally to his children.  If SHERYL A. MOULTON does not survive me, her share shall be distributed equally to her children, in absence of whom it shall be added to STEPHEN's share.

IAN D. McPHAIL
A PROFESSIONAL CORPORATION
ATTORNEY AT LAW
P.O. BOX LAW-1858
215 WEST FRANKLIN STREET
MONTEREY, CALIFORNIA 93942
TELEPHONE (831) 649-1100

B.    I give the residue of my estate to the then acting Trustee of the Declaration of Trust executed March 24, 1997, of which I am Trustor, and I direct that the residue of my estate shall be added to, administered, and distributed as a part of that Trust Agreement, according to the terms of that Trust Agreement on the date of my death, giving effect to any amendments made to it prior to the date of my death, and any amendments thereafter made in accordance with the terms of that Trust by the exercise of a power of amendment, appointment, withdrawal, or otherwise.

C.    If for any reason the disposition of subparagraph B of this Paragraph THIRD is not operative or is invalid, or if the Trust Agreement referred to in subparagraph B of this Paragraph THIRD fails or has been revoked, then I hereby incorporate herein by reference the terms of said Trust Agreement as amended before the execution of this Will, without giving effect to any subsequent amendments thereto, and I give the residue of my estate to the Trustee named in said Trust Agreement, in trust, to be held, administered, and distributed as therein provided.

FOURTH:    For the sake of the operation of the provisions of this Will, any beneficiary who fails to survive my death by thirty (30) days shall be treated as having predeceased me.

FIFTH:    I appoint STEPHEN M. PAUL and SHERYL A. MOULTON as co-Executors of this Will, each to serve without bond. Should either fail to act, the other shall serve as sole Executor without bond. I authorize my personal representative to sell or lease property of my estate, subject to such confirmation of Court as may be required by law.

SIXTH:    As used in this Will, the masculine, feminine, or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

SEVENTH:    As used in this Will, the term "issue" shall refer to lineal descendants of all degrees, and the terms "child," "children," and "issue" shall include adopted persons who were minors at the date of adoption.

EIGHTH:    I have purposely made no provision for any other person, whether claiming to be an heir of mine or not, and if any person, whether a beneficiary under this Will or not mentioned herein, shall contest this Will or object to any of the provisions hereof, I give to such person so contesting or so objecting the sum of ONE DOLLAR ($1.00) and no more, in lieu of the provisions which I have made, or which I might have made, herein for such person so contesting or so objecting.

THIS Will was signed by me on the _23_ day of _NOVEMBER_, 19_98_, at Monterey, California.

*Betty C Paul*
BETTY C. PAUL

The foregoing instrument, consisting of three (3) pages, including the page signed by us as witnesses, was, at the date hereof, by BETTY C. PAUL signed as and declared to be her Will, in the presence of us who, at her request and in her presence, and in the presence of each other, have subscribed our names as witnesses thereto. Each of us observed the signing of this Will by BETTY C. PAUL and by each other subscribing witness and knows that each signature is the true signature of the person whose name was signed.

Each of us is now more than eighteen (18) years of age and a competent witness, and resides at the address set forth after his or her name.

We are acquainted with BETTY C. PAUL.  At this time, she is over the age of eighteen (18) years, and to the best of our knowledge she is of sound mind and is not acting under duress, menace, fraud, misrepresentation or undue influence.

We declare, under penalty of perjury, that the foregoing is true and correct.

Executed on _NOV. 23_, 19_98_, at Monterey, California.

_____ residing at _24325 San Juan R,_
_Carmel, Ca, 93923_

*Cheryl B. Bilgin*    residing at _977 Portola Drive_
_Del Rey Oaks, CA 93940_

# EXHIBIT 29

WILL

OF

BETTY C. PAUL

I, BETTY C. PAUL, a resident of Monterey County, California hereby make and declare this to be my last Will and revoke all Wills and Codicils previously made by me.

FIRST:    I am a widow and have two (2) children, namely STEPHEN M. PAUL and SHELLY L. MOULTON. I make no provision in this Will for my daughter, SHELLY L. MOULTON. I have three (3) grandchildren, namely SHERYL A. MOULTON, DAVID L. PAUL and KENDRA L. PAUL.

SECOND:  It is my intention to dispose of all real and personal property of which I have a right to dispose by Will.

THIRD:    I give my estate as follows:

A.    I give my automobile to my son, STEPHEN M. PAUL. I give to my granddaughter, SHERYL A. MOULTON, my mother's diamond ring, painting titled "Pink Blossoms" by William Henry Clapp, and marble top master bedroom furniture. I give to my grandson, DAVID L. PAUL, water silk Chinese painting by Changchieh Wong, painting of silver coffee pot with grapes and lemons by William Acheff, and pink tufted twin beds and Bombay chest. I give the rest of my jewelry, clothing, household furniture, furnishings, silver, chinaware, books, pictures, paintings, works of art and other tangible articles of a personal nature, or my interest in such property, not otherwise specifically disposed of by this Will or in any other manner, together with any insurance on the property, in equal shares to my son, STEPHEN M. PAUL and my granddaughter, SHERYL A. MOULTON. If STEPHEN M. PAUL does not survive me, his share shall be distributed equally to his children. If SHERYL A. MOULTON does not survive me, her share shall be distributed equally to her children, in absence of whom it shall be added to STEPHEN's share.

B.    I give the residue of my estate to the then acting Trustee of the Declaration of Trust executed March 24, 1997, of which I am Trustor, and I direct that the

IAN D. McPHAIL
ATTORNEY AT LAW
APTOS & CARMEL, CALIFORNIA

residue of my estate shall be added to, administered, and distributed as a part of that Trust Agreement, according to the terms of that Trust Agreement on the date of my death, giving effect to any amendments made to it prior to the date of my death, and any amendments thereafter made in accordance with the terms of that Trust by the exercise of a power of amendment, appointment, withdrawal, or otherwise.

      C.     If for any reason the disposition of subparagraph B of this Paragraph THIRD is not operative or is invalid, or if the Trust Agreement referred to in subparagraph B of this Paragraph THIRD fails or has been revoked, then I hereby incorporate herein by reference the terms of said Trust Agreement as amended before the execution of this Will, without giving effect to any subsequent amendments thereto, and I give the residue of my estate to the Trustee named in said Trust Agreement, in trust, to be held, administered, and distributed as therein provided.

    FOURTH:   For the sake of the operation of the provisions of this Will, any beneficiary who fails to survive my death by thirty (30) days shall be treated as having predeceased me.

    FIFTH:     I appoint STEPHEN M. PAUL and SHERYL A. MOULTON as co-Executors of this Will, each to serve without bond. Should either fail to act, the other shall serve as sole Executor without bond. I authorize my personal representative to sell or lease property of my estate, subject to such confirmation of Court as may be required by law.

    SIXTH:    As used in this Will, the masculine, feminine, or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

    SEVENTH:  As used in this Will, the term "issue" shall refer to lineal descendants of all degrees, and the terms "child," "children," and "issue" shall include adopted persons who were minors at the date of adoption.

    EIGHTH:   A contestant shall be considered to have predeceased me without leaving issue surviving me, and the contestant shall be considered not to be living at the time of my death. For purposes of this Will, "Contestant" means any person other than myself,

2

who, directly or indirectly, on his own or through a fiduciary, or as a fiduciary for another, voluntarily participates in any proceeding or action in which such person seeks to void, nullify or set aside (1) any provision of this Will or any Codicil to it; (2) any provision of a Trust Agreement or Amendment thereto, to which this Will or any Codicil to it transfers assets. My personal representative is authorized to defend, at the expense of my estate, any contest or other attack of any nature on this Will, or Codicil thereto.

THIS Will was signed by me on the __14__ day of __JULY__, 2006, at Carmel, California.

_Betty C Paul_
BETTY C. PAUL

The foregoing instrument, consisting of three (3) pages, including the page signed by us as witnesses, was, at the date hereof, by BETTY C. PAUL signed as and declared to be her Will, in the presence of us who, at her request and in her presence, and in the presence of each other, have subscribed our names as witnesses thereto. Each of us observed the signing of this Will by BETTY C. PAUL and by each other subscribing witness and knows that each signature is the true signature of the person whose name was signed.

Each of us is now more than eighteen (18) years of age and a competent witness, and resides at the address set forth after his or her name.

We are acquainted with BETTY C. PAUL. At this time, she is over the age of eighteen (18) years, and to the best of our knowledge she is of sound mind and is not acting under duress, menace, fraud, misrepresentation or undue influence.

We declare, under penalty of perjury, that the foregoing is true and correct.

Executed on __JULY  14__, 2006, at Carmel, California.

_Paul McPhail_ residing at 24325 San Juan RD, Carmel, Ca. 93923

_Cheryl B. Bilgin_ residing at 977 Portola Drive Del Rey Oaks, CA 93940

3

# EXHIBIT 30

*2-18-10*
*Revoked*

WILL

OF

BETTY C. PAUL

I, BETTY C. PAUL, a resident of Monterey County, California hereby make and declare this to be my last Will and revoke all Wills and Codicils previously made by me.

FIRST:    I am a widow and have two (2) children, namely STEPHEN M. PAUL and SHELLY L. MOULTON.  I make no provision in this Will for my son, STEPHEN M. PAUL, or my daughter, SHELLY L. MOULTON.  I have three (3) grandchildren, namely SHERYL A. MOULTON, DAVID L. PAUL and KENDRA L. PAUL.

SECOND:   It is my intention to dispose of all real and personal property of which I have a right to dispose by Will.

THIRD:    I give my estate as follows:

A.    I give my automobile to my granddaughter, SHERYL A. MOULTON. I give to SHERYL A. MOULTON, my mother's diamond ring, painting titled "Pink Blossoms" by William Henry Clapp, and marble top master bedroom furniture.  I give to DAVID L. PAUL, water silk Chinese painting by Changchieh Wong, painting of silver coffee pot with grapes and lemons by William Acheff, and pink tufted twin beds and Bombay chest.  I give the rest of my jewelry to SHERYL A. MOULTON to distribute among herself, DAVID L. PAUL and KENDRA L. PAUL as she thinks fit.  I give the rest of my clothing, household furniture, furnishings, silver, chinaware, books, pictures, paintings, works of art and other tangible articles of a personal nature, or my interest in such property, not otherwise specifically disposed of by this Will or in any other manner, together with any insurance on the property, in equal shares to DAVID L. PAUL and SHERYL A. MOULTON.  If DAVID does not survive me, his share shall be distributed to his issue who survive me, by right of

IAN D. McPHAIL

ATTORNEY AT LAW

APTOS & CARMEL, CALIFORNIA

representation, in absence of whom it shall be distributed to SHERYL A. MOULTON. If SHERYL A. MOULTON does not survive me, her share shall be added to the share of DAVID L. PAUL.

      B.    I give the residue of my estate to the then acting Trustee of the Declaration of Trust executed March 24, 1997, of which I am Trustor, and I direct that the residue of my estate shall be added to, administered, and distributed as a part of that Trust Agreement, according to the terms of that Trust Agreement on the date of my death, giving effect to any amendments made to it prior to the date of my death, and any amendments thereafter made in accordance with the terms of that Trust by the exercise of a power of amendment, appointment, withdrawal, or otherwise.

      C.    If for any reason the disposition of subparagraph B of this Paragraph THIRD is not operative or is invalid, or if the Trust Agreement referred to in subparagraph B of this Paragraph THIRD fails or has been revoked, then I hereby incorporate herein by reference the terms of said Trust Agreement as amended before the execution of this Will, without giving effect to any subsequent amendments thereto, and I give the residue of my estate to the Trustee named in said Trust Agreement, in trust, to be held, administered, and distributed as therein provided.

FOURTH:    For the sake of the operation of the provisions of this Will, any beneficiary who fails to survive my death by thirty (30) days shall be treated as having predeceased me.

FIFTH:    I appoint DAVID L. PAUL and SHERYL A. MOULTON as Co-Executors of this Will, each to serve without bond. Should either fail to act, the other shall serve as sole Executor without bond. I authorize my personal representative to sell or lease property of my estate, subject to such confirmation of Court as may be required by law.

SIXTH:    As used in this Will, the masculine, feminine, or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

SEVENTH:  As used in this Will, the term "issue" shall refer to lineal descendants of all degrees, and the terms "child," "children," and "issue" shall include adopted persons who were minors at the date of adoption.

EIGHTH:    A contestant shall be considered to have predeceased me without leaving issue surviving me, and the contestant shall be considered not to be living at the time of my death.  For purposes of this Will, "Contestant" means any person other than myself, who, directly or indirectly, on his own or through a fiduciary, or as a fiduciary for another, voluntarily participates in any proceeding or action in which such person seeks to void, nullify or set aside (1) any provision of this Will or any Codicil to it; (2) any provision of a Trust Agreement or Amendment thereto, to which this Will or any Codicil to it transfers assets.  My personal representative is authorized to defend, at the expense of my estate, any contest or other attack of any nature on this Will, or Codicil thereto.

THIS Will was signed by me on the ___18___ day of ___FEB._____, 2010, at Carmel, California.

_____
BETTY C. PAUL

The foregoing instrument, consisting of four (4) pages, including the page signed by us as witnesses, was, at the date hereof, by BETTY C. PAUL signed as and declared to be her Will, in the presence of us who, at her request and in her presence, and in the presence of each other, have subscribed our names as witnesses thereto.  Each of us observed the signing of this Will by BETTY C. PAUL and by each other subscribing witness and knows that each signature is the true signature of the person whose name was signed.

Each of us is now more than eighteen (18) years of age and a competent witness, and resides at the address set forth after his or her name.

3

We are acquainted with BETTY C. PAUL.  At this time, she is over the age of eighteen (18) years, and to the best of our knowledge she is of sound mind and is not acting under duress, menace, fraud, misrepresentation or undue influence.

We declare, under penalty of perjury, that the foregoing is true and correct.

Executed on ___FEB. 18_____, 2010, at Carmel, California.

_____   residing at   24325 San Juan Road
Witness                                            Carmel, California 93923

_____   residing at   68 LARANCHERIA
Witness                                            CARMEL VALLEY CA 93924

4





Maybe February 2010

Legal papers redone by Mr. McPhail

# FIRST CLASS MAIL

FROM

**IAN D. MCPHAIL**
ATTORNEY AT LAW
9200 SOQUEL DRIVE
APTOS, CALIFORNIA 95003

TO

Mrs. Betty C. Paul
P.O. Box 221461
Carmel, CA  93922

EXHIBIT 31

WILL

OF

BETTY C. PAUL

I, BETTY C. PAUL, a resident of Monterey County, California hereby make and declare this to be my last Will and revoke all Wills and Codicils previously made by me.

FIRST:    I am a widow and have two (2) children, namely STEPHEN M. PAUL and SHELLY L. MOULTON. I make no provision in this Will for my son, STEPHEN M. PAUL, or my daughter, SHELLY L. MOULTON. I have three (3) grandchildren, namely SHERYL A. MOULTON, DAVID L. PAUL and KENDRA L. PAUL.

SECOND:  It is my intention to dispose of all real and personal property of which I have a right to dispose by Will.

THIRD:    I give my estate as follows:

A.    I give my automobile to my granddaughter, SHERYL A. MOULTON. I give to DAVID L. PAUL, water silk Chinese painting by Changchieh Wong, painting of silver coffee pot with grapes and lemons by William Acheff, and pink tufted twin beds and Bombay chest. I give all my jewelry in equal shares to my three grandchildren, SHERYL A. MOULTON, DAVID L. PAUL and KENDRA L. PAUL. I give the rest of my clothing, household furniture, furnishings, silver, chinaware, books, pictures, paintings, works of art and other tangible articles of a personal nature, or my interest in such property, not otherwise specifically disposed of by this Will or in any other manner, together with any insurance on the property, in equal shares to DAVID L. PAUL and SHERYL A. MOULTON. If DAVID does not survive me, his share shall be distributed to his issue who survive me, by right of representation, in absence of whom it shall be distributed to SHERYL A. MOULTON. If SHERYL A. MOULTON does not survive me, her share shall be added to the share of DAVID L. PAUL.

IAN D. MCPHAIL

ATTORNEY AT LAW

APTOS & CARMEL, CALIFORNIA

B.    I give the residue of my estate to the then acting Trustee of the Declaration of Trust executed March 24, 1997, of which I am Trustor, and I direct that the residue of my estate shall be added to, administered, and distributed as a part of that Trust Agreement, according to the terms of that Trust Agreement on the date of my death, giving effect to any amendments made to it prior to the date of my death, and any amendments thereafter made in accordance with the terms of that Trust by the exercise of a power of amendment, appointment, withdrawal, or otherwise.

C.    If for any reason the disposition of subparagraph B of this Paragraph THIRD is not operative or is invalid, or if the Trust Agreement referred to in subparagraph B of this Paragraph THIRD fails or has been revoked, then I hereby incorporate herein by reference the terms of said Trust Agreement as amended before the execution of this Will, without giving effect to any subsequent amendments thereto, and I give the residue of my estate to the Trustee named in said Trust Agreement, in trust, to be held, administered, and distributed as therein provided.

FOURTH:    For the sake of the operation of the provisions of this Will, any beneficiary who fails to survive my death by thirty (30) days shall be treated as having predeceased me.

FIFTH:    I appoint STEPHEN M. PAUL and SHERYL A. MOULTON as co-Executors of this Will, to serve without bond. I authorize my personal representatives to sell or lease property of my estate, subject to such confirmation of Court as may be required by law. If one of them fails to act, I appoint the other to serve as sole Executor, without bond.

SIXTH:    As used in this Will, the masculine, feminine, or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

SEVENTH:    As used in this Will, the term "issue" shall refer to lineal descendants of all degrees, and the terms "child," "children," and "issue" shall include adopted persons who were minors at the date of adoption.

2

EIGHTH:    A contestant shall be considered to have predeceased me without leaving issue surviving me, and the contestant shall be considered not to be living at the time of my death. For purposes of this Will, "Contestant" means any person other than myself, who, directly or indirectly, on his own or through a fiduciary, or as a fiduciary for another, voluntarily participates in any proceeding or action in which such person seeks to void, nullify or set aside (1) any provision of this Will or any Codicil to it; (2) any provision of a Trust Agreement or Amendment thereto, to which this Will or any Codicil to it transfers assets. My personal representative is authorized to defend, at the expense of my estate, any contest or other attack of any nature on this Will, or Codicil thereto.

THIS Will was signed by me on the ___16___ day of FEBRUARY , 2013, at Carmel, California.

_Betty C. Paul_
BETTY C. PAUL

The foregoing instrument, consisting of four (4) pages, including the page signed by us as witnesses, was, at the date hereof, by BETTY C. PAUL signed as and declared to be her Will, in the presence of us who, at her request and in her presence, and in the presence of each other, have subscribed our names as witnesses thereto. Each of us observed the signing of this Will by BETTY C. PAUL and by each other subscribing witness and knows that each signature is the true signature of the person whose name was signed.

Each of us is now more than eighteen (18) years of age and a competent witness, and resides at the address set forth after his or her name.

We are acquainted with BETTY C. PAUL. At this time, she is over the age of eighteen (18) years, and to the best of our knowledge she is of sound mind and is not acting under duress, menace, fraud, misrepresentation or undue influence.

We declare, under penalty of perjury, that the foregoing is true and correct.

3

Executed on FEB 16 _____, 2013, at Carmel, California.

_____  residing at   24325 San Juan Road
Witness                                  Carmel, California 93923

_____  residing at   387 Carmel Ave
Witness                                  Marina CA. 93933

4

# EXHIBIT 32

**REVOCATION OF CODICILS EXECUTED AFTER FEBRUARY 16, 2013**

I, BETTY C. PAUL, a resident of Monterey County California, hereby declare:

FIRST:          On February 16, 2013 I executed The Will of Betty C. Paul hereafter referred to as the "February 16, 2013 Will."

SECOND: .        After February 16, 2013, I executed a codicil to my February 16, 2013 Will proposed by my son, Steven M. Paul, hereafter referred to as the "Steven-Proposed Codicil."

THIRD:          I revoke the Steven-Proposed Codicil with the intent that my Will of February 16, 2013 will remain in full force and effect.

THIS REVOCATION was signed by me on the 15th day of August, 2018, at Carmel, California.

_Betty C. Paul_
_____
BETTY C. PAUL

The foregoing instrument, consisting of one (1) page, including this page was signed by BETTY C. PAUL in our presence and declared by her to be her REVOCATION OF CODICILS EXECUTED AFTER FEBRUARY 16, 2013. At her request and in her presence, and in the presence of each other, we have subscribed our names as witnesses thereto. Each of us observed the signing of the foregoing instrument by BETTY C. PAUL and by each other as subscribing witnesses and knows that each signature is the true signature of the person whose name was signed.

Each of us is now more than eighteen (18) years of age and a competent witness, and conduct business at the address set forth after his or her name.

We are acquainted with BETTY C. PAUL. At this time, she is over the age of eighteen (18) years, and to the best of our knowledge she is of sound mind and is not acting under duress, menace, fraud, misrepresentation or undue influence.

We declare, under penalty, that the foregoing is true and correct.

Executed on August 15, 2018, at Carmel, California.

_Rochelle Chabrier_
_____            563 Figueroa Street
WITNESS, ROCHELLE CHABRIER            Monterey, CA 93940


_William B. Daniels_
_____            563 Figueroa Street
WITNESS, WILLIAM B. DANIELS           Monterey, CA 93940

EXHIBIT 33

## FIRST CODICIL TO LAST WILL AND TESTAMENT

### OF

### BETTY C. PAUL

I, BETTY C. PAUL, a resident of Monterey County, State of California, declare this to be the First Codicil to my Last Will and Testament dated February 16, 2013.

FIRST: I hereby amend and restate in its entirety the FIFTH SECTION of my Will to read in full as follows:

"FIFTH:     I appoint SHERYL A. MOULTON as Executor of this Will, to serve without bond. I authorize my personal representatives to sell or lease property of my estate, subject to such confirmation of Court as may be required by law. If SHERYL A. MOULTON fails to act, I appoint LIZA HORVATH to serve as sole Executor without bond."

SECOND: In all other respects, I confirm and republish my Last Will and Testament dated February 16, 2013.

This, the First Codicil to my Last Will and Testament, was executed by me on _March 29, 2019_, at Carmel, California.

_Betty C. Paul_
BETTY C. PAUL

On the date written below, BETTY C. PAUL declared to us, the undersigned, that this instrument, consisting of 1 (one) page, including the page signed by us as witnesses, was the First Codicil to her Last Will and Testament dated February 16, 2013, and requested us to act as witnesses to it. She thereupon signed this Codicil in our presence, all of us being present at the same time. We now, at her request, in her presence, and in the presence of each other, subscribe our names as witnesses.

We believe that the BETTY C. PAUL is over age 18, of sound mind, and is under no constraint or undue influence.

Executed on _March 29, 2019_, at Carmel, California.

We declare under penalty of perjury that the foregoing is true and correct.

_Kathryn Baumann_ residing at _Monterey_, California

_Alexander C. Finke_ residing at _Monterey_, California